UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE and DEMOCRATIC PARTY OF WISCONSIN,<br><br>    Plaintiffs,<br><br>  v.<br><br>MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners,<br><br>    Defendants. | Civil Action No. 3:20-cv-249 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

  Plaintiffs DEMOCRATIC NATIONAL COMMITTEE and DEMOCRATIC PARTY OF WISCONSIN file this Complaint for Declaratory and Injunctive Relief against Defendants MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners, and allege as follows:

**NATURE OF THE CASE**

  1. The United States is in the throes of an unprecedented crisis. COVID-19 is spreading throughout the country, infecting thousands of citizens in communities across the nation, including Wisconsin, which has at least 72 reported cases of the COVID-19 coronavirus and counting. As a result, Americans—including Wisconsinites—are forced to socially distance themselves to try to slow the spread of the disease in a communal effort to save their friends, neighbors, and families, with no clear end in sight. Indeed, the latest projections indicate that this crisis may persist for 14 to 18 months.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1**

2. As Wisconsin citizens continue to distance themselves to ensure their safety, many will be unwilling and unable to risk their safety and the safety of others by waiting in line to register to vote and cast their vote on election day. Many Wisconsin citizens also will be unwilling and unable to take on the safety risks of leaving their homes to obtain documents and to copy documents that are required under Wisconsin law to register to vote and to obtain an absentee ballot. In addition, it appears increasingly likely that the federal and local governments may start issuing mandatory shelter-in-place directives. Thus, even if potential voters were inclined to act against the strong and unanimous advice of the nation's health authorities, they may no longer be able to do so.

3. Given these extraordinary circumstances, it is not surprising that Wisconsinites—faced with this unconscionable choice between their safety and potentially endangering the lives of others and exercising their fundamental right to vote—are relying on absentee voting at an unprecedented level. The Wisconsin Elections Commission reports that "Wisconsin voters are [already] requesting absentee ballots at a record pace with concerns about Coronavirus COVID-19."[1] As of yesterday, more than 173,000 absentee applications had been received by Wisconsin municipal clerks, exceeding total requests for three of the last four Spring elections. And it is all but certain that this number will continue to increase.

4. In this unprecedented situation, multiple provisions of law that establish requirements for registering to vote and absentee voting are now posing direct and severe obstacles to voting. These provisions are: (1) the current electronic and by-mail registration deadline, Wisc. Stat. § 6.28(1); (2) requirement that copies of proof of residence accompany electronic and by-

---

[1] Wisconsin Elections Comm., *Absentee Ballot Requests for April 7 Already Exceed Last Three Spring Election Absentee Number Due to COVID-19*, March 17, 2020, https://elections.wi.gov/node/6731.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2**

mail voter registration, *id.* § 6.34; (3) requirement that copies or scans of photo identification accompany absentee ballot applications, *id.* § 6.86; and (4) the requirement that polling places receive absentee ballots by 8:00 p.m. on election day to be counted ("Election Day Receipt Deadline"), *id.* § 6.87 (collectively, the "Challenged Provisions").

5. Each of these provisions, on its own, poses significant risks to voters seeking to exercise their right to vote in the upcoming April 7, 2020 election (or any election that occurs while this crisis continues); collectively, these provisions will ensure that many Wisconsin citizens will be unable to vote or will have their ballots discarded. Based on information and belief, without emergency intervention from this Court, thousands of Wisconsin voters will be disenfranchised.

6. Under Wis. Stat. § 6.28(1), electronic and by mail voter registration is scheduled to end today, March 18, 2020. Historically, Wisconsin voters have registered to vote in person in large numbers, relying heavily on same day registration—i.e., registering during in-person absentee voting or on election day. As a result, thousands of Wisconsin voters typically do not register before election day. That is the case again this year, as many Wisconsin citizens have not yet registered for the April 7, 2020 presidential primary election since they anticipated being able to register on election day. Because of the effects of COVID-19 on the ability of voters to register and vote in person, combined with today's deadlines to request absentee ballots, thousands of potential voters who reasonably anticipated registering in person on election day will be without an option after today. Absent intervention by the Court, the electronic and by-mail registration deadline of today will pass, and the safety risks of COVID-19 will prevent countless eligible Wisconsinites from registering and voting altogether.

7. Wis. Stat. § 6.34 will have a similar effect. This provision requires new voters to provide a copy of their proof of residence to register. But as voters are directed by the federal and

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3**

state government to stay home and as commercial businesses and public buildings continue to close, many would-be electronic or by-mail registrants are now without access to the scanners and printers needed to generate copies of the documents required to register to vote. That is because the scanners and printers are often located at places of work, libraries, and commercial establishments (e.g., UPS locations) that are now closed or are unsafe to go to. As a result, many Wisconsin citizens will be unable to obtain the copies they need to complete their voter registration applications and will be prevented from registering.

8. For the same reasons, Wis. Stat. §§ 6.86 and 6.87, requiring a copy of a voter's photo identification to accompany a request for an absentee ballot, will render voters unable to make such a request.

9. Finally, even if a voter is able to overcome the obstacles to registering to vote and requesting an absentee ballot described above, the April 7 election is a mere two-and-a-half weeks away, and the deadline to request an absentee ballot is even sooner—April 2, 2020. This means that the thousands of voters who are now realizing that they must request an absentee ballot to vote safely have just a week-and-a half to request a ballot. Municipal clerks will have scant time to process these requests—which are coming in at unprecedented levels and to offices that are likely to be understaffed as people self-quarantine dur to potential exposure to the virus—and to mail ballots to voters. Voters receiving those ballots will have, at most, mere days to mail them, with a significant risk that they will not arrive by the Election Day Receipt Deadline imposed by Wis. Stat. § 8.87(6)—and thus, those votes will not be counted. In fact, based on information and belief, Wisconsin's mail system has already started to slow because of the effects of the coronavirus. As a result, it is highly likely that many absentee ballots will arrive after the Election Day Receipt

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4**

Deadline—due to no fault of the voters. These same impediments to voting will continue for any election that occurs while this crisis persists.

10. Accordingly, Plaintiffs file this suit to ensure that Wisconsin voters—many of whom are their members and constituents—are able to fully exercise their right to vote in the midst of this unprecedented crisis. Plaintiffs seek an emergency injunction from this Court, extending the March 18, 2020 deadline for electronic and by mail voter registration to April 3, the deadline for in-person registration; suspending the requirements that copies of documents be included with voter registration and absentee ballot applications; and enjoining the Election Day Receipt Deadline, while allowing all ballots postmarked on or before election day but received within a minimum of 10 days thereafter to be counted.[2]

## JURISDICTION AND VENUE

11. Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of a right secured by the United States Constitution.

12. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

13. This Court has personal jurisdiction over the Defendants, the Commissioners of the Wisconsin Elections Commission, who are sued in their official capacities only.

14. Venue is proper in the U.S. District Court in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to Plaintiffs' claims occurred there.

---

[2] The term "postmark" is used to reference any type of marking applied by the USPS including bar codes or other tracking marks indicating that a ballot was mailed on or before election day. If there is no postmark on the ballot, it should be presumed to have been mailed by Election Day.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5**

15. This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

16. Plaintiff the Democratic National Committee ("DNC") is a national committee, as that term is defined by and used in 52 U.S.C. § 30101, dedicated to electing local, state, and national candidates of the Democratic Party to public office throughout the United States. In particular, the DNC is charged with facilitating the Democratic presidential nominating process, which culminates in the 2020 Convention that will take place in Milwaukee, Wisconsin in July. The April 7, 2020 presidential primary election is part of the presidential nominating process, and Democratic voters in that election will make their selections for the Democratic presidential nominee. Moreover, the DNC has members and constituents across the United States, including eligible voters in Wisconsin whose rights to vote will be severely burdened and denied outright by the Challenged Provisions during the current Coronavirus crisis.

17. Plaintiff the Democratic Party of Wisconsin is a state committee, as defined by 52 U.S.C. § 30101(15), dedicated to electing candidates of the Democratic Party to public office throughout the State of Wisconsin. The Democratic Party of Wisconsin has members and constituents from across Wisconsin, including many voters whose rights to vote will be severely burdened and denied outright by the Challenged Provisions during the current Coronavirus crisis.

18. As part of their missions, both Plaintiffs work to ensure that their members and constituents are able to effectively exercise their right to vote for their chosen presidential nominee. Plaintiffs are directly harmed by the Challenged Provisions, which by making it more difficult for Plaintiffs' members and constituents to vote, will require Plaintiffs to expend additional resources to assist their members and constituents to overcome these burdens to exercise their right to vote.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6**

These are resources that the Plaintiffs otherwise could spend educating voters about core issues and preparing for the general election. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (political party had standing because of its diversion of resources "to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"), *aff'd,* 553 U.S. 181, 189 n.7 (2008); *One Wisconsin Institute v. Thomsen,* 198 F. Supp. 3d 896, 908-10 (W.D. Wis. 2016).

19. Defendants Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen are the six Commissioners of the Wisconsin Elections Commission and are named as Defendants in their official capacities. Together, they comprise the Wisconsin Elections Commission, the body that administers and enforces Wisconsin's election laws, including Wis. Stats. §§ 6.28(1), 6.34, 6.86, and 6.87. *See* Wis. Stat. § 5.05. Defendants have acted under color of state law at all times relevant to this action.

## STATEMENT OF FACTS AND LAW

**A.  Wisconsin Registration and Absentee Laws**

20. Wisconsin law provides that registration by mail and electronic registration closes on the third Wednesday preceding an election. Wis. Stat. § 6.28 (1)(a). Thus, for the April 7, 2020 primary election, to use these forms of registration voters must register by today, March 18, 2020.

21. Individuals registering by mail or electronically must provide a copy of an "identifying document that establishes proof of residence." Wis. Stat. § 6.34(2). The only exception to this rule is for individuals registering electronically who do not have to provide such documentation if they provide "the number of a current and valid operator's license [or] identification card." *Id.* (2m).

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7**

22. Typically, individuals wishing to register after the mail and electronic registration deadline can only do so by registering in-person when they apply for an in-person absentee ballot or on Election Day at a polling place. *Id.*

23. And, historically, Wisconsin voters rely heavily on same day registration. Since 2008, between 10 to 15% of all registrations have taken place on election day.[3]

24. Wisconsin also provides a process for absentee voting for all registered absentee voters, allowing them to request an absentee ballot by mail, in person at the municipal clerk's office, by signing a statement and requesting to receive an absentee ballot, via an agent, special voting deputy, or by e-mail or fax. Wis. Stat. § 6.86(1)(a).

25. All voters are required to present a copy of their proof of identification with their absentee application. *Id.* (1)(ac).

26. Once a voter has received and completed their ballot, he or she must return it so that "it is delivered to the polling place no later than 8 p.m. on election day." Wis. Stat. § 6.87(6).

**B.  Coronavirus and the April 7, 2020 Election**

27. Over the course of the last few weeks, and with dramatically increased intensity over just the last week, COVID-19 has been spreading throughout the United States, infecting thousands of citizens in communities across the nation, including in Wisconsin. Each day more Wisconsinites are infected and, as more is learned about the virus and its potential reach, citizens and state and local governments are forced to take increasingly unprecedented steps to ensure their safety.

---

[3]  Wisconsin Elections Commission, Elections and Voting Statistics, https://elections.wi.gov/elections-voting/statistics?q=elections-voting/statistics&page=2 (last visited, March 18, 2020).

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8**

28. Indeed, just yesterday, Governor Evers ordered a statewide ban on gatherings of more than 10 people. Public and private schools have been closed indefinitely. And bars, restaurants, and other commercial centers are closing.

29. Wisconsinites are now forced to socially distance themselves to try to slow the spread of the disease in a communal effort to save their friends, neighbors, and families, with no end in sight.

30. As a result, many Wisconsin citizens are also unable or unwilling to risk their safety and the safety of others by waiting in line to register to vote and cast their vote on election day, or to leave their homes to obtain documents and to copy documents that are required under Wisconsin law to register to vote and to obtain an absentee ballot.

31. Moreover, Wisconsin citizens who are infected cannot leave their homes, even if they are otherwise willing to venture out to exercise their right to vote.

32. Thus, it is not surprising that Wisconsinites are relying on absentee voting at an unprecedented level. The Wisconsin Elections Commission reports that "Wisconsin voters are [already] requesting absentee ballots at a record pace with concerns about Coronavirus COVID-19."[4] As of yesterday, more than 173,00 absentee applications had been received by Wisconsin municipal clerks, exceeding total requests for three of the last four Spring elections. And it is all but certain that this number will continue to increase.

33. In this unprecedented situation, the regulatory scheme described above has become hostile to voting rights and, as a direct result, thousands of Wisconsin voters are likely to be disenfranchised.

---

[4] Wisconsin Elections Comm., *Absentee Ballot Requests for April 7 Already Exceed Last Three Spring Election Absentee Number Due to COVID-19*, March 17, 2020, https://elections.wi.gov/node/6731.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9**

34. For example, as discussed, thousands of Wisconsin voters typically register in person, relying on same day registration to register and vote. As a result, thousands of Wisconsin voters typically do not register before election day. This year is no different. Many Wisconsin citizens have not yet registered for the April 7, 2020 presidential primary election since they anticipated being able to register on election day. Because of the effects of the Coronavirus on the ability of voters to register and vote in person, these voters will now be without any registration option after today.

35. Similarly, Wisconsin's requirements that voters provide a copy of their proof of residence to register also burden voters during the current crisis. The scanners and printers that many would-be electronic or by-mail registrants and absentee voters would typically use are often located at places of work, libraries, and commercial establishments (e.g., UPS locations) that are now closed or unsafe to go to. As a result, many Wisconsin citizens will be unable to obtain the copies they need to complete their voter registration applications and will be prevented from registering.

36. The same burdens face voters attempting to comply with Wisconsin's requirement that they must provide a copy or scan of their voter ID when applying for an absentee ballot. As a result, many voters will be unable to obtain the copies or scans they need to complete their absentee applications and will be prevented from voting.

37. Finally, even if a voter is able to overcome the obstacles to registering and voting described above, the April 7 election is a mere two-and-a-half weeks away, and the deadline to request an absentee ballot is even sooner—April 2, 2020. This means that the thousands of voters who are now realizing that they must request an absentee ballot to vote safely have just a week-

and-a half to request a ballot. Municipal clerks will have just hours or days to process these requests and mail ballots.

38. Accordingly, voters receiving those ballots will have, at most, mere days to mail them, with a significant risk that they will not arrive by the Election Day Receipt Deadline imposed by Wis. Stat. § 8.87(6) and thus will not be counted. Indeed, there is significant risk that municipal clerks inundated with absentee ballot requests at the April 2 deadline may not even be able to *process* all such requests by Election Day, much less mail the ballots with sufficient time for voters to *return* them by Election Day.

39. In fact, based on information and belief, Wisconsin's mail system has already started to slow because of the effects of the Coronavirus. As a result, it is highly likely that many absentee ballots will arrive after the Election Day Receipt Deadline—due to no fault of the voters.

40. Each of these provisions, on its own, poses significant risks to voters seeking to exercise their right to vote in the upcoming April 7, 2020 election; collectively, the existence of these provisions means that many Wisconsin citizens will be unable to vote or will have their ballots discarded.

41. Without action from this Court, these laws will continue to burden Wisconsin voters' right to vote, disenfranchising them in the upcoming April 7, 2020, as well as other elections taking place during the COVID-19 crisis.

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11**

## CLAIMS FOR RELIEF

## COUNT I

### First and Fourteenth Amendments
### U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202
### Undue Burden on the Right to Vote

42. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

43. Under the *Anderson-Burdick* balancing test, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

44. Unless Plaintiffs are granted the relief requested herein thousands of Wisconsin voters' right to vote, including Plaintiffs' members and constituents, will be severely burdened (if not wholly eliminated) in the upcoming April 7, 2020 primary election.

45. Because of COVID-19 and the unprecedented social distancing measures that Wisconsin citizens have to take to slow the spread of the virus and to ensure their safety as well as the safety of their friends, families, and neighbors, many Wisconsin voters who would have registered to vote in-person between the March 18, 2020 electronic and by-mail registration cut-off and/or on Election Day will no long be able to register to vote. Similarly, Wisconsin voters are less able and, in some cases, wholly unable to copy and scan documents required to complete their

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12**

electronic and by-mail registration and absentee ballot applications. And, as absentee balloting becomes the only safe way to vote, Wisconsin voters are at a high risk of not receiving their ballots with sufficient time to mail it into the municipal clerk's office so that it is received prior to the Election Day Receipt Deadline. This too will lead to disenfranchisement.

46. The State cannot provide any colorable justification as to why the March 18, 2020 deadline should not be extended and why ballots received after the Election Day Receipt Deadline should not be counted in light of this unprecedented crisis.

47. In short, the challenged laws are not supported by a state interest that is sufficient to justify the resulting burdens on the right to vote, and thus, these laws violate the First and Fourteenth Amendments.

## COUNT II

### Due Process
### U.S. Const. Amend. XIV, 42 U.S.C. § 1983
### Denial of Procedural Due Process

48. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

49. The Due Process Clause of the United States Constitution prohibits the states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1. Which protections are due in a given case requires a careful analysis of the importance of the rights and the other interests at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192 (9th Cir. 2015). Courts must first consider "the nature of the interest that will be affected" by the government's action as well as the "degree of potential deprivation that may be created" by existing procedures. *Nozzi*, 806 F. 3d at 1192–93. Second, "courts must consider the 'fairness and reliability' of the existing procedures and the

'probable value, if any, of additional procedural safeguards.'" *Id.* at 1193 (quoting *Mathews*, 424 U.S. at 343). Finally, courts must consider "the public interest, which 'includes the administrative burden and other societal costs that would be associated with' additional or substitute procedures. *Id.* (quoting *Mathews*, 424 U.S. at 347). Overall, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, (quotation and citation omitted).

50. Wisconsin's procedures for registering to vote and absentee voting must comport with due process. *See Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990). "Such due process is not provided when the election procedures [for voting by mail]" do not adequately protect the right to vote or ensure that an "individual is not continually and repeatedly denied so fundamental a right." *Id.*; *see also Saucedo v. Gardner*, 335 F. Supp. 3d 202, 217 (D.N.H. 2018) ("Having induced voters to vote by absentee ballot, the State must provide adequate process to ensure that voters' ballots are fairly considered and, if eligible, counted.").

51. "When an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183 (11th Cir. 2008) (quoting *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995)).

52. Under the current circumstances, there is little question that Wisconsin's election process is fundamentally unfair. The nature of the interest at stake in this case—the right to vote and to have that vote count—is the most precious liberty interest of all because it is preservative of all other basic civil and political rights.

53. But the challenged laws threaten to deprive Wisconsin voters of this right in the

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14**

upcoming election. Given the unprecedented situation at hand, Wisconsin must establish adequate procedures to ensure that voters have a reliable, fair, effective and safe method to cast their ballots in the April 7, 2020 election. Because the challenged laws are markedly inadequate in all of these respects, and substitute procedures are readily available to protect voters' rights with minimal burden to the State, the challenged laws violate Wisconsin voters' procedural due process rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A. Declaring that in the context of the current Coronavirus crisis, Wisconsin's current electronic and by-mail registration deadline, Wisc. Stat. § 6.28(1); requirements that copies of proof of residence and voter ID accompany electronic and by-mail voter registration and absentee applications, *id.* § 6.34, 6.86, respectively; and the requirement that polling places receive absentee ballots by 8:00 p.m. on election day to be counted, *id.* § 6.87, are unconstitutional in violation of the First and Fourteenth Amendments;

B. Ordering Defendants to extend Wisconsin's electronic and by-mail registration deadline to the deadline for in-person registration, April 3, 2020;

C. Enjoining the enforcement of Wis. Stat. § 6.34's proof of residency requirement for voter registrations until the COVID-19 crisis is over;

D. Enjoining the enforcement of Wis. Stat. §§ 6.86 - 87's photo identification requirements until the COVID-19 crisis is over;

E. Enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from rejecting ballots that are postmarked on or before Election Day and arrive at the municipal clerk's office within a minimum of ten days after Election Day; Ballots that do not have a postmark or other marking

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 15**

from the USPS shall be presumed to have been mailed by Election Day;

F. Awarding Plaintiff its costs, expenses, and reasonable attorneys' fees pursuant to, inter alia, 42 U.S.C. § 1988 and other applicable laws; and

G. Granting such other relief as the Court deems just and proper.

Dated this 18th day of March, 2020.

Respectfully submitted,

/s/ *Bruce V. Spiva*
Marc E. Elias
John Devaney
Bruce V. Spiva
Amanda R. Callais
Zachary Newkirk*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
acallais@perkinscoie.com
scommand@perkinscoie.com

Charles G. Curtis, Jr.
Sopen B. Shah
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703-3095
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
CCurtis@perkinscoie.com
SShah@perkinscoie.com

*Counsel for the Plaintiffs*
**Motions for Admission Forthcoming*

**PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16**