## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

Democratic National Committee and
Democratic Party of Wisconsin,

        Plaintiffs,

    v.

Marge Bostelmann, Julie M. Glancey,
Ann S. Jacobs, Dean Knudson, Robert F.
Spindell, Jr., and Mark L. Thomsen, in
their official capacities as Wisconsin
Elections Commissioners,

        Defendants.

Case No. 3:20-cv-249-wmc

---

## THE WISCONSIN LEGISLATURE'S
## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO INTERVENE

---

### INTRODUCTION

The Wisconsin Legislature moves to intervene under Federal Rule of Civil
Procedure 24, to defend the State of Wisconsin's interest in the enforcement of several
of Wisconsin's election laws, including during an ongoing election. Plaintiffs[1] have
sought a temporary restraining order and a preliminary injunction against the
Commissioners of the Wisconsin Elections Commission,[2] blocking several duly
enacted election laws—Wis. Stat. §§ 6.28(1), 6.34(2), 6.86(1), and 6.87—on
constitutional grounds. When Wisconsin laws are challenged on constitutional

---

[1] Democratic National Committee and Democratic Party of Wisconsin (collectively, "Plaintiffs").

[2] This Memorandum collectively refers to Defendants Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen, all sued in their official capacities as officials with the Wisconsin Elections Commission, as "the Commissioners," unless context requires otherwise.

grounds in court, the State of Wisconsin has recognized, under Sections 13.365 and 803.09(2m) of the Wisconsin Statutes, that the Legislature can vindicate the State's interests in the constitutionality of those laws.

The Legislature is entitled to intervene in this action, as a matter of right, if the Attorney General declines to defend fully any of the laws at issue. The Legislature's intervention motion is timely, the Legislature has a state-law recognized right under Sections 13.365 and 803.09(2m) to vindicate the State's interests in the constitutionality of the election laws challenged here, and this lawsuit plainly threatens that interest. And, depending on his approach to this case, the Attorney General may well not adequately represent that interest. According to public press reports, the Commissioners two days ago divided over the appropriate approach to several of the issues in this case, and it is thus uncertain whether this disagreement among the defendants here will permit the Attorney General to vigorously defend all of the challenged laws.

At a minimum, more limited permissive intervention is warranted. Plaintiffs have challenged several state election laws during an ongoing election, which laws further the State's compelling interest in the orderly administration of that election and in election integrity. The Legislature should, at minimum, be heard to defend the important state interests that these laws embody without burdening the Court in any way. To take one important option, this Court could permit the Legislature to submit the attached proposed briefing, in a way no different than an amicus brief, but *also* give the Legislature intervention status for the *extremely limited purposes*

*of filing an appeal from any adverse order blocking any of the challenged laws, especially any order impacting Wisconsin's photo ID and proof-of-residency requirements*. That would create no burden on either this Court or the parties, while ensuring that the Seventh Circuit can review any order blocking any election law, such as photo ID and proof-of-residency requirements, without delay or needless complications resulting from arguing about intervention status on appeal.  After all, as the Seventh Circuit recently explained when discussing legislative intervention: "No matter how many people can appeal a judgment on behalf of a state, there would still be only a single appeal . . . that prejudices no one and causes no unjustified strain on the courts." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 802–03 (7th Cir. 2019).

## INTEREST OF PROPOSED INTERVENOR

The Wisconsin Legislature is made up of two Houses, the State Assembly and the State Senate.  *See* Wis. Const. art. IV, § 1.  Wisconsin law recognizes that the Legislature—the body "vested" with the "legislative power"—has an interest in defending the State's own sovereign interest in the constitutionality of state law in court.  *Id.*  Specifically, Section 803.09(2m) of the Wisconsin Statutes states that "[w]hen a party to an action challenges in state or federal court the constitutionality of a statute . . . the legislature may intervene as set forth under [Section] 13.365." Section 13.365(3), in turn, provides that "[t]he joint committee on legislative organization may intervene at any time in the action on behalf of the legislature" and authorizes the hiring of counsel other than the Attorney General.  Wis. Stat.

§ 13.365(3). These are the same statutes that made the Seventh Circuit "comfortable adopting [this Court's] assumption" that the Legislature has "standing as an agent of the State of Wisconsin" in defense of the constitutionality of state law. *Planned Parenthood*, 942 F.3d at 798; *accord Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019).

## ARGUMENT

### I. The Legislature Is Entitled To Intervene As A Matter Of Right Under Rule 24(a)(2) If The Attorney General Chooses To Decline To Vigorously Defend Any Of The Election Laws Challenged Here

Federal Rule of Civil Procedure 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." There are four elements for intervention as of right under Rule 24(a)(2): "(1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Planned Parenthood*, 942 F.3d at 797 (citation omitted). The Legislature satisfies each of these elements here.

1. *This intervention application is timely*. "[F]our factors" govern "whether a motion to intervene is timely: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any

other unusual circumstances." *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 388 (7th Cir. 2019) (second brackets in original; citation omitted).  The "most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Id.* at 389–90 (citation omitted).

There is no question that this Motion to Intervene is timely, as the Legislature has filed less than two days after Plaintiffs filed their Complaint, at a time consistent with this Court's oral instructions.  Accordingly, there could be no plausible assertion of prejudice to either Plaintiffs or the Commissioners, the original parties to this case.  Meanwhile, the prejudice to the Legislature from the Court's denial of intervention would be substantial, as it would potentially result in the entry of a federal-court injunction against state election laws without full adversarial presentation of the relevant issues.

2. *The Legislature has an interest in the enforcement of Wisconsin's election laws*. An interest under Rule 24(a)(2) must "be direct, significant, and legally protectable," but the Seventh Circuit has "interpreted statements of the Supreme Court as encouraging liberality in the definition of an interest."  *Id.* at 391–92 (citations omitted).

The Legislature has a state-law-recognized interest in defending against this lawsuit, which challenges the constitutionality of multiple election laws, including during the ongoing April 7 election.  Like all States, Wisconsin has the sovereign "cognizable interest" in the "continued enforceability of its laws," including the

election laws at issue here. *Hollingsworth v. Perry*, 570 U.S. 693, 709–10 (2013) (citation omitted); *Lopez-Aguilar*, 924 F.3d at 392. By adopting Sections 13.365 and 803.09(2m), Wisconsin has made the sovereign choice that the Legislature may speak for the State in court, as a party, in cases where plaintiffs seek orders blocking the enforcement of state law on constitutional grounds. Specifically, under Section 803.09(2m), "[w]hen a party to an action challenges in state or federal court the constitutionality of a statute . . . the legislature may intervene as set forth under [Section] 13.365." *Id.* As the Seventh Circuit recently recognized when discussing how Rule 24(a)(2)'s interest element interacts with Sections 13.365 and 803.09(2m), the court was "comfortable adopting the . . . assumption that [Wis. Stat.] § 803.09(2m) gives the Legislature standing as an agent of the State of Wisconsin" in defense of state law. *Planned Parenthood*, 942 F.3d at 798; *see Bethune-Hill*, 139 S. Ct. at 1951.

While the Legislature can speak on behalf of Wisconsin's interest in defense of *any* law that the Legislature has enacted, *see Planned Parenthood*, 942 F.3d at 798, election laws like Sections 6.28(1), 6.34(2), 6.86(1), and 6.87 especially deserve a vigorous defense. A "State indisputably has a compelling interest in preserving the integrity of its election process," *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), in the "orderly administration" of its elections, and in "carefully identifying all voters [who may] participat[e] in the election process," *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (controlling plurality of Stevens, J.). The election laws at issue here further these crucial state interests, as explained in the Legislature's simultaneously filed Memorandum.

- 6 -

3. *This lawsuit plainly impairs the Legislature's interest.* As explained above, Wisconsin has a sovereign interest in defending the constitutionality of duly enacted state election laws.  Further, the State has bestowed upon the Legislature, the branch that enacted those election laws, the authority to defend this interest on behalf of the State in federal court.  *See* Wis. Stat. §§ 13.365, 803.09(2m).  Plaintiffs' lawsuit here, if successful, would directly impair that interest, prohibiting the enforcement of these election laws, including during the April 7 election.  Accordingly, the Legislature's interest is squarely at issue here.  *See* Wis. Stat. §§ 13.365, 803.09(2m); *Planned Parenthood*, 942 F.3d at 798; *accord Lopez-Aguilar*, 924 F.3d at 385.

4. *The Commissioners, speaking through the Attorney General, cannot adequately represent the Legislature's interest.* Rule 24(a)(2) imposes different adequate-representation standards for proposed intervenors, depending on whether "the prospective intervenor and the named party have the same goal" and whether "the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors."  *Planned Parenthood*, 942 F.3d at 799 (citations omitted).  When the proposed intervenor does not share the "same goal" with the named party, the proposed intervenor need only make a "'minimal' showing," *WEAC*, 705 F.3d at 659 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)), that the "representation of his interest 'may be' inadequate," *Planned Parenthood*, 942 F.3d at 799 (quoting *Trbovich*, 404 U.S. at 538 n.10).  However, when they *do* share the "same goal," and the named party "is [the Attorney General] charged by law with protecting the interests of the proposed intervenors," the

proposed intervenor must make "a concrete showing of the Attorney General's bad faith or gross negligence." *Id.* at 799, 801.

Here, the Legislature may well satisfy this inadequacy prong in two respects, depending on the approach that the Attorney General takes to this case.

*First,* and independently sufficient to satisfy this prong of the intervention analysis, the Legislature and the Attorney General may not share the "same goal," *id.* at 799, since the Commissioners here have apparently divided over the appropriate resolution of several of the issues in this case. Two days ago, the Commissioners met in a special meeting, where they agreed on a number of actions, like requesting additional funding for absentee-ballot supplies. *See* Declaration of Misha Tseytlin ("Tseytlin Decl.") Ex. 7 (Wis. Elec. Comm'n, Special Teleconference Meeting COVID-19 (Mar. 18, 2020)). According to public press reports, however, the Commissioners divided over whether to request that the Governor and the Legislature convene a special session to give the Commissioners more authority to modify current election laws and procedures in light of COVID-19, including as to several of the specific issues Plaintiffs raise here. *See* Tseytlin Decl. Ex. 6. It is unclear how the Attorney General will seek to navigate this apparent disagreement among the defendants here. In particular, it is unclear whether this disagreement among the Commissioners will cause the Attorney General to decline to defend some or all of the laws challenged here, or cause him to put forward a less-than-vigorous defense as a compromise among his clients. If that were to occur, then the Legislature would clearly make the "'minimal' showing," *WEAC*, 705 F.3d at 659 (citation

omitted), needed to demonstrate that the Attorney General's representation "'may be' inadequate," *Planned Parenthood*, 942 F.3d at 799, since its interest is in the full, vigorous enforcement of each of these election-law provisions.

*Second*, if the Attorney General chooses not to defend fully the constitutionality of any of the laws here, the Legislature would also plainly satisfy the inadequacy prong's "bad faith or gross negligence" standard, if that standard is held to apply. *Id.* at 799, 801.   The Attorney General failing to defend challenged state law is the paradigmatic example of when this standard has been met. *Id.*

All that said, if the Attorney General does vigorously defend the election laws at issue here, including as against Plaintiffs' request for emergency relief, the Legislature would respectfully take a back seat to the Attorney General in leading the defense of the challenged laws.   However, the Legislature would still ask to permissively intervene under that circumstance, as discussed immediately below, especially for purposes of filing any needed emergency appeals against any order blocking Wisconsin's photo ID and proof-of-residency requirements.

## II.   Alternatively, This Court Should Afford The Legislature Permissive Intervention Under Rule 24(b)(1)(B)

If the Court were to conclude that the Legislature has not made the required showings for intervention as of right, then the Legislature respectfully requests that the Court grant it permissive intervention under Rule 24(b)(1)(B), consistent with "the needs of federal-state comity." *Planned Parenthood*, 942 F.3d at 803.

The Legislature satisfies the only two requirements for permissive intervention: the intervenor "timely" files and "has a claim or defense that shares

with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Here, the Legislature's motion is timely, described above. *Supra*, pp. 4–5. And the Legislature has filed an attached proposed Motion to Dismiss and supporting Memorandum, raising defenses to the claims in Plaintiffs' Complaint, and so "shares a question of law with the main action." *Planned Parenthood*, 942 F.3d at 803.

Moving to the other permissible intervention factors, the Seventh Circuit in *Planned Parenthood* explained that Rule 24(b)(1)(B) "allows the district court to consider a wide variety of factors" when deciding whether to grant permissive intervention, including whether intervention would "overwhelm" the Court and whether intervention would serve "the needs of federal-state comity." *See* 942 F.3d at 802–03. Here, the Legislature's intervention may well be necessary for the Court to receive full adversarial briefing against an injunction blocking multiple election laws in the middle of an election. As noted, the Commissioners named as defendants here are apparently divided over several of the issues in this lawsuit, making it unclear whether the Attorney General can make a full, adversarial presentation. *See supra* pp. 8–9. The election laws challenged here, moreover, further the Legislature's "compelling interest" in the "integrity of its election process," *Eu*, 489 U.S. at 231, so intervention clearly comports with "the needs of federal-state comity," *Planned Parenthood*, 942 F.3d at 803. And allowing the Legislature to intervene would pose no practical difficulties, but would, instead, merely allow for full adversarial litigation in this significant case.

If, however, this Court is concerned about any practical difficulties that may arise with the Legislature's intervention, the Seventh Circuit has held that a court should stand "ready" to grant permissive intervention to the Legislature if it "is willing to accept conditions" on its participation "that would reduce any disruption to levels the court will tolerate." *Id.* at 804.  One important option is to accept the Legislature's simultaneously filed Memorandum in the same way that this Court would accept the brief of an amicus, but to give the Legislature intervention status for the extremely limited purposes of filing any needed emergency appeal from an order blocking any of the challenged laws, especially any of Wisconsin's photo ID and proof-of-residency requirements.  That would raise none of the practical issues that troubled this Court and the Seventh Circuit in *Planned Parenthood*, while clearing away needless complications—like the need to argue about intervention status during an emergency appeal—from an immediate appeal impacting an ongoing election.  "No matter how many people can appeal a judgment on behalf of a state, there would still be only a single appeal . . . that prejudices no one and causes no unjustified strain on the courts." *Id.* at 802–03.

## CONCLUSION

This Court should grant the Legislature's Motion to Intervene.

Dated this 20th day of March, 2020.

Respectfully submitted,

/s/Misha Tseytlin
Misha Tseytlin (State Bar No. 1102199)
Kevin M. LeRoy (State Bar No. 1105053)
TROUTMAN SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, IL 60606
(608) 999-1240
(312) 759-1939 (fax)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com

Eric M. McLeod (State Bar No. 1021730)
Lane E. Ruhland (State Bar No. 1092930)
HUSCH BLACKWELL LLP
P.O. Box 1379
33 East Main Street, Suite 300
Madison, WI 53701-1379
(608) 255-4440
(608) 258-7138 (fax)
eric.mcleod@huschblackwell.com
lane.ruhland@huschblackwell.com

Lisa M. Lawless (State Bar No. 1021749)
HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, WI 53202-3819
(414) 273-2100
(414) 223-5000 (fax)
lisa.lawless@huschblackwell.com

*Attorneys for the Wisconsin Legislature*