UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Democratic National Committee and Democratic Party of Wisconsin,<br><br>      Plaintiffs,<br><br>  v.<br><br>Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen, in their official capacities as Wisconsin Elections Commissioners,<br><br>      Defendants. | Case No. 3:20-cv-249-wmc |

THE WISCONSIN LEGISLATURE'S MEMORANDUM IN SUPPORT OF
ITS PROPOSED MOTION TO DISMISS THE COMPLAINT AND IN
OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

INTRODUCTION

Plaintiffs ask this Court to take the extraordinary step of changing the rules of an election while voting is already taking place, but offer no meaningful evidence that voters will suffer substantial burdens absent relief. The *entirety* of Plaintiffs' evidentiary support consists of: (1) the Wisconsin Department of Health Services' ("DHS") prohibition on mass gatherings; (2) evidence that Wisconsin absentee ballot requests have increased; (3) a statement that certain libraries have closed; and (4) a statement as to the number of COVID-19 results in Wisconsin. Plaintiffs have not submitted a single declaration from any voter suggesting a burden from the operation of Wisconsin's preexisting election laws, *let alone the type of broad-based evidence of*

*burden necessary for the capacious relief that Plaintiffs seek*. To take just the most obvious example, Plaintiffs ask this Court to block portions of Wisconsin's photo ID and proof-of-residency laws—which laws Plaintiffs have long politically opposed—on the sole, irrelevant evidentiary basis that certain libraries have closed, without submitting any evidence that any voter relies upon these libraries for this purpose, let alone presenting the type of broad evidence of unreasonable burden required by controlling caselaw.

This Court should also deny Plaintiffs' TRO/injunction motion, as well as dismiss their Complaint, under the *Burford* abstention doctrine, which instructs federal courts not to enter orders that would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (citation omitted) ("*NOPSI*"). States, including Wisconsin, are grappling with the difficult challenge of ensuring that democracy can continue in the face of the COVID-19 public-health crisis, consistent with guidance from the Centers for Disease Control and Prevention ("CDC"). On Monday of this week, the CDC issued revised guidance that "[d]uring the next 15 days (March 16–20, 2020), individuals and organizations should cancel or postpone in-person events that consist of 10 people or more throughout the U.S."[1] On the very next day, March 17, three politically diverse States—Illinois, Florida, and

---

[1] Declaration of Misha Tseytlin ("Tseytlin Decl.") Ex. 1 at 1 (Centers for Disease Control and Prevention, Interim Guidance: Get Your Mass Gatherings or Large Community Events Ready for Coronavirus Disease 2019 (COVID-19) at 1 (rev. Mar. 16, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/downloads/Mass-Gatherings-Document_FINAL.pdf (all websites last accessed Mar. 20, 2020).

Arizona—held in-person voting.[2] Ohio, on the other hand, responded by cancelling its in-person primary. Tseytlin Decl. Ex. 8. As more citizens vote in the coming weeks and months, elected officials and their politically accountable appointees will need to make similar choices. Indeed, Defendants in this case are actively engaged on these very issues, including apparently being divided on some of the issues in this case. This is precisely the type of case that calls out for federal courts to stay their hand.

## ARGUMENT

### I. This Court Should Deny Plaintiffs' Motion Because Plaintiffs Have Not Carried Their Heavy Evidentiary Burden

#### A. To Obtain A TRO/Preliminary Injunction Against Duly Enacted Laws, Plaintiffs Must Carry A Heavy Evidentiary Burden

1. "A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted) (emphasis in original).

The court conducts a two-phase inquiry to determine whether a temporary restraining order or a preliminary injunction is warranted, with the plaintiff bearing a heavy burden. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1085-86 (7th Cir. 2008); *Planned Parenthood of Wis., Inc. v. Van Hollen*, 963 F. Supp. 2d 858, 865 (W.D. Wis. 2013) (explaining that

---

[2] Tseytlin Decl. Exs. 2 (Illinois State Board of Elections, Illinois Primary Election Will Go on March 17 as Schedule (March 16, 2020)); 3 (Cook County Clerk's Office, Unofficial Election Results (March 17, 2020)); 4 (Arizona Secretary of State, State of Arizona's 2020 Presidential Preference Election Results (rev. March 17, 2020)); 5 (State of Florida Division of Elections, Elections Watch (rev. March 17, 2020)).

"the same showing is required" to obtain a temporary restraining order or a preliminary injunction). At the threshold phase, the plaintiff bears the burden of showing that: "(1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits." *Courthouse News Serv. v. Brown,* 908 F.3d 1063, 1068 (7th Cir. 2018) (citations omitted). If the plaintiff satisfies each of the threshold requirements, the court conducts the second phase of its inquiry, where the court "weigh[s] the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Courthouse News Serv.*, 908 F.3d at 1068. "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (quoting *Girl Scouts of Manitou Council*, 549 F.3d at 1086). Finally, the court considers "whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Id.* Ultimately, the plaintiff "bear[s] the burden of showing that a preliminary injunction is warranted." *Id.*

2. The claims that Plaintiffs have filed in this case also require them to make a substantial evidentiary showing on the merits.

For the *Anderson/Burdick* claim, Dkt.3 at 6–11; see *Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983), the challenger bears a heavy burden, as part of a two-step inquiry. The first step test requires the plaintiff to establish a burden on the right to vote, including that burden's severity. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). The second step requires

the plaintiff to show that the burden outweighs the state's interest. "If the burden on the plaintiffs' constitutional rights is 'severe,' a state's regulation must be narrowly drawn to advance a compelling state interest," sufficient to satisfy strict scrutiny. *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678, 681 (7th Cir. 2014) (citation omitted). "If the burden is merely 'reasonable' and 'nondiscriminatory,' by contrast, the government's legitimate regulatory interests will generally carry the day." *Id.* The sufficiency of a State's justification is generally a "legislative fact," accepted if reasonable. *Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014) ("*Frank I*"); *see, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 194–97 (2008) (controlling plurality of Stevens, J.).

Where the claim involves a broad-based challenge to an election law's operation to all impacted voters—not merely relief for a narrow category of *especially* burdened voters—the plaintiff "bear[s] a heavy burden of persuasion" to obtain such broad relief. *Crawford*, 553 U.S. at 200 (controlling plurality of Stevens, J.). As the Seventh Circuit made clear in *Frank II*, "the burden *some* voters face[ ]" under a challenged law "[can]not prevent the state from applying the law generally," *Frank v. Walker*, 819 F.3d 384, 386 (7th Cir. 2016) ("*Frank II*") (emphasis added). Thus, a challenge to an election law based on the burdens it places on individual voters must usually be on an as-applied basis, after an evidentiary showing by the plaintiff as to those specific voters. *Frank II*, 819 F.3d at 386–87.

For Plaintiffs' abbreviated procedural-due-process claim, Dkt.3 at 11–12, they must also carry a significant burden. For Plaintiffs to succeed, they must establish

- 5 -

that they possess a protected liberty/property interest and then, under the controlling standard in *Mathews v. Eldridge*, 424 U.S. 319 (1976), demonstrate that the process afforded by the State is insufficient in light of: (1) the plaintiff's "private interest" at stake; (2) "the risk of an erroneous deprivation," which requires consideration of the current process that the State affords, together with the "probable value" of any additional procedural safeguards; and (3) the "Government's interest." *Id.* at 335. Each of these showings requires Plaintiffs to "present [ ] *evidence* concerning the process" that they claim is "required under the *Mathews* balancing test to protect [their] alleged liberty interest." *Colon v. Schneider*, 899 F.2d 660, 670 (7th Cir. 1990) (emphasis added). Without such "evidence . . . in the record," there is nothing that would "warrant" a court "upsetting [the Legislature's] judgment" that these election laws are the appropriate "manner in which it wishes" to conduct its elections. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 334 (1985) (citing *Schweiker v. McClure*, 456 U.S. 188, 200 (1982); *Mathews*, 424 U.S., at 344); *see also U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 721–26 (1990).

### B. Plaintiffs Have Not Attempted To Carry Their Evidentiary Burden

Plaintiffs have not even attempted to put forward competent evidence that satisfies their heavy burden here, whether as to likelihood of success, irreparable harm, or the public interest. Indeed, the *only* evidence that Plaintiffs have supplied in support of their equitable request is: (1) the DHS emergency order prohibiting mass gatherings of 10 or more people, which implements the CDC's guidance, Dkt.3-1, Decl. of Bruce V. Spiva ("Spiva Decl.") Ex.1; (2) a press release from the Elections Commission stating that Wisconsin absentee ballot requests have increased over

prior years, Spiva Decl. Ex.2; (3) a statement from the Madison Public Library that it has closed in light of COVID-19, Spiva Decl. Ex.3; and (4) statistics from the DHS as to the number of COVID-19 results in Wisconsin, Spiva Decl. Ex.5. As explained below, Plaintiffs' complete lack of competent, relevant evidence dooms their requests for extraordinary relief against these laws, during an ongoing election. Indeed, under controlling law, the broad relief that Plaintiffs request requires them to bring forward broad evidence of widespread, unreasonable burdens on voters, and yet Plaintiffs have not submitted evidence of burden as to any voter.

### 1. Plaintiffs Have No Likelihood Of Success On The Merits Because They Submitted No Competent Evidence To Support Any Of Their Constitutional Claims

Plaintiffs challenge the constitutionality of several election laws enacted by the Legislature, specifically Wis. Stat. §§ 6.28(1), 6.34(2), 6.86(1), and 6.87. Each of these laws directly further Wisconsin's "indisputably [ ] compelling interest in preserving the integrity of its election process," *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), including the "orderly administration" of its elections, *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.)—and several have already withstood constitutional challenge, *see Crawford*, 553 U.S. 181; *Frank I*, 768 F.3d at 751. The Legislature below explains each of the challenged election-law provisions and how Plaintiffs failed to substantiate their constitutional claims with actual, competent evidence. The Legislature especially underscores that Plaintiffs' effort to sweep into this case Wisconsin's photo ID and proof-of-residency requirements—based *entirely* upon evidence showing the closure of some public

- 7 -

libraries—is particularly unjustified, and is, instead, an unsupported effort to use this crisis to attack laws that Plaintiffs have long politically opposed.

*a. Section 6.34(2)*. Section 6.34(2) provides that "upon completion of a [voter] registration form," each voter "shall provide an identifying document that establishes proof of residence," subject to some exceptions. Wis. Stat. § 6.34(2). Registering to vote in Wisconsin is "easy." *Frank I*, 768 F.3d at 748. This easy-to-satisfy requirement promotes election integrity, since the State has an important interest in the "orderly administration and accurate recordkeeping . . . for carefully identifying all voters [who may] participat[e] in the election process," which ensures that the State counts "only the votes of eligible voters." *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.).

Plaintiffs claim that Section 6.34(2) burdens voting rights and infringes procedural-due-process rights because voters now face "severe logistical obstacles . . . to generate copies of documents needed to provide residency." Dkt.3 at 3; *compare infra* pp. 10–11 (making same arguments as to photo ID requirements). According to Plaintiffs, with the "widespread, government-mandated closings" of public facilities, many voters "do not have access to the copiers and scanners needed to generate copies of these documents," and, regardless, these voters "would put their health at risk by leaving their homes in search of this type of equipment." Dkt.3 at 3.

Plaintiffs have provided no competent evidence that Section 6.34(2)'s proof-of-residence requirements burdens voters in this speculative manner. The *only* evidence that Plaintiffs have submitted in this respect is a statement from the Madison Public

Library announcing that its locations were closing due to COVID-19. Spiva Decl. Ex.3 at 2–3; *see* Dkt.3 at 9. Yet, if availability of scanning technology is even relevant—which it is generally not, as explained immediately below—publicly available information readily demonstrates that numerous other facilities offering scanning services to the public remain open. For example, The UPS Store has informed customers that its "retail locations are designated as essential and remain open. This means that we remain open to provide essential services such as mail and package receiving, shipping, *printing* and notary." Tseytlin Decl. Ex. 10 (emphasis added).[3] Further, to address health concerns, The UPS Store has "strongly encouraged" its franchisees to "[p]ractice social distancing and limit[ ] the number of customers in the store," Tseytlin Decl. Ex. 10, just like the CDC has recommended and DHS has mandated, *supra* pp. 1–2. This directly contradicts Plaintiffs' assertion that commercial locations, such as "UPS locations," are now closed or unsafe to visit for voters needing scanning or copying services, *see* Dkt.1 ¶¶ 7, 35; Dkt.3 at 3, 9.

Even more importantly, Section 6.34(2) does not even impose the hurdle that Plaintiffs have claimed, without regard to any library closures or the status of copying stores. Municipal clerks accept proofs-of-residence documents in electronic format, allowing citizens to use their smart phones to prove residency, without needing to find a scanner, copier, or printer. *See* Tseytlin Decl. Exs. 11 (Wisconsin Elections Commission, Proof of Residence Guide (rev. February 19, 2019))[4] (explaining that

---

[3] https://www.theupsstore.com/important-update (rev. March 18, 2020).

[4] https://elections.wi.gov/sites/elections.wi.gov/files/2019-01/27-28%20Proof%20of%20Residence%202019.pdf

citizens registering to vote may present their Proof of Residence document as "an electronic document on your smartphone, tablet, or computer"); 12 (Wisconsin Elections Commission, "I want to vote absentee" publication) (explaining that voters may request absentee ballots by email or by clicking "Vote Absentee" on www.myvote.wi.gov.).[5] Given that "vast majority of Americans—96%—now own a cellphone of some kind," with "81%" of Americans owning "smartphones," this avenue of complying with Section 6.34(2) is readily available to Wisconsin voters. Tseytlin Decl. Ex. 13 (Pew Research Center, *Mobile Fact Sheet* (June 12, 2019)).[6] And, notably, Plaintiffs did not attempt to submit evidence or tailor their request, under *Frank II*, to just voters lacking such phones or other readily available means for sending over their proof-of-residency information. *Frank II*, 819 F.3d at 386–87.

  *b. Sections 6.87(1) & 6.86(1).* Section 6.87(1) states that an "absent elector shall enclose a copy of his or her proof of identification or any authorized substitute document with his or her application" for an absentee ballot. Wis. Stat. § 6.87(1). Section 6.86(1)(ar), in turn, states that a voter who "applies for an absentee ballot in person at the clerk's office" must "present[ ] proof of identification" to the clerk. Wis. Stat. § 6.86(1)(ar). Here again, these photo ID provisions allow the State to "carefully identify[ ] all voters [who may] participat[e] in the election process," *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.), which promotes the State's compelling interest in election integrity. That is precisely why such photo ID laws

---

[5] https://elections.wi.gov/voters/absentee.

[6] https://www.pewresearch.org/internet/fact-sheet/mobile/.

have withstood constitutional scrutiny time and again, including in Wisconsin. *See, e.g.*, *Crawford*, 553 U.S. 181; *Frank I*, 768 F.3d at 751.

Plaintiffs claim that these provisions impose the same burdens as Section 6.34(2)'s proof-of-residency requirements, *see* Dkt.3 at 4, 8, and offer the same insubstantial evidence as support: the single statement from the Madison Public Library announcing that its locations were closing due to COVID-19, Spiva Decl. Ex.3 at 2–3; *see* Dkt.3 at 9. As with Section 6.34(2), Plaintiffs have not met their obligation to demonstrate an actual burden with competent evidence. Numerous facilities that offer scanning and printing services remain open to the public to copy photo ID, and the public may use those facilities in a consistent with health directives from the CDC and DHS. *Supra* pp. 1–2. And, of course, voters may request an absentee ballot by email or on the Commission's website, which then allows them to present an electronic copy of their photo ID document, thus removing whatever burden that may come from accessing a scanner or copier. Tseytlin Decl. Ex. 12. Under this option, voters just use their photo to take a photo of their photo ID, and do not need other equipment. Tseytlin Decl. Ex. 12. Given that the Supreme Court and the Seventh Circuit have each upheld standard photo ID laws, including Wisconsin's, *see Crawford*, 553 U.S. 181; *Frank I*, 768 F.3d at 751, and Plaintiffs surely must carry a far heavier burden than noting that some libraries have closed to obtain a judicial order blocking such a standard law in any respect.

c. *Section 6.28(1)*. Section 6.28(1), as relevant here, states that "[r]egistrations made by mail [for an election]" and "[e]lectronic registration . . . for an election" must

be submitted by "the 3rd Wednesday preceding the election." Wis. Stat. § 6.28(1) (5 p.m. by mail, 11:59 p.m. by electronic registration). This provides a clear deadline for registration in advance of the election, enabling the Commission to verify residency status and the accuracy of voter-registration information entered into the Commission's databases. *See* Tseytlin Decl. Ex. 9 at 2 (Administrator Meagan Wolfe, Update Regarding COVID-19 Election Planning (March 18, 2020) ("Administrator Memo")). Ensuring this accuracy is critical because, among other reasons, "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (citation omitted).

Plaintiffs claim that Section 6.28(1) unduly burdens Wisconsinites' voting rights because, after the March 18 deadline for electronic and by-mail registration, *see* Wis. Stat. § 6.28(1), "individuals wishing to register to vote can only do so in-person," Dkt. 3 at 7; *id.* at 1 (claiming that this will "effectively prevent potentially thousands of citizens" from registering). This, Plaintiffs claim, would "force [them] to violate government directives"—including "shelter in place" orders in Wisconsin—and "risk their health." Dkt.3 at 1.

None of these alleged burdens finds any support in the evidence that Plaintiffs have submitted to this Court. To begin, Plaintiffs have put forward no evidence establishing that any portion of the State has issued a shelter-in-place order. And even if the State did issue such an order in the future, any such order may well exempt traveling in public to register to vote and cast a ballot. Indeed, the DHS mass-

gathering order exempts "facilities for voting" and "[l]ibraries when operating as polling places." Spiva Decl. Ex.1 at 3 (capitalization altered). Plaintiffs likewise fail to offer evidentiary support for their claims that in-person registration would cause a risk to health. Again, the DHS mass-gathering order exempts facilities for voting, and "social distancing" measures may still be used at such facilities. Spiva Decl. Ex.1 at 2–3. This explains why Illinois, Florida, and Arizona held in-person voting this past week, one day after the CDC recommended avoiding gatherings of more than 10 people. *Supra* pp. 2–3. Plaintiffs offer no evidence that these three States violated the CDC's guidance by holding in-person elections, nor any basis to conclude that Wisconsin could not safely and legally hold in-person elections, as well.

*d. Section 6.87(6).* Section 6.87(6) provides that absentee ballots must be "delivered to the polling place serving the elector's residence before 8 p.m," while "[a]ny ballot not mailed or delivered as provided . . . may not be counted." Wis. Stat. § 6.87(6). Like the above-described provisions, Section 6.87(6) ensures the "orderly administration" of the State's elections, *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.), by, among other things, allowing for adequate time to canvass the election results, Tseytlin Decl. Ex. 9 (Administrator Memo 2). These statutes advance the State's compelling interest in "preserving the integrity of its election process," *Eu*, 489 U.S. at 231, and have a "plainly legitimate sweep," *Crawford*, 553 U.S. at 202 (controlling plurality of Stevens, J.) (citation omitted).

Plaintiffs claim that Section 6.87(6) violates constitutional voting rights and procedural due-process rights because, due to the claimed "impending surge in mail-

in ballots" and the "strains" on the U.S. Postal Service from COVID-19, many mail-in absentee ballots will not arrive at the polling place by the 8:00 p.m. deadline. Dkt.3 at 2. That is, as the number of absentee-ballot requests rises, the U.S. Postal Service will apparently be unable to deliver the mail in a timely manner. Dkt.3 at 9. But Plaintiffs offer no evidence supporting their claim that absentee ballots will overload the Post Office. Plaintiffs only put forward a press release from the Commission stating the number of absentee-ballot requests as of March 17. Spiva Decl. Ex.3; Dkt.3 at 4, 10. Although this release states that the 173,773 absentee-ballot requests as of that date "exceed[ ] total requests for three of the last four Spring Elections," the press release further provides that this number is far smaller than the "819,316 absentee ballots cast in the November 2016 Presidential Election." Spiva Decl. Ex.3.

### 2. Plaintiffs Submitted No Competent Evidence To Support Their Assertion That They Will Suffer Irreparable Harm

Plaintiffs have the burden of demonstrating that "irreparable injury is *likely* in the absence of an injunction," not just a mere "possibility." *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 22 (2008). Further, "[a]bstract injury is not enough. The plaintiff must show that [it has] sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02 (1983) (quotations omitted).

Plaintiffs have not provided any evidence that they will suffer irreparable harm absent preliminary injunctive relief. They have not cited any evidence that Democratic Party voters will be unable to provide copies of proof-of-residency

document under Section 6.34(2). *See supra* Part II.B.1.b. They have pointed to no evidence of Democratic Party voters being unable to provide photo ID documents under Sections 6.87(1) and 6.86(1). *See supra* Part II.B.1.c. They cannot show any Democratic Party voter who, having missed Section 6.28(1)'s deadline for online and by-mail registration, cannot utilize same-day registration at the polls. *See supra* Part II.B.1.a. And they submitted no evidence that there will be Democratic Party voters whose absentee ballots would be delivered past Section 6.87(6)'s Election Day deadline, despite the U.S. Postal Service's operation during this time. *See* Part II.B.1.d.

### 3. Plaintiffs Submitted No Competent Evidence To Support Their Claim That The Public Interest Favors Their Requested Relief

The multiple election laws challenged here are part of Wisconsin's efforts to "orderly administ[er]" its elections, including forwarding the critical functions of protecting election integrity, safeguarding the public's belief that integrity, and setting predictable, date-certain deadlines for election administration. *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.); *accord Eu*, 489 U.S. at 231; *see supra* pp. 7–8. Disabling these laws will harm these interests, and Plaintiffs have not submitted any evidence to support their assertion that their requested relief will benefit voters. *See supra* Part 1.B.1. At minimum, given that the enforcement of duly enacted laws is otherwise presumed to be in the public interest, *accord Abbott v. Perez*, 138 S. Ct. 2305, 2324 & n.17 (2018); *F.T.C. v. Elders Grain, Inc.*, 868 F.2d 901, 904 (7th Cir. 1989), Plaintiffs' absence of proof means that they cannot obtain injunctive relief.

The public interest further disfavors Plaintiffs' requested relief pursuant to the *Purcell* principle, under which courts should not change election rules in the middle of an ongoing election, as such changes "can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (per curiam). "[A]s an election draws closer, that risk will increase." *Id.*

Here, with the April 7 election in full swing, Plaintiffs request that this Court upend Wisconsin's election scheme—including by suspending critical portions of voter registration, photo ID, as well as legally established statutory deadlines. Consider the many election-related events that have already occurred, are underway, or are imminent. The deadlines for electronic registration and registration by mail have passed, Wis. Stat. § 6.28(1), and the essential verification of those registrations is ongoing, Tseytlin Decl. Ex. 9 (Administrator Memo 2). The Commission began publicly urging electors to request absentee ballots on March 13, 2020, Tseytlin Decl. 14 (Wisconsin Elections Commission, Wisconsin Elections Commission Responds to Coronavirus COVID-19, Urges Absentee Voting (March 13 2020)), nearly a week before the Plaintiffs' filing, and the public has until April 2 to make such requests. All forms of absentee voting are well underway. The numerous clerks across the State will soon "create and print" the official "poll lists" for Election Day, given that relevant deadlines have now passed. Tseytlin Decl. Ex. 9 (Administrator Memo 2). And, of course, the State has not postponed the April 7 election, Tseytlin Decl. Ex. 9 (Administrator Memo 6), so in-person registration and voting will move forward in less than three weeks, with Wisconsin's election-integrity measures like the proof-of-

residency and photo ID requirements in place. Under the *Purcell* principle, this Court should not disturb these ongoing election operations, especially given Plaintiffs' non-existent evidentiary showing.

### 4. The State And The Legislature Will Suffers Irreparable Harm As A Matter Of Law From The Relief That Plaintiffs Have Requested

Any time a State is enjoined by a court from effectuating statutes enacted by the representatives of its people—as Plaintiffs request here—it suffers a form of irreparable injury. *Abbott v. Perez*, 138 S. Ct. at 2324 & n.17. Further, given that the "State indisputably has a compelling interest in preserving the integrity of its election process," *Eu*, 489 U.S. at 231, and in the "orderly administration" of its elections, *Crawford*, 553 U.S. at 196 (controlling plurality of Stevens, J.), the irreparable harm to the State and the public is particularly grave here. Each of the challenged election laws here furthers those compelling interests by setting clear registration deadlines to facilitate registration verification and election-day readiness, Wis. Stat. § 6.28(1), by ensuring that only residents entitled to vote cast a ballot, Wis. Stat. § 6.34(2), by combating voter fraud, Wis. Stat. §§ 6.86(1)(ar); 6.87(1), and by ensuring accurate and timely canvassing of results, Wis. Stat. § 6.87(6). Plaintiffs would have this Court block these duly enacted provisions, thereby sowing election confusion and deeply disrespecting Wisconsin's sovereign judgments. That would inflict grave harm on the State of Wisconsin, its Legislature, and its citizens.

## II. This Court Should Dismiss This Case Under *Buford* Abstention, Or, At Minimum, Deny Plaintiffs' Motion On That Basis And Stay The Case

A. Under *Burford* abstention, a district court should dismiss or, at minimum, stay a case, *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *E & E Hauling v. Forest*

- 17 -

*Preserve District of DuPage Cty.*, 821 F.2d 433 (7th Cir. 1987), where, as relevant here, there are state-law remedies and "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial concern." *NOPSI*, 491 U.S. at 361 (citation omitted).

The fast-moving, complex nature of the response that all States—including Wisconsin—are undertaking to balance the present public health crisis with the orderly functioning of the democratic process presents a uniquely appropriate circumstance for *Burford* abstention. In Wisconsin, the Commission is the body charged with "the responsibility for the administration of . . . laws relating to elections," consistent with the laws that the Legislature has enacted. Wis. Stat. § 5.05(1). The rules and decisions made by the Commission are subject to judicial review in Wisconsin courts. *See e.g.*, Wis. Stat. § 227.52. On the very same day that Plaintiffs filed their Complaint, the Commission gathered to decide what action to take in response to the current public health situation. The Commission came to several important conclusions, while it divided on the wisdom of taking other measures, including ones similar to those that Plaintiffs have requested. Tseytlin Decl. Exs. 7 (Wisconsin Election Commission, Special Teleconference Meeting regarding COVID-19 (Mar. 18, 2020)); 6 (WisPolitics.com THU AM Update—19 March 2020). Plaintiffs ask this Court to usurp the Commission's decision-making process by requiring Plaintiffs' preferred method for administering this election. That would be deeply "disruptive of state efforts to establish a coherent policy with

respect to a matter of substantial concern," such as the critical balance between the needs of public health and democracy. *NOPSI*, 491 U.S. at 361.

Involving the courts in the difficult, sensitive balance is particularly inappropriate in light of the consequences of courts taking similar actions in "similar cases." *Id.* As this past Tuesday demonstrates, different States are taking different approaches to the difficult, fast-changing challenge. The States of Illinois, Florida and Arizona decided to hold primary elections on Tuesday, including substantial in-person voting. Tseytlin Decl. Exs. 2–5. The State of Ohio, on the other hand, made a different choice and moved its primary election to June. Tseytlin Decl. Ex. 8. In the coming weeks and months, numerous other States will have to make these same difficult, sensitive choices, with the guidance of the CDC and state officials. It would set a poor precedent, to put it mildly, if each of these decision—in each State—is to be second-guessed in federal court under the open-ended constitutional inquiry that governs the claims that Plaintiffs have brought. The far better approach is to permit each State to sort these difficult issues out for itself, with any appropriate review occurring in state courts, just as the *Burford* abstention doctrine envisions.

## CONCLUSION

This Court should dismiss this case and/or deny Plaintiffs' motion.

Dated this 20th day of March, 2020.

        Respectfully submitted,

        /s/Misha Tseytlin
        Misha Tseytlin (State Bar No. 1102199)
        Kevin M. LeRoy (State Bar No. 1105053)
        TROUTMAN SANDERS LLP
        1 N. Wacker Drive, Ste. 2905
        Chicago, IL 60606
        (608) 999-1240
        (312) 759-1939 (fax)
        misha.tseytlin@troutman.com
        kevin.leroy@troutman.com

        Eric M. McLeod (State Bar No. 1021730)
        Lane E. Ruhland (State Bar No. 1092930)
        HUSCH BLACKWELL LLP
        P.O. Box 1379
        33 East Main Street, Suite 300
        Madison, WI 53701-1379
        (608) 255-4440
        (608) 258-7138 (fax)
        eric.mcleod@huschblackwell.com
        lane.ruhland@huschblackwell.com

        Lisa M. Lawless (State Bar No. 1021749)
        HUSCH BLACKWELL LLP
        555 East Wells Street, Suite 1900
        Milwaukee, WI 53202-3819
        (414) 273-2100
        (414) 223-5000 (fax)
        lisa.lawless@huschblackwell.com

        *Attorneys for the Wisconsin Legislature*