IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEMOCRATIC NATIONAL COMMITTEE
and DEMOCRATIC PARTY OF WISCONSIN,

Plaintiffs,

v.

MARGE BOSTELMANN, JULIE M. GLANCEY,
ANN S. JACOBS, DEAN KNUDSON, ROBERT
F. SPINDELL, JR. and MARK L. THOMSEN,

Defendants.

OPINION AND ORDER

20-cv-249-wmc

In light of the ongoing impact of the COVID-19 crisis, the Democratic National Committee ("DNC") and the Democratic Party of Wisconsin seek a temporary restraining order and preliminary injunction barring enforcement of three requirements for the upcoming April 7, 2020, election: (1) the current electronic and mail-in voter registration deadline under Wis. Stat. § 6.28(1) of March 18, 2020; (2) the requirement that polling places receive absentee ballots by 8:00 p.m. on election day to be counted under Wis. Stat. § 6.87; and (3) the requirements of proof of residence and voter ID for electronic and mail-in registration and of photo identification for absentee ballot applications under Wis. Stat. §§ 6.34, 6.86, 6.87. (Dkt. #2.)

Yesterday, the court held a telephonic conference with counsel for the parties -- plaintiffs appeared by private counsel and defendants appeared by the Department of Justice. In addition, the court allowed counsel for the Wisconsin Legislature to participate based on its expressed intent to file a motion to intervene and a motion to dismiss

plaintiffs' complaint. (Dkt. #8.)[1] After the hearing, the court directed defendants to file a written response to plaintiffs' motion for TRO and preliminary injunction, as well as set a deadline of noon today for the proposed intervenor to seek to intervene formally and its own response to plaintiffs' motion.[2]

In light of the plaintiffs' motion and supporting materials, defendants' and the proposed intervenor's respective responses, arguments by all parties during the telephonic conference, *and* the near certainty of increasing barriers to *in person* voting for the April 7, 2020, election due to the COVID-19 pandemic, the court will grant in part and deny in part plaintiffs' motion for a temporary restraining order. Specifically, the court will grant plaintiffs' request to extend the deadline by which an individual can register to vote electronically to March 30, 2020, and deny the motion in all other respects at this time. In denying the remaining aspects of plaintiffs' motion for a temporary restraining order, the court expressly reserves on their request for extension of the date by which absentee ballots may be counted toward the election, which may still be taken up by motion for a preliminary injunction, either on or after April 7, or earlier if plaintiffs believe they have

---

[1] Today, the Wisconsin Legislature filed a motion to intervene and a proposed motion to dismiss and opposition to plaintiffs' motion for TRO. (Dkt. ##20, 22.) The court will take up these motions after considering responses from the parties, although the court has considered the Legislature's arguments expressed during the hearing and in the proposed intervenor's motion to dismiss and opposition to plaintiffs' TRO motion.

[2] Late today, the court also received a request from the Republican National Committee and the Republican Party of Wisconsin asking that the court delay any decision in this case for 48 hours so that they may file a motion to intervene. (Dkt. #34.) Due to the pressing circumstances surrounding this case, the court is unable to delay ruling and would simply encourage prompt filing of an intervention motion if either party continues seeks to participate going forward.

sufficient evidence to support that request, including the submission of proper, proposed findings of fact.

FACTS

**A. Challenged Election Laws**

Plaintiffs filed their complaint and the present motion on the afternoon of Wednesday, March 18, 2020, the third Wednesday before the April 7, 2020, election, which was also the last day for electronic and mail-in registrations for that election under Wisconsin Statute § 6.28(1). Left unchanged, individuals who still need to register to vote for the April 7 election must now either register in person (1) at the municipal clerk's office on or before Friday, April 3, 2020, or (2) at their polling place on the date of the election, Tuesday, April 7, 2020. In past elections, between 11% and 12% of voters registered at their polling place on the date of the election. (Pl.'s Br., Ex. 5 (dkt. #3-6) (12.7% of voters registered on election day in 2016 general election; 11.2% of voters registered on election day in 2014 general election).)

Under Wisconsin Statute § 6.87(6), absentee ballots must arrive at the municipal clerks' offices by 8:00 p.m. on election day to be counted. Under § 6.87(6)(b), individuals can request absentee ballots by submitting an application by April 2, 2020, the Thursday before the election, but must already be registered to do so online. In order to request an absentee ballot, individuals must also provide copies of photo identification pursuant to Wisconsin Statute § 6.86 and § 6.87.

Finally, Wisconsin Statute § 6.34 requires individuals seeking to register to vote electronically or by mail to provide copies of proof of residence. Section 6.34 contemplates proof of residence besides a valid, unexpired driver's license or Wisconsin State ID card, but practically speaking, if the same individual who is seeking to register online also wants to vote by absentee ballot, then that individuals would have to provide a picture or copy of a valid, unexpired Wisconsin driver's license or Wisconsin State ID card.

**B. COVID-19 Health Crisis**

As of March 19, 2020, 155 people in Wisconsin had tested positive for COVID-19, although a substantially larger number has likely already contracted it.[3] On March 17, Governor Evers had ordered "a statewide moratorium on mass gatherings of 10 people or more to mitigate the spread of COVID-19." (Pls.' Br., Ex. A (dkt. #3-2).) Moreover, restaurants, bars, indoor shopping malls and all public and private schools have been ordered closed. (*Id.*) Libraries are also closing, including those in Madison. (*Id.*, Ex. 3 (dkt. #3-4).)

According to recent news reports, while "[e]stimates vary, . . . most public health experts believe that the U.S. is between one and two weeks behind what has befallen Italy, where a near-total lockdown has been imposed on 60 million citizens, with only

---

[3] CDC, Cases in the U.S. (Mar. 19, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fcases-in-us.html; Wis. Dept. of Health Services, "Outbreaks in Wisconsin," available at https://www.dhs.wisconsin.gov/outbreaks/index.htm.

supermarkets and drug stores open to the public."[4]  At best, the impacts of the coronavirus between now and election day on April 7th are uncertain, although informed predictions are not good.

Plaintiffs reason that because of existing restrictions, as well as the likelihood of even greater restrictions, voters will rely on voting by absentee ballots in significantly higher numbers than typical.  Yet but individuals who have not already registered (or modified their registration to vote because of a change in address) no longer have the option to do so other than *in person*.  As support, plaintiffs point to the relatively large number of absentee ballots already requested relative to past Spring elections.  For example, as of the morning of Tuesday, March 17, the Wisconsin municipal clerks have received 173,000 absentee applications, of which 22% were received on Monday, March 16.  (Pl.'s Br., Ex. 2 (dkt. #3-3).)  With more than two weeks until the April 2 deadline for requesting absentee ballots, the number of requests already exceeds three out of the four most recent Spring elections.  (*Id.*)[5]  Moreover, in elections held in other states this past Tuesday, March 17, 2020, "significantly fewer voters showed up in-person on Tuesday, and turnout plummeted in Illinois, amid rising health concerns and social-distancing requirements."

---

[4] Kim Hjelmgaard & Jim Sergent, USA Today, "USA TODAY analysis: America's coronavirus 'curve' may be at its most dangerous point" (Mar. 19, 2020), available at https://www.usatoday.com/in-depth/news/2020/03/18/u-s-coronavirus-growth-rates-show-many-states-could-close-behind-new-york/5072663002/.

[5] This trend is likely to hold.  As of March 19, according to news reports, the number of absentee ballot requests is now more than 315,000.  Stephanie Fryer, Channel 3000, "Wisconsin absentee ballots break record amid virus outbreak," available at https://www.channel3000.com/wisconsin-absentee-ballots-break-record-amid-virus-outbreak/.

OPINION

## I. Standing

As an initial matter, the threshold jurisdictional question of standing must be addressed. *See Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) ("Standing is a threshold question in every federal case . . . ."); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (federal courts are obligated to consider the question of standing, regardless of whether the issue is raised by the parties). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).

In the voting rights context, courts have held that political parties have standing to assert the rights of its members who may face burdens to vote in upcoming elections. *See, e.g., Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008) ("The Democratic Party . . . has standing to assert the rights of those of its members who will be prevented from voting by the new law."); *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004) (political parties and labor organizations had "standing to assert, at least, the rights of their members who will vote in the [upcoming] election"); *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016) ("[P]olitical parties have standing to assert, at least, the rights of its members

6

who will vote in an upcoming election.") (citing *Fla. Democratic Party v. Hood*, 342 F.Supp.2d 1073, 1078-79 (N.D. Fla. 2004)). Moreover, an organization may establish standing by asserting injury to their own rights. *See Crawford*, 472 F.3d at 951 (Democratic Party injured by new voting law that compelled party to "devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"); *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 909 (W.D. Wis. 2016) (organizations had standing to challenge new voting laws by establishing that they "devoted money, staff time, and other resources away from their other priorities to educate voters about the new laws").

Here, plaintiffs are two membership organizations -- the DNC and the Democratic Party of Wisconsin. Plaintiffs claim that the challenged provisions place undue burdens on their members' right to vote in the upcoming April 2020 election. (Compl. (dkt. #1) ¶¶ 16-17.) Additionally, they assert that the challenged provisions will require them to "expend additional resources to assist their members and constituents to overcome these burdens to exercise their right to vote." (*Id.* ¶ 18.) Accordingly, plaintiffs have adequately established their standing to sue, both on behalf of their members and on behalf of themselves.

## II. Standard for Relief

Plaintiffs style their motion as a request for both a temporary restraining order and a preliminary injunction. (Pls.' Mot (dkt. #2) 1.) Both types of relief are designed to protect against irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits. *See Am. Can Co. v. Mansukhani*, 742 F.2d 314, 323 (7th

Cir. 1984) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 440 (1974)); *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A temporary restraining order, however, may be issued "before the adverse party can be heard in opposition," and has strict durational limits. Fed. R. Civ. P. 65(b). *See also Geneva Assurance Syndicate, Inc. v. Med. Emergency Servs. Assocs.*, 964 F.2d 599, 600 (7th Cir. 1992) ("The essence of a temporary restraining order is its brevity, its ex parte character, and (related to the second element) its informality."). Moreover, the federal rules only expressly require a party making such a request to provide "specific facts in an affidavit or a verified complaint." Fed. R. Civ. P. 65(b)(1)(A). Given the emergency nature of such relief, a relaxed evidentiary standard is appropriate. *See* 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2952 (3d ed.) ("There does not seem to be any case law defining the applicable standards for judging the quality and character of an affidavit offered in support of a motion under Rule 65(b). Since a temporary restraining order generally is sought on short notice, in a situation of pressing need, and Rule 65(b) expressly permits its issuance on the presentation of a verified complaint, it probably is unsound to hold affidavits to too rigorous a standard.").

At this point, the relief sought, and the order granted, is better classified as a temporary restraining order as opposed to a preliminary injunction due to the brief duration of the lawsuit and motion, the lack of a developed record, and the limited notice and opportunity to be heard provided the defendants. *See McDougald v. Jenson*, 786 F.2d 1465, 1472-73 (11th Cir. 1986) ("When determining whether to consider an order a TRO or a preliminary injunction . . . courts typically look to such factors as the duration of the

order, whether it was issued after notice and a hearing, and the showing made to obtain the order."); *Connell v. Dulien Steel Prod., Inc.*, 240 F.2d 414, 418 (5th Cir. 1957) ("Where, as here, the duration of the order barely extends beyond 20 days and even though issued after notice (perhaps insufficient) we think it is not a temporary injunction and appealable.").[6] So while this opinion and order resolves plaintiffs' motion for a temporary restraining order, their motion for a preliminary injunction is still pending. *See Levas & Levas v. Vill. of Antioch, Ill.*, 684 F.2d 446, 448 (7th Cir. 1982) ("[A] party might fail to satisfy the criteria for an ex parte TRO and still be entitled to a preliminary injunction."). If plaintiffs wish to continue to pursue that motion they must follow this court's preliminary injunction procedures, which are available on the court's website at https://www.wiwd.uscourts.gov/sites/default/files/Injunctive_Relief.pdf.

Regardless, as the proposed intervenor noted, the standard for determining whether either form of relief is appropriate is the same. *See Van Hollen*, 963 F. Supp. 2d at 865 (citing *Winnig v. Sellen*, 731 F. Supp. 2d 855, 857 (W.D. Wis. 2011)). Specifically, a plaintiff must first show "(1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (citing *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015)). Then, if this showing is successfully made, "the court must engage in a balancing analysis, to determine whether

---

[6] Viewing the motion in this light, coupled with the limited nature of relief provided by the court at this time, largely addresses the concerns raised in the proposed intervenor's opposition brief about the limited evidence in support of the motion.

the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Id.* (citing *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1057 (7th Cir. 2016)). A factor that the court must consider in balancing the equities in this particular case is the confusion that can result from last-minute orders affecting elections. *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Such confusion can undermine confidence in our electoral processes, which itself is integral to our system of democracy. *Id.*

## A. Likelihood of Success on the Merits

The court will begin with the third prong of the initial inquiry -- likelihood of success on the merits. Here, the merits question is whether any of the challenged provisions impose an unconstitutional burden on the right to vote. This question is governed by the framework set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under the *Anderson-Burdick* framework, the court must (1) "determine the extent of the burden imposed by the challenged provision"; (2) "evaluate the interest that the state offers to justify that burden"; and (3) "judge whether the interest justifies the burden." *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 904 (W.D. Wis. 2016) (citing *Anderson*, 460 U.S. 780; *Burdick*, 504 U.S. 428).

### 1. Online and By-Mail Registration Deadline

First, plaintiffs argue that in light of the current public health crisis, Section 6.28(1) -- which imposed a deadline of March 18, 2020, for voters to register safely online or by-mail -- creates an undue burden on a citizen's right to vote, since the only way for an

individual to register to vote now is to do so in person. (Pls.' Br. (dkt. #3) 7-8.) Because individuals are being urged by the State of Wisconsin and the CDC to avoid public spaces altogether, plaintiffs further contend that "many individuals will abide by these precautions and will not leave their homes to go to the municipal clerk's office or a polling place on election day or during the early vote period." (*Id.* at 8.)

In this way, plaintiffs analogize this case to *Florida Democratic Party v. Scott*, 215 F. Supp. 3d 1250 (N.D. Fla. 2016), in which a federal district court extended the voter registration deadline after a hurricane hit the state. *Id.* at 1257-59. According to that court's findings, the hurricane forced many citizens to evacuate the state and foreclosed in-person and by-mail registration: "[b]ecause those aspiring eligible voters could not register, they could not vote in the upcoming election." *Id.* at 1257. The court concluded that the registration deadline imposed a severe burden on the right to vote, and no legitimate state interest could justify the "de minimis" burden of extending the voter registration deadline. *Id.* Similarly, in *Georgia Coalition for the Peoples' Agenda, Inc. v. Deal*, 214 F. Supp. 3d 1344 (S.D. Ga. 2016), a district court ordered an extension of the registration deadline where a hurricane had caused the elections office to close for a week, delayed mail service, and forced citizens to evacuate or take shelter. *Id.* at 1345.

Here, unlike in *Scott* and *Georgia Coalition*, citizens have not *yet* been prevented from registering. However, the court cannot help but take judicial notice of the excruciating dilemma that will soon be faced by eligible voters who did not register by the March 18, 2020, deadline: either venture into public spaces, contrary to public directives and health guidelines or stay at home and lose the opportunity to vote. Moreover, while the court

recognizes the state's interest in the orderly administration of its elections, a short extension of the registration deadline would on its face appear to impose only a minimal burden while potentially affording a great number of as yet unregistered voters the opportunity to exercise their franchise by safely voting absentee.

At the court's request, Megan Wolfe, the Administrator of the Wisconsin Elections Committee, filed a declaration in response to plaintiffs' motion for temporary restraining order and preliminary injunction, setting forth the possible difficulties in extending the deadline for online and mail-in voter registration. *First*, Wolfe explains that reactivating the online registration process requires software changes that would need to be tested, including possible collaboration with the Department of Transportation (Wolfe Decl. (dkt. #24) ¶ 11.) Wolfe further explains that there are risks associated with software changes in the weeks preceding a statewide election.[7] While the court is certainly reluctant to create risks to election technology systems, reactivating a link that was in place as of two days ago should not pose a significant risk to the security of the election systems or, at least, Wolfe does not explain why such a risk should preclude such efforts. If after attempting to reactivate on-line registration, however, WEC learns of additional issues or risks, they could, of course, promptly return to the court for relief from its order.

---

[7] Wolfe also represents that a court order requiring reactivation of online registration would violate a "statewide enterprise level change freeze enacted to protect critical elections operations from unintentional disruption" (Wolfe Decl. (dkt. #24) ¶ 12), but the policy Wolfe appears to reference states that non-critical patches -- and this would appear to be a critical change -- cannot be made in the "*week* prior to a major election," and this order will not require any changes in the week before the election. *See* Wisconsin Elections Commission, "Election Security Report" (Sept. 2019) pp.16-17, available at https://elections.wi.gov/sites/electionsuat.wi.gov/files/2019-09/2019%20Elections%20Security%20Planning%20Report.pdf.

*Second*, Wolfe raises a concern about the timing of printing of municipal poll books, representing that a number of large municipalities and counties that assist with poll book printing on behalf of municipalities may have already sent their poll books to the publishers for printing. (*Id.* ¶ 14.) As Wolfe also explains, however, in-person registrations that occur up to April 3, 2020, and mail-in registrations that were required to be post-marked by March 18, 2020, will appear in supplemental or post-supplemental poll books. (*Id.* ¶¶ 14, 17.) Likewise, municipalities will be able to publish the additional online or mail-in registrations in these supplemental books. The court understands that these supplemental books may be significantly larger than normal as a result of any order extending the registration deadline, but this appears to be a reasonable downside to equitable relief that could increase both the robustness and health of the electorate, especially in light of the corresponding effect of having fewer, in-person voters to manage on election day.[8]

*Third*, Wolfe raises concerns about voter confusion in light of numerous publications informing individuals that their last day to register online was March 18, 2020. (*Id.* ¶ 16.) This, too, is a fair concern, but Wolfe does not explain, nor can the court conceive of any *prejudice* to voters caused by this confusion. While some individuals will not take advantage of the additional time to register online because they understandably believed that the opportunity had already passed, but at least some will be afforded a mechanism to vote safely, rather than be effectively denied that franchise by health restrictions, government edict or justified prudence for their safety or the safety of others.

---

[8] The proposed notice at the end of this order is intended to both encourage online registration for those now looking to vote absentee and discourage registration if the voter still intends to appear in person, particularly on election day.

The court understands that this is far from a perfect solution. At minimum, however, individuals who either were not aware of the March 18, 2020, deadline or learn of this court's extension of that deadline, will be able to register online for an extended period of time. The ideal solution under the circumstances would probably be to delay the vote itself, as some other states have already done, but as defendants point out this too has its problems, and regardless is up to the State of Wisconsin to decide. There being no such prospect on the horizon, the court has attempted to fashion what limited remedy it can to vindicate the rights of as many voters as practical.

*Fourth*, Wolfe expresses a number of concerns about implementing a new mail-in deadline. Specifically, she addresses the impact of extending the deadline until April 3, as plaintiffs request, which would permit mail-in registrations that are post-marked by that day and mean that registration requests may not even be received through the mail by election day. (*Id.* ¶ 18.) The court shares this concern, especially when coupled with the current requirement that absentee ballots be received by April 7, 2020, in order to be counted. Indeed, extending the mail-in registration deadline may act to disenfranchise certain voters, by giving them a false sense of confidence that they will be able to vote by absentee ballot in time for the April 7, 2020, election. Moreover, unlike the online or electronic registration process, the mail-in process is not centralized; instead, as Wolf explains, any change to the process would depend on implementation by 1,850 municipal clerks and 72 county clerks. In light of this dynamic, the court is concerned about the ability to manage the communication process, as well as ensuring that these clerks are not overwhelmed by mail-in registration requests during the same period in which they will be

preparing polling books and managing absentee applications.

Accordingly, the court finds that plaintiffs have demonstrated a likelihood of success on the merits that the March 18, 2020, online registration deadline imposes an undue burden on citizens' right to vote, but concludes that plaintiffs have not met their burden with respect to mail-in registration.[9]

## 2. Proof of Residence and Identification Provisions

As previously litigated, plaintiffs also renew their contention that requiring individuals seeking to register to vote or applying for an absentee ballot to provide copies of documentation places a severe burden on the right to vote. As described in the fact section above, Wisconsin Statute §§ 6.34, 6.86 and 6.87 require proofs of residency for registrants and proof of voter identification for absentee ballot applicants. Plaintiffs reason that obtaining these documents may require individuals to venture out into the public to gain access to a copier, scanner, computer and/or printer, and specifically point out that the need to venture out of one's home to access this technology will likely disproportionately impact less-affluent populations, including the elderly and college students.[10] In support of this argument, plaintiffs submit proof that libraries, which may typically provide access to copiers and printers, have closed because of the COVID-19

---

[9] As addressed below, some further relief may be sought by either side should the extension of online registration create issues with respect to receipt and processing of absentee votes timely.

[10] While perhaps not a complete solution, the court notes, as defendants' counsel suggested during the hearing, that an individual can upload a photo of his or her driver's license or Wisconsin ID from virtually any smart phone in applying for an absentee ballot, thus eliminating the need to venture outside, although this assumes access to a smartphone.

outbreak.

The court does not dismiss out of hand the additional burden placed on some by the proof of residency and identification requirements in the face of the COVID-19 pandemic, either because of more limited access to public copiers, printers or scanners or because of fears in venturing out to access that technology. However, the State's interest with respect to this requirement has been recognized by the United States Supreme Court and the Seventh Circuit Court of Appeals, and appears to be much more significant than any interest in limiting the time period for registering to vote electronically or by mail. *See Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203 (2008) (holding that Indiana's interests in statute requiring government issued photo identification to vote were sufficiently weighty to justify any limitation imposed on voters); *Frank v. Walker*, 768 F.3d 744, 751 (7th Cir. 2014) (relying on *Crawford* to reject challenge to Wisconsin's photo identification requirement).

Plaintiffs also argue that the state's interest is adequately addressed by the requirement that a voter must "sign a comprehensive certificate on absentee ballots stating she is a resident of the locality from where she is voting" (Pl.'s Br. (dkt. #3) 10 (citing Wis. Stat. § 6.87(2))), but this was true in past lawsuits and yet not found to be sufficient to satisfy the state's interest in requiring identification, including preventing voter fraud and safeguarding voter confidence. *See Crawford*, 553 U.S. at 191 (describing interests at play). On this limited record, the court cannot conclude that plaintiffs are likely to succeed in

this challenge.[11]

### 3. Absentee Ballot Receipt Deadline

Finally, plaintiffs request that the court extend the deadline for receipt of absentee ballots from the current deadline of 8:00 p.m. on election day pursuant to Wis. Stat. § 6.87(6). While this request may have merit, and may be of assistance for the Elections Commission and municipal clerks should state and local officials not fulfill their promise to ensure sufficient staffing before and on election day, the court will not speculate about the need for this relief on the limited record before it. Instead, as described above, the court will allow plaintiffs to pursue additional relief in a motion for preliminary injunction, with a more robust record, following the court's guidelines.[12]

---

[11] The court acknowledges that late today plaintiffs submitted affidavits from four potential voters averring to the difficulty in providing proof of residence and photo identification.

[12] The proposed intervenor also argues that this court should deny plaintiffs' request for relief and dismiss their complaint under the *Burford* abstention doctrine, pointing out that decisions as to the administration of the state's elections laws are reserved to the Wisconsin Election Commission, which is subject to state judicial review. (Proposed Intervenor's Br. (dkt. #23) 2, 17-20.) Any intervention by this court into the state's election administration would, according to the proposed intervenor, "usurp" the Commission's role and disrupt state efforts to establish a critical balance between the needs of public health and democracy. (*Id.*at 18-19.) *Burford* abstention applies when federal intervention would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 504 (7th Cir. 2011) (quoting *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*")). Certainly, the administration of elections during a public health emergency is a matter of substantial public concern and as proposed intervenor points out, the Commission met two days ago to "decide what action to take in response to the current public health situation" (Proposed Intervenor's Br. (dkt. #23) 2, 18), but in a memo published that same day, the Commission specifically advised it does not have the authority to change the statutory deadlines for online and by-mail registration or for the return of absentee ballots, and that "any change may require court intervention, an act of the Legislature, or an order of the Governor." (Tseytlin Decl., Ex. 9 (dkt. #25-9) 2-3.) Moreover, *Burford* abstention is only appropriate "[w]here timely and adequate state-court review is available," *NOPSI*, 491 U.S. at 361, and there appears to be no time or inclination for state-court review, with the online and by-mail registration deadline having now passed and election day is fast approaching. Given the apparent lack of any state-court

## B. Irreparable Harm and Inadequate Remedies at Law

As for the online and by-mail registration deadlines, the remaining two prongs of the initial showing -- irreparable harm and inadequate remedies at law -- are also satisfied. Where, as here, plaintiff has demonstrated a likelihood of success on the merits as to a constitutional claim, such an injury has been held to constitute irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (where plaintiff had proven a probability of success on the merits, the threatened loss of First Amendment freedoms "unquestionably constitutes irreparable injury"); *Preston v. Thompson*, 589 F.2d 300, 303 n.4 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm."). Moreover, courts have specifically held that infringement on the fundamental right to vote constitutes irreparable injury. *See Obama for Am. v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012) ("A restriction on the fundamental right to vote . . . constitutes irreparable injury."); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (holding that plaintiffs "would certainly suffer irreparable harm if their right to vote were impinged upon").[13]

Additionally, traditional legal remedies would be inadequate, since infringement on a citizens' constitutional right to vote cannot be redressed by money damages. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not

---

review and the narrow relief being fashioned by this court, *Burford* abstention is not an appropriate reason to duck this court's obligation to protect voters' rights. *See Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined.").

[13] Plaintiffs also argue that exposing Wisconsin voters to the coronavirus constitutes irreparable harm (Pls.' Br. (dkt. #3) 13), but have offered *no* evidence as to the efforts being made by the state to mitigate that risk or its extent.

adequate."); *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress."). Accordingly, plaintiffs have made an initial showing that a temporary restraining order is warranted as to the online and by-mail registration deadline.

### C. Balance of Harms

Finally, the court must engage in a balancing analysis to determine whether a temporary restraining order is warranted. Under Seventh Circuit law, a "sliding scale" approach is used for this purpose: "[t]he more likely it is that [the movant] will win its case on the merits, the less the balance of harms need weigh in its favor." *Girl Scouts*, 549 F.3d at 1100. "When conducting this balancing, it is also appropriate to take into account any public interest, which includes the ramifications of granting or denying the preliminary injunction on nonparties to the litigation." *Id.*

Plaintiffs argue that an injunction would protect the health of the public and prevent disenfranchisement. (Pls.' Br. (dkt. #3) 14.) Although plaintiffs recognize that their requested relief will create more administrative tasks for the state, they contend that such an inconvenience is "outweighed by the vindication of constitutional rights." (*Id.*) Certainly, the extension of the online registration deadline will impose administrative burdens on the state, but these potential hardships appear minor compared with the growing dilemma being faced by eligible, but as yet unregistered voters between now and election day: either risk your and the public's health by venturing into public to register in person, or stay home and relinquish your voting franchise. While a modest extension of the registration deadline is not likely to relieve all or even most of that difficult choice,

it may do so for some.

Finally, the court is sensitive to the fact that last-minute changes to election laws may generate confusion and in turn undermine confidence in the electoral system. *See Purcell*, 549 U.S. at 4. Nevertheless, it is apparent that some accommodation is necessary to preserve citizens' right to vote amidst this unprecedented public health crisis. This court's narrow remedy attempts to find a balance between these vitally important interests.

ORDER

IT IS ORDERED that plaintiffs' emergency motion for temporary restraining order and preliminary injunction (dkt. #2) is GRANTED IN PART AND DENIED IN PART as follows:

a) The motion is GRANTED with respect to plaintiffs' request to extend the deadline by which individuals may register to vote electronically until March 30, 2020, subject to the following steps:

(i) Defendants shall reset the "clock" that tells the MyVote website (https://myvote.wi.gov) to stop accepting on-line registration requests until the end of the day on Monday, March 30, 2020.

(ii) Defendants shall test the necessary code changes to validate correct operation and the absence of errors or defects, including proper interface with the Department of Transportation and testing of the statewide voter registration system.

(iii) Defendants shall release and activate the new code, making it accessible to the public and post a notice as prominently as practical on the first page of both MyVote and WEC website. For review by the parties, the court proposes the following language. The parties should provide any proposed edits to this language on or before Monday, March 23, 2020, at 12:00 p.m.

**SPECIAL NOTICE WITH RESPECT TO ONLINE REGISTRATION AND ABSENTEE BALLOTS FOR APRIL 7, 2020, ELECTION ONLY DUE TO CORONAVIRUS PANDEMIC**

By order of the U.S. District Court for the Western District of Wisconsin, online registration to vote is extended until March 30, 2020, for the April 7, 2020, election ONLY, notwithstanding <u>ANY</u> contrary Wisconsin statute, notice on this website, other state websites or other writing or postings. HOWEVER, the purpose of this extension is to facilitate voting by absentee ballots for those who may no longer wish or be unable to vote in person at your local municipal clerk's office by absentee ballot on or before Friday, April 3, 2020, or at your local polling place on election day, Tuesday, April 7, 2020, due to the coronavirus pandemic. If you are not currently registered to vote in the State of Wisconsin, to obtain an absentee ballot, you will not only have to complete the online registration requirements, but then also request online that an absentee ballot be mailed to you. Both steps will require that you already have a valid, unexpired Wisconsin driver's license or Wisconsin state ID card reflecting your current address, and have the ability to post it electronically for purposes of requesting the mailing of an absentee ballot. If you are unable to do these things or still intend to appear in person to actually vote, you are STRONGLY DISCOURAGED from still registering to vote in the April 7th election online, since online voter registration during this special extended period MAY complicate your ability to vote in person.

       (iv) Consistent with the above, this notice shall be promptly removed after March 30, 2020.

  b) Defendants are ENJOINED from enforcing the March 18, 2020, deadline under Wisconsin Statute § 6.28(1) with respect to online registration.

  c) In all other respects, the motion is DENIED, albeit without prejudice to plaintiffs renewing their request for extension of the deadline for counting absentee ballots in a motion for preliminary injunction.

Entered this 20th day of March, 2020.

                BY THE COURT:
                /s/

                _____
                WILLIAM M. CONLEY
                District Judge