IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE and DEMOCRATIC PARTY OF WISCONSIN,<br><br>          *Plaintiffs*,<br><br>  v.<br><br>MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners,<br><br>          *Defendants*. | Case No. 3:20-cv-249-wmc |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY THE REPUBLICAN NATIONAL COMMITTEE AND THE REPUBLICAN PARTY OF WISCONSIN**

  The Court should allow Movants, the Republican National Committee and the Republican Party of Wisconsin, to intervene as defendants in this case on two independent grounds.

  ***First***, Movants satisfy the criteria for intervention as of right under Rule 24(a)(2). Their motion is unquestionably timely; the complaint was filed four days ago, this litigation is still in its infancy, and no party will be prejudiced by intervention at this early stage. Movants also have a clear interest in this matter. Political parties have a recognized interest in asserting and protecting the rights of their members in upcoming elections and in protecting their own agendas and resources from changes to election laws. Finally, no other party adequately represents Movants' interests. Adequacy is not a demanding standard, and the other defendants do not share Movants' interests in conserving their resources and helping Republican candidates and voters.

  ***Second***, in the alternative, the Court should grant Movants permissive intervention under Rule 24(b). Again, this motion is timely. Movants' defenses share common questions of law and fact with the exiting parties, and intervention will result in no delay or prejudice. The Court's resolution of the important questions here will have significant implications for Movants, as they work to ensure

1

that Republican voters have the undeterred opportunity to participate in fair elections and they distribute their resources throughout the election season.

Whether under Rule 24(a) or (b), Movants should be allowed to intervene as defendants.

## INTERESTS OF PROPOSED INTERVENORS

Movants are political committees that support Republicans in Wisconsin. The Republican National Committee is a national committee as defined by 52 U.S.C. §30101. It manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The Republican Party of Wisconsin is a recognized political party that works to promote Republican values and assist Republican candidates in obtaining election to partisan federal, state, and local office. Both Movants have interests—their own and those of their members—in how Wisconsin elections are run.

## ARGUMENT

### I.     Movants are entitled to intervene as of right.

Rule 24 is "liberally construed with all doubts resolved in favor of the proposed intervenor." *South Dakota ex rel Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003); *accord Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011); *Clark v. Sandusky*, 205 F.2d 915, 919 (7th Cir. 1953). Under Rule 24(a)(2), this Court must grant intervention as of right if:

1. The motion is timely;
2. Movants have a legally protected interest in this action;
3. This action may impair or impede that interest; and
4. No existing party adequately represents Movants' interests.

*Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003). Movants satisfy each of these requirements.

#### A.     The motion is timely.

The Court considers four factors in determining the timeliness of a motion to intervene: (1) the length of time that the parties knew or should have known of their interest in the case; (2) the

extent of prejudice to the original parties; (3) the extent of prejudice to the intervenors if the motion is denied; and (4) any other unusual circumstance that "would militate in favor a finding that [the] petition was timely." *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 534-37 (7th Cir. 1987); *Lopez-Aguilar v. Marion County Sheriff's Dep't*, 924 F.3d 375, 388 (7th Cir. 2019). These factors all indicate that Movants filed a timely motion.

Movants filed this motion rapidly—a mere four days after the complaint was filed. *See e.g.*, *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015) (motions filed 4-6 weeks after the complaint are timely); *Levin v. Miller*, 2012 WL 1982287, at *2 (S.D. Ind. June 1, 2012) (motion filed 15 days after briefing on the motion to dismiss ended was timely); *Richardson v. Helgerson*, 2015 WL 3397623, *1 (W.D. Wisc. May 26, 2015) (motion filed one month after the complaint was timely). Movants are unaware of *any* decision from *any* court holding that four days is too late to intervene. In fact, just two days ago, this Court "encourage[d]" Movants' "prompt filing of an intervention motion." Doc. 37 at 2 n.2.

Nor will Movants' intervention prejudice the parties. "'The timelines requirement was not designed to penalize prospective intervenors for failing to act promptly; rather it insures that existing parties to the litigation are not prejudiced by the failure of would-be intervenors to act in a timely fashion'"—*i.e.*, even motions filed after unreasonable delay are "timely" if the original parties will suffer no prejudice. *Westinghouse*, 824 F.2d at 535. This Court has now decided Plaintiffs' motion for a TRO, so Plaintiffs cannot cite their need for emergency relief as a source of prejudice. But if Movants are not allowed to intervene, their interests in this case could be irreparably harmed by decisions (including any renewed motions by Plaintiffs for a preliminary injunction) that will affect the upcoming elections in Wisconsin. The motion is thus timely. *See id.* at 534-37.

### B.     Movants have protected interests in this action.

Movants also have a "legally protectable interest in this litigation." *Lopez-Aguilar*, 924 F.3d at 391. The Seventh Circuit has embraced the Supreme Court's approach of "'encouraging liberality in the definition of an interest.'" *Id.* at 392. Movants easily satisfy this liberal standard.

Movants' interests in this action are, at a minimum, equal to Plaintiffs'. *See Baldus v. Members of Wis. Gov't Accountability Bd.*, 2011 WL 5834275, *1 (E.D. Wis. Nov. 21, 2011) (explaining that Democratic Congress Members and Republican Congress Members were "identically situated" in their interests). Movants are Plaintiffs' direct counterparts with mirror interests in this litigation. Like Plaintiffs, Movants also have an upcoming primary election and will have candidates on the ballot in the general election.* If Plaintiffs have standing to "assert the rights of [their] members who may face burdens to vote in upcoming elections," Doc. 37 at 6; *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), then Movants have an interest in asserting the rights of their members from eleventh-hour changes to voting laws and procedure. And if Plaintiffs have an interest in protecting the integrity of elections to which they "'devote resources," Doc. 37 at 7; *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 909 (W.D. Wis. 2016), then Movants do too—especially where, as here, Plaintiffs aim to freeze the very laws that were enacted to maintain that integrity.

But even considered in isolation, Movants have "direct" and "significant" interests in the continued enforcement of state laws governing voter registration, absentee ballots, and voter identification, as those laws are designed to serve "the integrity of [the] election process," *Eu v. San Fran. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). Federal

---

* The relief requested by Plaintiffs reaches beyond the upcoming primary election. *See* Doc. 3 at 15-16 (requesting ongoing injunction against "Wis. Stat. § 6.34's proof of residency requirement for voter registrations" and "the enforcement of Wis. Stat. §§ 6.86 - 87 photo identification requirements for absentee ballot requests until the COVID-19 crisis is over").

courts routinely recognize that political parties have interests supporting intervention in litigation regarding elections and election procedures. *See, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001); *Trinsey v. Pennsylvania*, 941 F.2d 224, 226 (3d Cir. 1991); *Anderson v. Babb*, 632 F.2d 300, 304 (4th Cir. 1980); *Hastert v. State Bd. of Elections*, 777 F. Supp. 634, 639 (N.D. Ill. 1991); *Radogno v. Ill. State Bd. of Elections*, 2011 WL 5868225, *1 (N.D. Ill. Nov. 22, 2011). Indeed, given their inherent and broad-based interest in elections, usually "[n]o one disputes" that a political party "meet[s] the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014). That is certainly true where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005); *see id.* (under such circumstances, "there is no dispute that the Ohio Republican Party had an interest in the subject matter of this case"). In short, because Movants' candidates "actively seek [election or] reelection in contests governed by the challenged rules," and because their members' ability to participate in those elections is governed by the challenged rules, Movants have an interest in "demand[ing] adherence" to those requirements. *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005).

### C. This action threatens to impair Movants' interests.

Movants are "so situated that disposing of [this] action may as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2). Movants "do not need to establish that their interests *will* be impaired," "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). This language in Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967). Here, the risks to Movants' interests are plain.

If Plaintiffs' action succeeds, then the rules surrounding voter registration, absentee ballot access, and voter identification will be upended just weeks before the April 7 election. Not only would

this undercut democratically enacted laws that protect voters and candidates (including Movants' members), *Frank v. Walker*, 768 F.3d 744, 751 (7th Cir. 2014), it would change the "structur[e] of th[e] competitive environment" and "fundamentally alter the environment in which [Movants] defend their concrete interests (e.g. their interest in … winning [election or] reelection)." *Shays*, 414 F.3d at 85-86. These late changes threaten to confuse voters and undermine confidence in the electoral process. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections … can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). In addition to that independent harm, Movants will be forced to spend substantial resources informing Republican voters of changes in the law, fighting inevitable confusion, and galvanizing participation in the wake of the "consequent incentive to remain away from the polls." *Id.*; *Crawford*, 472 F.3d at 951; *Thomsen*, 198 F. Supp. 3d at 909.

Moreover, "as a practical matter," Fed. R. Civ. P. 24(a)(2), an adverse decision from this Court could prevent Movants from defending their rights at all. *See Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982). Even setting aside the long-term effects on the integrity of elections and public confidence in the electoral process, this proceeding might be the *only* time that Movants can litigate Plaintiffs' claims. The election is weeks away; for some of the challenged laws, the relevant deadline has already passed. *See, e.g.*, Wis. Stat. §6.28(1). In a very real sense, then, this Court's decision could be the final word on the laws governing the next election. Because the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them *before* making potentially adverse decisions," *Brumfield*, 749 F.3d at 345 (emphasis added), the "best" course—and the one that Rule 24 "implements"—is to give "all parties with a real stake in a controversy … an opportunity to be heard" in this suit, *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).

6

### D. The existing parties do not adequately represent Movants' interests.

Finally, no existing parties are "adequate representatives of [Movants'] interest." *Lopez-Aguilar*, 924 F.3d at 391. Inadequacy is not a demanding showing. Movants need only show "that the representation 'may be' inadequate." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). "'[T]he burden of making [this] showing should be treated as minimal.'" *Id.* Representation is inadequate when the existing parties have "a 'different' interest" from the movant, even if they have "'a shared general agreement,'" "'tactical similarity [in their] legal contentions,'" or "general alignment" on the correct outcome. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003); *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015).

Plaintiffs clearly do not represent Movants' interests, and Defendants do not adequately represent them either. As Judge Garland has explained, courts "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. "[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a [private movant] merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001). Here, too, Defendants necessarily represent "the public interest," rather than Movants' "particular interest[s]" in protecting their resources and the rights of their candidates and voters. *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). While all political parties want what's best for the public, the reality is that they have very different ideas of what that looks like and how best to accomplish it. As the Ohio Democratic Party argued in a similar context, "a political organization dedicated to the election of Democratic candidates for office[] plainly has separate interests … that are not adequately represented" by "the elected … official responsible

7

for the administration of the State's election laws." Doc. 148, *Ne. Ohio Coalition for the Homeless v. Brunner*, No. 2:06-cv-00896 (S.D. Ohio).

This tension is stark in the context of elections. Defendants have no interest in the election of particular candidates or the mobilization of particular voters, or the costs associated with either. Instead, state officials, acting on behalf of all Wisconsin citizens and the state itself, must consider "a range of interests likely to diverge from those of the intervenors." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). Those interests include "the expense of defending the current [laws] out of [state] coffers," *Clark v. Putnam Cty.*, 168 F.3d 458, 461 (11th Cir. 1999), "the social and political divisiveness of the election issue," *Meek*, 985 F.2d at 1478, "their own desires to remain politically popular and effective leaders," *id.*, and even the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991).

Defendants' and Movants' interests will thus diverge throughout this litigation—particularly on the decision, if necessary, to pursue an emergency appeal to the Seventh Circuit. At the very least, Movants will "serve as a vigorous and helpful supplement" to Defendants and "can reasonably be expected to contribute to the informed resolutions of these questions." *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Movants should thus be granted intervention as of right.

## II. Alternatively, Movants are entitled to permissive intervention.

Even if Movants were not entitled to intervene as of right under Rule 24(a), this Court should grant them permissive intervention under Rule 24(b). Exercising broad judicial discretion, courts grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The court also must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The requirements of Rule 24(b) are met here. As explained, Movants filed a timely motion. And Movants will raise defenses that share many common questions with the parties' claims and defenses—including whether the coronavirus means that Wisconsin's well-established election procedures now create an unconstitutional burden on the right to vote. *See* Compl. 12-15. Plaintiffs allege that the challenged laws are unconstitutional. Movants, on the other hand, directly reject those allegations, contending not only that Wisconsin's longstanding laws are constitutional, but that Plaintiffs' desired relief would undermine the interests of Movants and their members. These questions of law and fact are thus "virtually identical … to the issues presently pending." *Pac for Middle America v. State Bd. of Elections*, 1995 WL 571893, *4 (N.D. Ill. Sept. 22, 1995); *see id.* (opposing views on the constitutionality of a redistricting plan raise "a common question of law or fact"); *Builders Ass'n of Greater Chicago v. Chicago*, 170 F.R.D. 435, 441 (N.D. Ill. 1996) (permissive intervention is appropriate where "applicants' interest in the litigation is the mirror-image" of an original party's interest).

Movants' intervention will not unduly delay this litigation or prejudice anyone. Movants swiftly moved to intervene while the case was "at … a nascent stage," *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 286 (D.D.C. 2014), and their participation will add no delay beyond the norm for multiparty litigation. After all, Plaintiffs "put [the constitutionality of the laws] at issue." *ABS Global, Inc. v. Inguran, LLC*, 2015 WL 1486647, *5 (W.D. Wis. Mar. 31, 2015). Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). And Movants commit to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016).

Allowing Movants to intervene will promote consistency and fairness in the law, as well as efficiency in this case. It would allow the Court to evaluate all of the competing claims and arguments

at the same time, thus preventing protracted piecemeal litigation and the possibility of conflicting legal decisions. *ABS Global*, 2015 WL 1486647, *5. Allowing intervention by political parties in a "time-sensitiv[e]" "election-related dispute" also preempts the delay that otherwise results from sorting out Movants' rights on appeal. *See Jacobson v. Detzner*, 2018 WL 10509488 (N.D. Fla.) ("[D]enying [Republican Party organizations'] motion [to intervene] opens the door to delaying the adjudication of this case's merits for months—if not longer"); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377 (1987) ("[W]hen an order prevents a putative intervenor from becoming a party in *any* respect, the order is subject to immediate review."); *Shea v. Angulo*, 19 F.3d 343, 344-45 (7th Cir. 1994) (similar). Where a court has doubts, "the most prudent and efficient course of action" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

The Court should grant Movants' motion and allow them to intervene as defendants.

Dated: March 22, 2020

Respectfully submitted,

 */s/ Patrick Strawbridge*
Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

Jeffrey M. Harris
Cameron T. Norris
Alexa R. Baltes
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209

*Counsel for Proposed Intervenor-Defendants Republican National Committee and Republican Party of Wisconsin*