UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

_____

DEMOCRATIC NATIONAL COMMITTEE
and DEMOCRATIC PARTY OF WISCONSIN,

       Plaintiffs,

 -vs-                                    Case No. 20-CV-249-WMC

MARGE BOSTELMANN, JULIE M. GLANCEY,       Madison, Wisconsin
ANN S. JACOBS, DEAN KNUDSON, ROBERT       March 23, 2020
F. SPINDELL, JR. and MARK L. THOMSEN,     3:04 p.m.
in their official capacities as
Wisconsin Elections Commissioners,

       Defendants.

_____

STENOGRAPHIC TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
HELD BEFORE U.S. DISTRICT JUDGE WILLIAM M. CONLEY


APPEARANCES:

For the Plaintiffs:

           Perkins Coie LLP
           BY:  BRUCE V. SPIVA
               JOHN DEVANEY
           700 Thirteenth Street N.W.
           Suite 800
           Washington, D.C.  20005

Jennifer L. Dobbratz, RMR, CRR, CRC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 410
Madison, Wisconsin  53703
(608) 261-5709

APPEARANCES CONTINUED:

For the Defendants:

                        Wisconsin Department of Justice
                        BY:   BRIAN P. KEENAN
                              JODY J. SCHMELZER
                              SEAN M. MURPHY
                        Assistant Attorneys General
                        17 West Main Street
                        P.O. Box 7857
                        Madison, Wisconsin  53707-7857

For the Proposed Intervenor WISCONSIN STATE LEGISLATURE:

                        Troutman Sanders
                        BY:   MISHA TSEYTLIN
                        One North Wacker Drive
                        Suite 2905
                        Chicago, Illinois  60606

For the Proposed Intervenors REPUBLICAN NATIONAL COMMITTEE and REPUBLICAN PARTY OF WISCONSIN:

                        Consovoy McCarthy Park, PLLC
                        BY:   PATRICK STRAWBRIDGE
                        Ten Post Office Square
                        8th Floor PMB 706
                        Boston, Massachusetts  02109

Also Appearing:   Administrator MEAGAN WOLFE, Wisconsin
                        Elections Commission

                            ***

19      (On the record at 3:04 p.m.)

20         THE COURT:  Hello.  This is Judge Conley, and I am

21   calling Case No. 20-CV-249, *Democratic National Committee, et*

22   *al. v. Marge Bostelmann, et al.*

23         THE OPERATOR:  Joining the meeting -- (Inaudible)

24         THE COURT:  And I will hear appearances --

25      Well, hopefully that won't happen again.

1      I will ask the -- for appearances for the plaintiffs.

2          MR. DEVANEY:  Your Honor, this is John Devaney for the

3      plaintiffs.  I know that Mr. Spiva, Bruce Spiva, is on the line

4      as well, and Bruce will be presenting the argument for us or

5      whatever response to the Court you were to ask of the

6      plaintiffs.

7          THE COURT:  All right.  Very good.  Then to the extent

8      I call on the plaintiffs, I will assume it's Mr. Spiva who is

9      speaking, unless someone else identifies themselves for the

10     record.

11     And now I'll hear appearances for the defendants.

12         MR. KEENAN:  This is Assistant Attorney General Brian

13     Keenan, and also on the line are AAGs Jody Schmelzer and Mike

14     Murphy.  I will be handling any, you know, questions or anything

15     from the Court.

16         THE COURT:  All right.  Same rules will apply then.  I

17     will assume it is Mr. Keenan speaking for the defendants unless

18     someone else identifies themselves for the record.

19     I'll hear appearances for proposed intervenor Wisconsin

20     State Legislature.

21         MR. TSEYTLIN:  Thank you, Your Honor.  This is Misha

22     Tseytlin for the Wisconsin State Legislature, and I'll be

23     answering any questions you may have.

24         THE COURT:  All right.  Mr. Tseytlin, if anyone else

25     wishes to speak on behalf of the intervenor -- proposed

1    intervenor Wisconsin State Legislature, they should identify

2    themselves for the record.  Otherwise the reporter will assume

3    it is Mr. Tseytlin who is speaking.

4         And with that, I understand we also have someone appearing

5    for the proposed intervenor Republican National Committee.

6              MR. STRAWBRIDGE:  Yes, Your Honor.  This is Patrick

7    Strawbridge.  I am the only representative of those proposed

8    intervenors on the call should you need to speak to us.

9              THE COURT:  Well, that's a refreshing development.  I

10   will say that we still need to deal with a response to your

11   motion to intervene, and maybe just by way of making sure I

12   don't forget about it, we can address that initially by asking

13   the plaintiffs when -- really either party, if they want to file

14   a response, when they can do so.

15        We'll start with the plaintiffs.

16             THE OPERATOR:  Joining the meeting --

17             MR. SPIVA:  Bruce Spiva.

18             THE COURT:  Mr. Spiva, are you just joining the

19   meeting?

20             MR. SPIVA:  No, Your Honor.  I was on, and I

21   accidentally dropped the call.

22             THE COURT:  All right.  That's fine.  Here's where we

23   are, Mr. Spiva --

24        And hopefully we won't get any more of those.  I'm going to

25   direct the court reporter to ignore those interrupted

1    announcements on this conference call.

2         But, Mr. Spiva, where we are is I'm asking how soon the

3    plaintiffs can respond to the recent motion to intervene by the

4    Republican National Committee and Republican Party of Wisconsin.

5         MR. SPIVA:  We could do so by tomorrow morning -- by

6    tomorrow at noon, Your Honor, if that's acceptable to the Court.

7         THE COURT:  That's more than fine.  In the meantime,

8    I've allowed counsel for that proposed intervenor,

9    Mr. Strawbridge, to participate on this call.

10        I will hear from all parties, but before I complete the

11   appearances, let me just ask if there's anyone else on for one

12   of the parties who has not appeared or one of the proposed

13   intervenors.  All right.

14        MR. KEENAN:  Your Honor, this is Brian Keenan.  Oh --

15   Your Honor, this is Brian Keenan.  Meagan Wolfe from the

16   Elections Commission is on, as was directed.

17        THE COURT:  And I greatly appreciate that, and I

18   appreciate your pointing that out, and that's actually where I

19   intend to turn next.

20        To the extent that there is anyone on from the press, just

21   a reminder that you are not allowed to record this hearing.

22        With that said, I am going to hear first from the

23   defendants and in particular, as appropriate, Mr. Keenan, from

24   Ms. Wolfe to address the two issues that the Court has, although

25   I assure everyone participating in this call that they will get

1    a chance to contribute their own thoughts in order.  The two

2    issues that I have are with respect to the language that the

3    Court had proposed and in particular to the revisions to that

4    language, not talking about the placement of the language, which

5    I understand for reasons that were explained may need to be off

6    the main page of the website, but in terms of the language

7    itself, is it correct that the -- even if someone has a valid,

8    unexpired Wisconsin driver's license, that they will not be able

9    to actually get an absentee ballot unless their driver's license

10    and Wisconsin ID reflects the current address?

11          MR. KEENAN:  This is Mr. Keenan.  I believe that's

12    true, but I'll let Ms. Wolfe answer that question definitively.

13          MS. WOLFE:  Thank you.  Thank you, Your Honor.  This is

14    Meagan Wolfe.  I'm the administrator of the state Elections

15    Commission, and just to clarify a little bit, photo ID can be

16    used, and there are different restrictions on that depending on

17    if you're registering to vote or if you're requesting an

18    absentee ballot.

19        So in reference to your question about requesting an

20    absentee ballot, if you're using the MyVote Wisconsin site,

21    voters are required to upload a photo or a copy of their photo

22    ID with their absentee request if they have not previously done

23    that.  If they have, the system will know that and won't ask

24    them to do that.  If they have not provided one before and

25    they're not an exempt voter, somebody that's indefinitely

1    confined or military, then they will be asked to upload a copy

2    of their photo ID.  And to meet the requirements of photo ID to

3    receive a ballot, the ID must have the voter's current name on

4    it, and it must have -- it must be unexpired, so it must fall

5    into the expiration deadline specified in the statute, which is

6    it cannot be expired since the last general election.  So if it

7    has expired since November of 2018, it can still be used for

8    photo ID purposes.

9        Now, when we talk about voter registration --

10            THE COURT:  Right.  And, Ms. Wolfe -- Ms. Wolfe, I know

11   you're used to fully explaining and accurately explaining, but

12   I'm going to have to restrict you to the questions that I pose

13   so that we can get through this.  If you or your counsel

14   believes that some further amplification is required, I'll

15   certainly give you a chance to do that, but I'm asking very

16   specific questions, and to the extent you can give me

17   straightforward, short answers, I would appreciate it,

18   understanding that you have an important role -- really the

19   crucial role to play in implementing what I'm trying to

20   accomplish.  If you could be as brief as possible in your

21   responses and in particular stick to the question I pose, I

22   would greatly appreciate it.

23        With that said, what I understand then is that to register

24   online, you will need a Wisconsin driver's license or Wisconsin

25   state ID reflecting your current address; is that correct?

1         MS. WOLFE:  That is not correct.  It does not need to

2    reflect your current address, but your current address must be

3    on file with the DMV.  And so when you're registering to vote

4    online, the statute requires that what you entered matched the

5    DMV's database.  So it's looking for a match with the voter's

6    name, their date of birth, their driver license number, as well

7    as their address.

8         THE COURT:  Okay.  So let's take it one step at a time.

9    To register online, you will need to have a Wisconsin driver's

10   license or Wisconsin state ID card, correct?

11        MS. WOLFE:  That is correct.

12        THE COURT:  All right.  Both your language and the

13   language proposed by the plaintiffs state that it must reflect a

14   current address.  You're now telling me that that's incorrect.

15        MS. WOLFE:  Many Wisconsin voters may have an outdated

16   address printed on their ID, but they must have the address on

17   file with the DMV.  The DMV allows you to make the option to get

18   a new card printed with your current address or to just maintain

19   your new address on file with the DMV in the system without

20   printing a new card.

21        THE COURT:  Okay.  One of my clerks was in exactly the

22   situation we're describing.  She went to the DMV herself.  She

23   changed her address to her current address but was blocked from

24   registering online, even having made that change, as a result of

25   it, presumably, not being a current address.  But you're

representing to me that your system should allow completion of
registration even though the valid, unexpired Wisconsin driver's
license does not reflect her current address as long as the DMV
now has the current address in its system.  So I'm going to ask
you one more time whether you're certain of that.

MS. WOLFE:  Yes, Your Honor, I am certain.  Now, that
being said, if the address or the name is entered differently in
DMV's database than the voter is entering it in their online
voter registration application, it will not make a match.  We
see this sometimes where voters might enter -- let's say their
full name is Susan and with the DMV it's Susan, but in our
system they're putting Sue or another nickname.  It's not going
to make a match, and so this happens often.  It can often
happen -- I shouldn't say often, but it can happen.  And then
also, you know, voter registration and DMV, those also require
humans, and so from time to time there may be an error in either
end of the database, and if the match isn't perfect, it will not
find that person.

THE COURT:  Okay.  So in your proposed -- and I assume
you have this in front of you -- in your proposed simplified --

I don't know who it is who's breathing into their mic, but
if you're not being spoken to, you should be on mute.  Thank
you.

If we could complete this, Ms. Wolfe.  In your proposed
language, simplified language, which appears at page 4 of

1     document 43-1 -- unfortunately, your memo actually numbers every

2     page as page 2, which I can understand in the hurry that you

3     went through this, and I am -- I probably should have started

4     out by saying I'm appreciative of your efforts to try to respond

5     timely, but it would be page 1, 2, 3, 4 of your memo, actual

6     page 4, we have a statement, "Registering online requires that

7     you already have a valid, unexpired Wisconsin driver's license

8     reflecting your current address."

9          Do you see that statement?  It's in the first full

10    paragraph on page 4 of your memo, second sentence.

11              MS. WOLFE:  Yes, I do, Your Honor.

12              THE COURT:  Does that need to be revised in light of

13    our discussion?

14              MS. WOLFE:  I believe we attempted to use sort of an

15    understandable shorthand, but, yes, perhaps it could use some

16    clarification to say something along the lines of the

17    information on file with the Wisconsin DMV would need to match

18    what you're entering.  We can take a look at it here quickly and

19    see if we have some suggested language.

20              THE COURT:  And my -- the reason I ask is because the

21    message obviously doesn't have the click through, but when you

22    do click through to the proposed page, then it would appear that

23    it would still include an ability to go to change your DMV

24    address here.  So if the statement isn't correct, someone may

25    never click through to attempt that.  And I guess -- go ahead.

1          MS. WOLFE:  We have a suggestion for consideration, if

2     I may.  Perhaps changing it to, that last sentence you were

3     referencing, "Registering online requires that you already have

4     a valid, unexpired Wisconsin driver's license or Wisconsin state

5     ID card reflecting the address on file with the DMV."

6          THE COURT:  Well, that makes it worse because -- I

7     guess it could say reflecting the -- well, but we're talking

8     about having an unexpired driver's license, but a reader --

9          UNIDENTIFIED SPEAKER:  (Inaudible)

10          THE COURT:  No, no.  No one is jumping in.  No one is

11     doing anything.  I'm having a discussion with Ms. Wolfe.  If

12     that's you, Mr. Keenan, I will give you a chance to respond, but

13     right now I'm trying to resolve this question.

14          The concern in the plain language that you've developed, or

15     simplified language, which I am happy to adopt to the extent we

16     can, is that it would -- a reader -- a straightforward reading

17     would appear to suggest that, even in your revised language,

18     that the driver's license itself or the ID card itself would

19     have to reflect the current address on file with the DMV, and as

20     I understand it now, that's not true.

21          Now, one could argue that maybe these nuances are not worth

22     getting into and that it's better to have straightforward

23     language to encourage people to attempt to register, but I don't

24     want to discourage people in the process.  So I think your

25     language is an improvement, but it still has the same problem,

1    that it seems to suggest the ID or the license itself -- I guess

2    we should leave the ID out of it because I'm not sure there's a

3    way to correct that, but the driver's license itself would have

4    to reflect the current address on file.

5        Are you with me, Ms. Wolfe?

6        MS. WOLFE:  Yes, Your Honor.  I would agree.  I think

7    that the card reflecting is problematic, and I was trying to

8    think of ways to revise that because you're right, it's not

9    about the address on the card; it's about what you have on file

10   with DMV and the fields you need to match.

11       THE COURT:  So maybe it could say something like -- I

12   won't hold you to this language, but provided that the

13   current -- that the address on file with the DMV is the same --

14   is your current address or something like that.  But I'll leave

15   you to -- I'll leave you to wordsmith that for a few minutes

16   because I'm going to have to hear from a number of other people.

17       But are there any other changes --

18       MS. WOLFE:  Okay.  Thank you.

19       THE COURT:  Are there any other changes to the language

20   in your simplified language on pages 3 and 4 that you believe

21   are necessary to finalize that statement, wherever we end up

22   putting it?

23       MS. WOLFE:  Thank you, Your Honor.  I think that the

24   issue raised by the plaintiffs about specifying the types of

25   photo ID that can be used, as you suggested in your initial

1    language, might be useful.  So we'd certainly be willing to

2    include the language that was in parentheses to clarify that

3    other types of IDs may be used.

4            THE COURT:  And will that be true for registration or

5    would that be true for getting your ballot or both?  Your

6    absentee --

7            MS. WOLFE:  It's only true of photo ID for getting your

8    ballot, not registration.

9            THE COURT:  So we can't really -- I guess what you're

10   saying is in the following paragraph in your simplified

11   language, you would include greater amplification as to what

12   kind of photo ID would be all right, but we wouldn't want to

13   revise the "what's required for registration online" because

14   that's different, correct?

15           MS. WOLFE:  Yes, correct.  Yes, that's correct.

16           THE COURT:  You're saying you would accept a revision,

17   and it actually would be a little bit different than what you

18   have because the way you've written it is, "To obtain an

19   absentee ballot, you will not only have to complete the online

20   registration process if you are not already registered, but you

21   will also need to request an absentee ballot be mailed to you,"

22   and actually I guess your change would appear in the last

23   paragraph, and you would adopt the language suggested by the

24   plaintiffs in the last paragraph explaining what would

25   constitute a photo ID using the --

1          MS. WOLFE:  Yes, Your Honor.

2          THE COURT:  All right.  I appreciate that distinction.

3     Anything else -- any other changes that you think are

4     necessary or appropriate to make this understandable by the

5     reader?

6          MS. WOLFE:  We did not identify any additional changes.

7          THE COURT:  All right.  Understanding that we are

8     limiting ourselves still to the language of the notice, wherever

9     it ends up appearing, anything else you want to add, Mr. Keenan,

10    before I hear from plaintiffs?

11         MR. KEENAN:  Well, I just think perhaps with the

12    sentence we're having an issue with, maybe we'd want to break it

13    into two sentences --

14         THE COURT:  Well, then, Mr. Keenan, here is what I

15    would suggest is put yourself on mute.  You have Ms. Wolfe with

16    you, I assume, right, or are you in different places?

17         MR. KEENAN:  No, we're in different places.

18         THE COURT:  Okay.  Then perhaps --

19         MR. KEENAN:  I can email her.

20         THE COURT:  That would be perfect.  If you would email

21    her with how you would suggest it be taken, and, Ms. Wolfe, if

22    you would continue to wordsmith the language of the directions

23    on registering online.

24    I'm now going to hear from plaintiffs and Mr. Spiva if

25    there is any other revisions that you believe are appropriate

1    with respect to the proposed simplified language proposed -- or

2    I should say to the simplified language proposed by the -- by

3    Ms. Wolfe and the Commission.

4         MR. SPIVA:  No, Your Honor.  The only thing I would add

5    is on the point that you've been discussing about the address is

6    since -- and we did not -- we didn't appreciate this when we

7    submitted our revisions, but since one can change -- apparently

8    can change the DMV address online, my only suggestion would be

9    to maybe add something in the language that Executive Director

10   Wolfe is working with now to so indicate that.

11        THE COURT:  All right.  Well, let's wait until -- yeah.

12   We will wait until she comes up with some other language,

13   hopefully before the end of this call.

14        Unless there's nothing else, I'm going to hear very

15   briefly, and with the understanding that I am not looking for

16   trouble from either proposed intervenor, I'll first hear if the

17   Wisconsin State Legislature intervenor has any other suggestions

18   solely with respect to the language we're talking about.

19   Mr. Tseytlin?

20        MR. TSEYTLIN:  Nothing from us.

21        THE COURT:  All right.

22        Same question for the proposed intervenor Republican

23   National Committee.

24        MR. STRAWBRIDGE:  No, Your Honor, nothing from us.

25        THE COURT:  All right.  Then let's get to the next

 1    primary issue for the Court, and that is how we get someone to

 2    be able to click through, and I'm afraid -- Ms. Wolfe, I know

 3    you're wordsmithing, but I'm going to come back to you to help

 4    me understand on the first page of the MyVote current site if

 5    there's any way to, within the confines of the three boxes --

 6    and I appreciate you put the boxes to the absentee and voter

 7    registration information for this election at the top of the

 8    three boxes -- to make that more prominent.  I assume you're

 9    working within the confines of the box itself so you can't make

10    it any larger; is that correct?

11         MS. WOLFE:  Yes, Your Honor.  Those boxes and the

12    construct of the site in terms of where things appear are all

13    hard coded, so to change anything in terms of making an area

14    larger or moving it to another area has the great potential to

15    jeopardize the functionality of the site.

16         THE COURT:  Okay.

17         MS. WOLFE:  So we are limited in terms of adding text

18    in those sites.

19         THE COURT:  So understanding that, for some reason in

20    your proposed changes, the language that you've added at this

21    point -- and perhaps this is just because it isn't finalized,

22    but it doesn't seem likely -- are not bolded in the way the

23    other two boxes are bolded.  If you look at page 6 of your

24    submission, which is the proposed changes to the MyVote home

25    page, and you compare the top box that we've been talking about

1    as to the ability to register online through March 30, the

2    language is not bolded in the same way that it is for the next

3    two, which would appear to suggest less importance, which is

4    obviously not something I would want to continue.  Was that

5    intentional?  Is that an -- something that was overlooked or is

6    there something more I'm missing?

7            MS. WOLFE:  Thank you, Your Honor.  That certainly

8    wasn't intentional.  I actually made those what we call mock-ups

9    of the site myself.

10           THE COURT:  Sure.

11           MS. WOLFE:  And so they were simply screenshots and me

12   putting in an example of what it would look like.  All the text,

13   bolding, font sizes would be consistent with what you see in the

14   others in the live sites when we actually pushed it to the

15   production environment.

16           THE COURT:  All right.  Let me ask you another related

17   question:  Understanding that the basic formatting probably has

18   to stay the same, is it possible, in addition to bolding

19   consistent with the other two boxes, to put in capital letters,

20   all capital letters, the heading in red and then the language

21   "for the April 7th election"?

22           MS. WOLFE:  So the language that appears in red at the

23   top of the page, there are styles for each of the areas in the

24   site in how that appears.  So at the top, the letters that are

25   in red, that's the font and the size that's seen throughout the

1    site in similar pages, so we couldn't change that, but the part

2    that's black text on the white background, that we have the

3    ability to change font sizes, to bold things, to underline

4    things if the Court would like us to.

5         THE COURT:  It seems to me that if there's some way to

6    enhance the "for the April 7th election," that would be

7    appreciated.

8         As to whether to -- I guess I'm a little confused as to why

9    you couldn't do -- if you can do capitals for some letters, why

10   you couldn't do capitals for all in the red.

11        MS. WOLFE:  We could do capitals.  I will point out

12   that in our extensive usability study of the site, it has been

13   shown that capitals are difficult for people, and so we try to

14   avoid them where possible, but we certainly could do capitals if

15   that was what was required of us.

16        THE COURT:  And I would accept that more readily except

17   that if you look to the left for military voters, it's all

18   capitals.  So apparently --

19        MS. WOLFE:  That is a good point.

20        THE COURT:  Apparently in some circumstances all

21   capitals are appropriate, but if you -- I would -- it would seem

22   to me that somehow trying to call greater attention, even though

23   it may not be totally natural, would be appropriate, so I would

24   suggest all caps there.  If there was a way to bold or put in

25   all caps the words "for the April 7th election," I would suggest

1   that as well.  I'm not going to issue an order directing you to

2   do that, but it seems to me those would be appropriate if it's

3   possible to do it.

4            MS. WOLFE:  Understood.  We will make our very best

5   attempts to make that prominent.

6            THE COURT:  Okay.  I'm going to hear, Mr. Keenan, if

7   you have something else to add to that, to this home page change

8   or to the home page generally.

9            MR. KEENAN:  No, I do not.

10           THE COURT:  All right.  For the plaintiffs, same

11  question.

12           MR. SPIVA:  Nothing to add.  No questions, Your Honor.

13  Thank you.

14           THE COURT:  All right.  I'm going to assume the

15  intervenors -- proposed intervenors do not either, unless you

16  speak up now.

17      With that then, I'm going to move on to the -- well,

18  actually I should ask about the click through.  If you click

19  "Learn More," I take it then you would go on to the "Learn More"

20  at page 7 of 10 of the defendants' response; is that correct,

21  Ms. Wolfe?

22           MS. WOLFE:  Yes, that is correct.

23           THE COURT:  Okay.  And there is where we would have the

24  language that we're still wordsmithing, so that much is clear.

25  Is there -- in the language above the special notice as

1    proposed, are the -- is the language consistent?  Is it possible

2    to make it consistent?  Because it seemed to me that we say you

3    can register to vote online, and you've changed it to March

4    30th, and then you have a click through to register, and then we

5    have, "Need an update to DMV?"  Are you comfortable that

6    the changing your address click through will now work or are you

7    still testing that?

8         MS. WOLFE:  So the functionality on the site -- so

9    prior to the statutory deadline of this past March 18th, we have

10   had that built into our online registration system.  So at the

11   beginning page beyond some of the pages provided there, that's

12   already built into our system to allow voters the opportunity to

13   go to the DMV site to update their address, so it's presented

14   many places throughout the work flow on the site.

15        THE COURT:  So if I could summarize that, this does not

16   fall in the category of creating a high-risk change by enabling

17   that again through March 30th.

18        MS. WOLFE:  That specific feature is not in itself a

19   high-risk change.  It's more or less the coding of the entire --

20   the entire online voter registration system, but that particular

21   one is a simple link that is easy to reinstitute.

22        THE COURT:  Okay.  Then I'll -- unless, Mr. Keenan, you

23   have something to add, I'll hear from plaintiffs as to that

24   proposed page.  And aside from the wordsmithing that we're still

25   attempting with respect to the special notice, anything about

1    that page that you have concerns with?

2         MR. SPIVA:  No, Your Honor.  I think that was the one

3    issue that we had was the type of ID and the address issue.

4    That was it.

5         THE COURT:  And I suppose, Ms. Wolfe, that raises the

6    question if they were to click through to "Register to Vote,"

7    would the language they see in the registration be inconsistent

8    with what's in the special notice or would it be essentially

9    consistent?

10        MS. WOLFE:  It would be consistent.  So anywhere where

11   the deadline for online voter registration appears would be

12   amended to March 30th, and once you click in to "Register to

13   Vote" and look up your record, you're then in the web app, and

14   so its functionality -- there aren't places where there's a lot

15   of texture.  You're entering information throughout, but

16   anywhere where relevant, we would be sure to update that

17   deadline.

18        THE COURT:  All right.  I'm just going to put you on

19   hold for a minute, but I'll be right back.

20        (Pause in proceedings.)

21        THE COURT:  All right.  Then at this time I'm going to

22   ask Ms. Wolfe if you have any language that you might be able to

23   propose, understanding I've been keeping you from doing that

24   work, revising the portion of the notice.

25        MS. WOLFE:  Yes, Your Honor, I believe we do.

1    THE COURT:  And what would you propose then?

2    MS. WOLFE:  One moment.  Let me --

3    THE COURT:  Sure.  Take whatever time you need.  I

4    appreciate your working through it.

5    MS. WOLFE:  Thank you.

6    (Pause in proceedings.)

7    MS. WOLFE:  All right.  I believe we are ready.

8    THE COURT:  All right.  Please proceed.

9    MS. WOLFE:  Our proposed amendment is, "Registering

10   online requires that you already have a valid, unexpired

11   Wisconsin driver's license or Wisconsin state ID card," period.

12   "The address, name, date of birth, and driver's license number

13   you are using to register to vote must match the address the

14   DM" -- or "must match the information that the DMV has on file

15   for you.  If you need to update your address with DMV, you can

16   do so online."

17   THE COURT:  It seems straightforward.

18   Any concerns for the plaintiffs?

19   MR. SPIVA:  No, Your Honor.  That seems like a good

20   solution to me.

21   THE COURT:  All right.  Then I'm going to go back to

22   you, Ms. Wolfe, with the -- I don't mean any metaphor is

23   appropriate at this point -- but the crucial question which is,

24   subject to these few additional revisions that we've discussed

25   on the call today, do you have relative confidence that you will

1    be able to implement the changes, and do you have any idea of

2    when those changes could actually be posted for public use?

3          MS. WOLFE:  In terms of reallowing the online

4    registration portal, I think that we all have to understand that

5    that is a very high-risk technological change, and the reason

6    for that is that beyond just posting the notices or updating the

7    deadlines, it requires us to make changes with the statewide

8    voter registration database so that when a voter is going

9    through the registration process matching their information with

10   the DMV, that information then has to be put into the statewide

11   system, and we have to ensure through testing that that voter

12   accurately appears in the system with the correct statuses, a

13   notification is correctly sent to the municipal clerk, and that

14   other downstream work flows, for example, printing on the poll

15   book with the correct statuses, work as well.

16         And so at this juncture we have what we call a "state

17   change freeze," which means you're not allowed to make any major

18   changes to IT systems for fear that it could impact other

19   systems or other work flows.  For example, if, let's say, the

20   DNR wanted to make a change to state enterprise services at this

21   point, they would not be allowed to because of the state change

22   freeze.  And so for us to be making changes to our own system --

23         THE COURT:  Well, before you -- before you go -- I'm

24   sorry, Ms. Wolfe.  Before you go on, that statement isn't

25   correct, is it, that the freeze is seven days to the election?

1    March 30 is not seven days to the election.  Certainly a change

2    that you implement this week is not seven days to the election,

3    so the change freeze that is implemented isn't impacted.  I

4    understand that you may have practices that are -- that caution

5    against it, but to invoke that is not accurate, is it?

6            MS. WOLFE:  I apologize, Your Honor.  You're correct.

7    That would be in keeping with our agency policies and --

8            THE COURT:  Yeah.

9            MS. WOLFE:  -- standards for IT development.

10           THE COURT:  And, Ms. Wolfe, you're not under oath.  You

11   don't have to apologize, but I would encourage you to be as

12   precise as you can in answering my questions.

13       Let me unpack what you just said a little further.  Your

14   concern in implementing this, does it go to the actual

15   operations online for a voter to go online and to register

16   online or to obtain an absentee ballot online or is it with

17   respect to a voter who has registered online and then shows up

18   on the day of polling to vote or both?

19           MS. WOLFE:  Yes, thank you for the clarification.  It

20   goes to the point of a voter being able to access the MyVote

21   website to register or to request an absentee.  If we exceed the

22   capacity of what the site is built to do, it could cause the

23   site to crash.  We had actually a brief outage today because of

24   the unprecedented traffic, and so we're -- if an untested

25   feature is added to the capacity workload, the fear is that the

1    whole site could become unavailable.

2                THE COURT:  Unavailable to both register and to obtain

3    an absentee ballot or you don't really know what caused the

4    crash today?

5                MS. WOLFE:  Yes, Your Honor, unavailable to any of the

6    features.  For a brief time period, we had to reset our servers,

7    and there was an error message that said there were no features

8    available to voters because of capacity issues.

9                THE COURT:  And I'm trying to weigh that in the overall

10   scheme of things.  It sounds like that would -- the fix is what

11   you've just described, and you've already implemented that fix.

12   Your concern would be that it may happen again once this is

13   implemented, but since we're only talking about people who have

14   a valid ID or -- I should say a valid driver's license or state

15   ID card, most of that is occurring already online because those

16   people are not frozen out of proceeding to register online as we

17   speak, correct?

18               MS. WOLFE:  That would be correct.  If I may try to

19   explain it, I would try to keep it as brief as I can.

20               THE COURT:  Please.

21               MS. WOLFE:  So currently, for example, our site -- the

22   MyVote Wisconsin site is the voter portal to the statewide voter

23   registration database, so the statewide system that clerks, all

24   3,000 of the staff in the municipalities, use to enter all the

25   voter information.  And so right now clerks are entering in the

1    statewide database all the absentees they need to mail out, and

2    we're also seeing unprecedented traffic for people requesting

3    their absentee ballot.

4        Our staff worked around the clock over the weekend to test

5    and prepare for this change in our test environment, and we're

6    finding that right now, because our site was not built to run an

7    all-by-mail election, we're already exceeding our capacity.  We

8    literally have a developer sitting in front of the server to

9    maintain it and make sure it's operational 24/7 right now, and

10   if we add an additional feature, because the online voter

11   registration system is another feature of the website that uses

12   a great deal of memory and server capacity, that we will exceed

13   our capacity abilities for the statewide system and for the

14   MyVote system, and so that's why we need to test it so

15   carefully.

16       We're bringing in some experts to help us with what we call

17   load testing to simulate all of the different traffic and see

18   how the system operates, but those are all things that take

19   time.  So we're working literally around the clock to try to

20   understand how adding this new feature at this juncture will

21   impact the system, but we need to make sure that we're doing it

22   responsibly and carefully.

23       THE COURT:  All right.  Which brings me again to the

24   final question:  How soon would you be in a position, assuming

25   that your testing doesn't indicate a likelihood of it being

1    undoable, how soon would you be able to actually implement the

2    changes we've been discussing today?

3        MS. WOLFE:  Our hope is that we would be able to have

4    it running in the next day or so, but, again, that all hinges on

5    how the testing goes.  As I mentioned, even without the online

6    voter registration, we were experiencing capacity issues, so

7    today we're also examining the need for additional servers, the

8    additional load balancing for the servers.  And so our hope is

9    that in the next day we would be able to make it operational,

10   but we won't know until we complete those tests.

11       THE COURT:  All right.  Anything else that you want to

12   add, Mr. Keenan?

13       MR. KEENAN:  No.

14       THE COURT:  All right.  Anything -- any follow-up for

15   the plaintiffs?  Other than the obvious --

16       MR. SPIVA:  No, Your Honor.

17       THE COURT:  -- that you would like this done sooner

18   rather than later.  Anything else -- yeah.  Okay.

19       I'll hear briefly from the intervenor defendants, first for

20   the Wisconsin State Legislature.  Anything else?

21       MR. TSEYTLIN:  Nothing, Your Honor.

22       THE COURT:  Anything more for the Republican National

23   Committee?

24       MR. STRAWBRIDGE:  Not on any of the substance.  I did

25   have one question about the briefing schedule we were

1    discussing, if Your Honor is asking for all other --

2         THE COURT:  No, I'm not yet.  And I appreciate your

3    clarifying, and I will give everyone a chance to have one last

4    word, and that would be the time for you to raise it.

5         Ms. Wolfe, your directions from this court are really not

6    different than they were in the Court's order except for the

7    specific changes that we've discussed today, which I'm not

8    inclined to put in a new order because I think you understand

9    them.  They're straightforward, albeit really not the crucial

10   question, the crucial question being with those wordsmithing

11   changes to the Court's notice, which will now appear on the

12   second page rather than the first page of the MyVote website,

13   and the bolding that we've discussed with respect to the click

14   through on the MyVote home page website, this should -- I think

15   those instructions are clear, but I'll certainly allow you to

16   tell me if you have any remaining questions as to what the

17   Court's expectations are, that you make those changes and,

18   assuming that there are no foreseen or unforeseen problems with

19   respect to implementing them, that you proceed to do so once

20   you've had your testing.

21        MS. WOLFE:  No, Your Honor, I believe we understand

22   what our next steps are to comply with the order.

23        THE COURT:  All right.  And, Mr. Keenan, I would ask if

24   you do run into a specific problem, that you initiate a call to

25   my chambers and we arrange a further call, and that it sounds

1    like if there is a remaining problem, it's likely to come from

2    the software technicians.  I will probably have someone from our

3    IT group who actually works nationally on similar issues with me

4    at that time, but you'll need to have your people with you, and

5    we'll get the plaintiffs and the intervening parties on the

6    line.  Otherwise, my expectation is that you'll implement the

7    change as soon as you're able.

8         Is that clear for your clients?

9              MR. KEENAN:  Yes, it is.

10             THE COURT:  Okay.  Anything more for the defendants at

11   this time, Mr. Keenan?

12             MR. KEENAN:  When you were setting the intervention

13   briefing schedule, I think we would like to file a brief in

14   opposition, but I don't think we are ready to file it by noon

15   tomorrow, so maybe if we could have until -- I don't know --

16   Thursday or something to file briefs in opposition to the

17   intervention motions.

18             THE COURT:  Why don't we say noon on Thursday.

19             MR. KEENAN:  Okay.

20             THE COURT:  And that would apply then as well to the

21   plaintiffs, noon on Thursday for their response, and I'll give

22   until the end of the day on Friday, that would be business day,

23   so -- actually, why don't we say 3:00 p.m. on Friday for the new

24   intervenor, the Republican National Committee, to file any

25   reply.

1       Anything else then for the defendants?

2           MR. KEENAN:  No.

3           THE COURT:  Anything else for the plaintiffs at this

4       time?

5           MR. SPIVA:  Your Honor, only that we wanted to give the

6       Court a heads-up.  In your order, you -- invited I don't know is

7       the right word -- us to file a preliminary injunction motion

8       regarding the election day receipt issue, and we do intend to do

9       that as soon as we can.  We're gathering the evidence, and there

10      have been a number of changes around the state in the

11      circumstances.  For instance, Milwaukee has closed all of its

12      early in-person absentee voting and registration.  I think that

13      was announced today, and, of course, you just heard from

14      Director Wolfe that they have such an overload of requests for

15      absentee ballots that it's crashed the system, but we are

16      gathering the evidence, and we will bring it to you as soon as

17      we can.  But we also think it may impact -- we may at least

18      request that Your Honor reconsider the by-mail registration

19      deadline as well, particularly given that it's going to take, it

20      sounds like, a little bit of time to get the online registration

21      back open.  I just wanted to give you a heads-up that we were

22      doing that.

23           THE COURT:  Anything else for the plaintiffs?

24           MR. SPIVA:  No, Your Honor.

25           THE COURT:  All right.  For intervenor defendant

```
1    Wisconsin State Legislature, anything more?

2              MR. TSEYTLIN:  One question, Your Honor.  You, I

3    believe, said that you were giving a new deadline for a reply

4    brief by the RNC proposed intervenors --

5              THE COURT:  Yeah, I guess it's only fair.  You may have

6    until noon on Thursday to file your reply.

7              MR. TSEYTLIN:  For clarification, Your Honor, as I

8    understood, the Department of Justice said they're going to file

9    their opposition to us --

10             THE COURT:  All right.  Let me -- Let me -- I get it.

11   Hang on.  Just stop.

12        Did you intend to file a separate opposition to the

13   intervention, Mr. Keenan, to the State Legislature as well as

14   the Republican National Committee?

15             MR. KEENAN:  We're going to file one brief addressing

16   both of those --

17             THE COURT:  All right.  Then you may -- then,

18   Mr. Tseytlin, you'll have the same deadline, 3:00 p.m. on

19   Friday, to file any reply to that brief, and I guess to the

20   extent --

21             MR. TSEYTLIN:  Thank you, Your Honor.

22             THE COURT:  -- you do want to respond to the original

23   opposition by plaintiffs, you can do that at the same time.

24             MR. TSEYTLIN:  Thank you, Your Honor.

25             THE COURT:  I would emphasize for both of the proposed
```

1    intervenors, brevity will be appreciated in your replies.

2         With that said, I'll hear, Mr. Strawbridge, if there's

3    anything more that you want to address for your proposed

4    intervenor.

5         MR. STRAWBRIDGE:  No.  We addressed the question I had,

6    Your Honor.  Thank you.

7         THE COURT:  Very good.  With that then, we'll let

8    Ms. Wolfe get back to actually trying to implement the Court's

9    TRO with the thanks of the Court.  And it hasn't been said on

10   this call -- it's the first time you've been on -- I obviously

11   do not fully appreciate the burden that I'm placing on an

12   already overburdened group.  I realize that you're answering to

13   a lot of commissioners on a regular basis as well as other

14   constituents and ultimately the most important people, the

15   voters, and that I have now placed a further burden on you and

16   the people working under you, and I'm trying to do that in a

17   balanced way under truly unusual circumstances.

18        Mr. Keenan is there to relay concerns, if they arise, to

19   the Court.  If you ultimately conclude that this is going to

20   undermine the overarching goal to allow as many voters as

21   possible to exercise their franchise, then please convey that to

22   Mr. Keenan, and I'm sure he will advise the Court.  Otherwise, I

23   wish you good luck in implementing the changes and hopefully in

24   enhancing what will be obviously a very unusual day of voting

25   and the lead-up to it through the absentee ballots.

```
1         Unless there's something more for the parties or something
2    more from Ms. Wolfe, we will conclude this hearing.
3         Thank you, all.
4             MS. WOLFE:  Nothing further.  Thank you, Your Honor.
5             MR. SPIVA:  Thank you.
6         (Proceedings concluded at 3:59 p.m.)
7                                 ***
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1        I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit

2    Reporter in and for the State of Wisconsin, certify that the

3    foregoing is a true and accurate record of the proceedings held

4    on the 23rd day of March, 2020, before the Honorable

5    William M. Conley, U.S. District Judge for the Western District

6    of Wisconsin, in my presence and reduced to writing in

7    accordance with my stenographic notes made at said time and

8    place.

9        Dated this 25th day of March, 2020.

10

11

12

13

14

15                       /s/ Jennifer L. Dobbratz

16              Jennifer L. Dobbratz, RMR, CRR, CRC
                         Federal Court Reporter

17

18

19

20

21

22

23

24    The foregoing certification of this transcript does not apply to
     any reproduction of the same by any means unless under the

25    direct control and/or direction of the certifying reporter.