## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE and DEMOCRATIC PARTY OF WISCONSIN, <br><br>                 Plaintiffs, <br><br>     v. <br><br> MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners, <br><br>               Defendants. | Civil Action No. 3:20-cv-249-wmc |

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs DEMOCRATIC NATIONAL COMMITTEE and DEMOCRATIC PARTY OF WISCONSIN file this Amended Complaint for Declaratory and Injunctive Relief against Defendants MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners, and allege as follows:

### NATURE OF THE CASE

1.      The United States is in the throes of an unprecedented crisis. COVID-19 is spreading throughout the country, infecting thousands of citizens in communities across the nation, including Wisconsin, which has at least 587 reported cases of the COVID-19 coronavirus and counting. As a result, Americans—including Wisconsinites—are forced to socially distance themselves to try to slow the spread of the disease in a communal effort to save their friends, neighbors, and families, with no clear end in sight. Indeed, the latest projections indicate that this crisis may persist for 14 to 18 months.

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1**

2.      In response to the crisis, on March 24, 2020, Governor Evers issued a "Safer-at-Home Order" that went into effect the morning of March 25.  The Order requires "All individuals present within the State of Wisconsin . . . to stay at home or at their place of residence . . . ."  With limited exceptions, the Order requires individuals in Wisconsin to stay at home through April 24, 2020.  There is no exception in the Order for voters, election officials, poll workers, or others who support elections.  Anyone who violates the Order is potentially subject to 30 days imprisonment or a fine up to $250.

3.      As Wisconsin citizens continue to distance themselves to ensure their safety and to comply with the Safer-at-Home Order, many are unwilling to violate the law and to risk their safety and the safety of others by waiting in line to register to vote and cast their vote on election day. Indeed, the City of Milwaukee has shut down in-person registrations and in-person voting, and Madison has limited in-person voting to curbside voting at the City Clerk's Office.  Based on information and belief, other cities and towns are taking similar steps to limit in-person registration and voting.  As a result, for a large number of Wisconsin citizens, voting by mail for the upcoming April 7 Spring Election ("Spring Election") is now their only option.  Likewise, registering by mail or e-mail is now the only option for many people.

4.      Because of the Safer-At-Home Order and the health risks of coronavirus, many Wisconsin citizens are also unwilling and unable to take on the safety risks of leaving their homes to obtain documents and to copy documents that are required under Wisconsin law to register to vote and to obtain an absentee ballot.

5.      Given these extraordinary circumstances, it is not surprising that Wisconsinites—faced with this unconscionable choice between their safety and potentially endangering the lives of others and exercising their fundamental right to vote—are relying on absentee voting at an

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2**

unprecedented level. The Wisconsin Elections Commission reports that "Wisconsin voters are [already] requesting absentee ballots at a record pace with concerns about Coronavirus COVID-19."[1] As of yesterday, more than 626,000 absentee applications had been received by Wisconsin municipal clerks, vastly exceeding total requests for all of the last four spring elections. And it is all but certain that this number will continue to increase.

6.      In this unprecedented situation, multiple provisions of law that establish requirements for registering to vote and absentee voting are now posing direct and severe obstacles to voting. These provisions are: (1) the now-expired by-mail registration deadline of March 18, 2020, Wisc. Stat. § 6.28(1); (2) the requirement that copies of proof of residence accompany electronic and by-mail voter registration, *id.* § 6.34; (3) the requirement that copies or scans of photo identification accompany absentee ballot applications, *id.* § 6.86; (4) the requirement that polling places receive absentee ballots by 8:00 p.m. on election day for ballots to be counted ("Election Day Receipt Deadline"), *id.* § 6.87; and (5) the requirement that for an absentee ballot to be counted, the absentee voter must have a witness certify to the truth of the information the voter provides on the ballot.  Wisc. Stat. § 6.87(2).  (collectively, the "Challenged Provisions").

7.      Each of these provisions, on its own, poses significant risks to voters seeking to exercise their right to vote in the upcoming April 7, 2020 election (or any election that occurs while this crisis continues); collectively, these provisions will ensure that many Wisconsin citizens will be unable to vote or will have their ballots discarded.  Without emergency intervention from this Court, thousands of Wisconsin voters likely will be disenfranchised.

---

[1] Wisconsin Elections Comm., *Absentee Ballot Requests for April 7 Already Exceed Last Three Spring Election Absentee Number Due to COVID-19*, March 17, 2020, https://elections.wi.gov/node/6731.

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3**

8.      Under Wis. Stat. § 6.28(1), by mail voter registration ended on March 18, 2020. Historically, Wisconsin voters have registered to vote in person in large numbers, relying heavily on same day registration—i.e., registering during in-person absentee voting or on election day. As a result, thousands of Wisconsin voters typically do not register before election day. That is the case again this year, as many Wisconsin citizens have not yet registered for the April 7, 2020 Spring Election since they anticipated being able to register on election day.  Because of the effects of COVID-19 on the ability of voters to register and vote in person, combined with today's deadlines to request absentee ballots, thousands of potential voters who reasonably anticipated registering in person on election day now cannot register by mail and have online registration as their only option. Absent intervention by the Court, the safety risks of COVID-19 will prevent countless eligible Wisconsinites from registering and voting altogether.

9.      Wis. Stat. § 6.34 will have a similar effect. This provision requires new voters to provide a copy of their proof of residence to register. But as voters are directed by the federal and state government to stay home and as commercial businesses and public buildings continue to close, many would-be electronic or by-mail registrants are now without access to the scanners and printers needed to generate copies of the documents required to register to vote. That is because the scanners and printers are often located at places of work, libraries, and commercial establishments (e.g., UPS locations) that are now closed under the Governor's Safer-At-Home Order or are unsafe to go to. As a result, many Wisconsin citizens will be unable to obtain the copies they need to complete their voter registration applications and will be prevented from registering. Indeed, under the Safer-at-Home Order, Wisconsin citizens are prohibited from going to locations where they would obtain copies of these documents and would face potential criminal prosecution and fines for even trying.

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4**

10.     For the same reasons, Wis. Stat. §§ 6.86 and 6.87, requiring a copy of a voter's photo identification to accompany a request for an absentee ballot, will render voters unable to make such a request.

11.     Finally, even if a voter is able to overcome the obstacles to registering to vote and requesting an absentee ballot described above, the April 7 election is less than two weeks away, and the deadline to request an absentee ballot is even sooner—April 2, 2020. This means that the thousands of voters who are now realizing that they must request an absentee ballot to vote safely have only a week to request a ballot.  Municipal clerks will have scant time to process these requests—which are coming in at unprecedented levels and to offices that are understaffed as people self-quarantine due to the Safer At Home Order and the potential exposure to the virus—and to mail ballots to voters. Voters receiving those ballots will have, at most, mere days to mail them, with a significant risk that they will not arrive by the Election Day Receipt Deadline imposed by Wis. Stat. § 8.87(6)—and thus, those votes will not be counted. In fact, based on information and belief, Wisconsin's mail system has already started to slow because of the effects of the coronavirus. As a result, it is highly likely that many absentee ballots will arrive after the Election Day Receipt Deadline—due to no fault of the voters. These same impediments to voting will continue for any election that occurs while this crisis persists.

12.     Accordingly, Plaintiffs file this suit to ensure that Wisconsin voters—many of whom are their members and constituents—are able to fully exercise their right to vote in the midst of this unprecedented crisis. Plaintiffs seek an emergency injunction from this Court, extending the March 18, 2020 deadline for by mail voter registration to April 3; suspending the requirements that copies of documents and photo IDs be included with voter registration and absentee ballot applications; enjoining the Election Day Receipt Deadline, while allowing all ballots postmarked

on or before election day but received within a minimum of 10 days thereafter to be counted; and enjoining the requirement that voters submitting absentee ballots have a witness certify to the accuracy of the voter's information on the ballot.[2]

## JURISDICTION AND VENUE

13.    Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of a right secured by the United States Constitution.

14.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

15.    This Court has personal jurisdiction over the Defendants, the Commissioners of the Wisconsin Elections Commission, who are sued in their official capacities only.

16.    Venue is proper in the U.S. District Court in the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to Plaintiffs' claims occurred there.

17.    This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

18.    Plaintiff the Democratic National Committee ("DNC") is a national committee, as that term is defined by and used in 52 U.S.C. § 30101, dedicated to electing local, state, and national candidates of the Democratic Party to public office throughout the United States. In particular, the DNC is charged with facilitating the Democratic presidential nominating process,

---

[2] The term "postmark" is used to reference any type of marking applied by the USPS including bar codes or other tracking marks indicating that a ballot was mailed on or before election day. If there is no postmark on the ballot, it should be presumed to have been mailed by Election Day.

which culminates in the 2020 Convention that will take place in Milwaukee, Wisconsin in July. The April 7, 2020 Spring Election is part of the presidential nominating process, and Democratic voters in that election will make their selections for the Democratic presidential nominee. Moreover, the DNC has members and constituents across the United States, including eligible voters in Wisconsin whose rights to vote will be severely burdened and denied outright by the Challenged Provisions during the current coronavirus crisis.

19.     Plaintiff the Democratic Party of Wisconsin is a state committee, as defined by 52 U.S.C. § 30101(15), dedicated to electing candidates of the Democratic Party to public office throughout the State of Wisconsin. The Democratic Party of Wisconsin has members and constituents from across Wisconsin, including many voters whose rights to vote will be severely burdened and denied outright by the Challenged Provisions during the current coronavirus crisis.

20.     As part of their missions, both Plaintiffs work to ensure that their members and constituents are able to effectively exercise their right to vote for their chosen presidential nominee. Plaintiffs are directly harmed by the Challenged Provisions, which by making it more difficult for Plaintiffs' members and constituents to vote, will require Plaintiffs to expend additional resources to assist their members and constituents to overcome these burdens to exercise their right to vote. These are resources that the Plaintiffs otherwise could spend educating voters about core issues and preparing for the general election. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (political party had standing because of its diversion of resources "to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"), *aff'd,* 553 U.S. 181, 189 n.7 (2008); *One Wisconsin Institute v. Thomsen,* 198 F. Supp. 3d 896, 908-10 (W.D. Wis. 2016).

21.     Defendants Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen are the six Commissioners of the Wisconsin Elections Commission and are named as Defendants in their official capacities. Together, they comprise the Wisconsin Elections Commission, the body that administers and enforces Wisconsin's election laws, including Wis. Stats. §§ 6.28(1), 6.34, 6.86, and 6.87. *See* Wis. Stat. § 5.05. Defendants have acted under color of state law at all times relevant to this action.

## STATEMENT OF FACTS AND LAW

### A.     Wisconsin Registration and Absentee Laws

22.     Wisconsin law provides that registration by mail and electronic registration closes on the third Wednesday preceding an election. Wis. Stat. § 6.28 (1)(a). Thus, for the April 7 Spring Election, registration by mail is no longer available and, under this Court's Order of March 20, 2020, on-line registration is available until March 30.

23.     Individuals registering by mail or electronically must provide a copy of an "identifying document that establishes proof of residence." Wis. Stat. § 6.34(2). The only exception to this rule is for individuals registering electronically who do not have to provide such documentation if they provide "the number of a current and valid operator's license [or] identification card." *Id.* (2m).

24.     Typically, individuals wishing to register after the mail and electronic registration deadline can only do so by registering in-person when they apply for an in-person absentee ballot or on Election Day at a polling place. *Id.*

25.     And, historically, Wisconsin voters rely heavily on same day registration. Since 2008, between 10 to 15% of all registrations have taken place on election day.[3]

---

[3]     Wisconsin    Elections    Commission,    Elections    and    Voting    Statistics,

26.     Wisconsin also provides a process for absentee voting for all registered absentee voters, allowing them to request an absentee ballot by mail, in person at the municipal clerk's office, by signing a statement and requesting to receive an absentee ballot, via an agent, special voting deputy, or by e-mail or fax. Wis. Stat. § 6.86(1)(a).

27.     All voters are required to present a copy of their proof of identification with their absentee application. *Id.* (1)(ac).

28.     Once a voter has received and completed their ballot, he or she must return it so that "it is delivered to the polling place no later than 8 p.m. on election day." Wis. Stat. § 6.87(6).

**B.     Coronavirus and the April 7, 2020 Election**

29.     Over the course of the last few weeks, and with dramatically increased intensity over just the last week, COVID-19 has been spreading throughout the United States, infecting thousands of citizens in communities across the nation, including in Wisconsin. Each day more Wisconsinites are infected and, as more is learned about the virus and its potential reach, citizens and state and local governments are forced to take increasingly unprecedented steps to ensure their safety.

30.     Indeed, in addition to requiring individuals in Wisconsin to stay at home, the Safer-At-Home Order requires all "non-essential" businesses and operations to cease operations.  And, public and private schools remain closed indefinitely.

31.     Wisconsinites are now forced to socially distance themselves to try to slow the spread of the disease in a communal effort to save their friends, neighbors, and families, with no end in sight.

---

https://elections.wi.gov/elections-voting/statistics?q=elections-voting/statistics&page=2     (last visited, March 18, 2020).

32.     As a result, many Wisconsin citizens are also unable or unwilling to risk their safety and the safety of others by waiting in line to register to vote and cast their vote on election day, or to leave their homes to obtain documents and to copy documents that are required under Wisconsin law to register to vote and to obtain an absentee ballot.  In fact, the Safer-At-Home Order, by its terms, does not even allow citizens to leave their homes to vote in-person, much less to obtain copies of documents at businesses, many of which are now legally required to close.

33.     Moreover, Wisconsin citizens who are infected cannot leave their homes to register and vote, even if there were no law barring them from leaving.

34.     Thus, it is not surprising that Wisconsinites are relying on absentee voting at an unprecedented level. The Wisconsin Elections Commission reports that "Wisconsin voters are [already] requesting absentee ballots at a record pace with concerns about Coronavirus COVID-19."[4] As of yesterday, more than 626,000 absentee applications had been received by Wisconsin municipal clerks, vastly exceeding total requests for three of the last four spring elections. And it is all but certain that this number will continue to increase.

35.     In this unprecedented situation, the regulatory scheme described above has become hostile to voting rights and, as a direct result, thousands of Wisconsin voters are likely to be disenfranchised.

36.     For example, as discussed, thousands of Wisconsin voters typically register in person, relying on same day registration to register and vote. As a result, thousands of Wisconsin voters typically do not register before election day. This year is no different. Many Wisconsin citizens have not yet registered for the April 7, 2020 presidential primary election since they

---

[4] Wisconsin Elections Comm., *Absentee Ballot Requests for April 7 Already Exceed Last Three Spring Election Absentee Number Due to COVID-19*, March 17, 2020, https://elections.wi.gov/node/6731.

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10**

anticipated being able to register on election day. Because of the effects of the coronavirus on the ability of voters to obtain documents, register, and vote in person, these are now left with highly constrained registration and voting options.  Indeed, many voters will have no ability to register after expiration of on-line registration on March 30 because Milwaukee and other cities are no longer offering in-person registrations and in-person voting and the Safer-At-Home Order, by its express terms, prohibits people from leaving their homes. The availability of in-person registration and in-person voting is now inconsistent across the state, with a voter's ability to register and vote in person being dependent on where he or she lives.

37.     Wisconsin's requirement that voters provide a copy of their proof of residence to register also burdens voters during the current crisis. The scanners and printers that many would-be electronic or by-mail registrants and absentee voters would typically use are often located at places of work, libraries, and commercial establishments (e.g., UPS locations) that are now closed or unsafe to go to. As a result, many Wisconsin citizens will be unable to obtain the copies they need to complete their voter registration applications and will be prevented from registering. Because of the requirement in the Safer-At-Home Order that all non-essential business cease operating, this obstacle to registering has increased materially since this Court issued its March 20 Order on Plaintiffs' Motion for a Temporary Restraining Order.

38.     The same burdens confront voters attempting to comply with Wisconsin's requirement that they must provide a copy or scan of their voter ID when applying for an absentee ballot. As a result, many voters will be unable to obtain the copies or scans they need to complete their absentee applications and will be prevented from voting.  Wisconsin law specifically exempts a voter from the requirement of providing a photo ID with a request for an absentee ballot if the voter is "indefinitely confined" because of age, illness, infirmity, or disability. Wis. Stat. §§

6.86(2)(a), 6.87(4)(b)(2).  This exemption recognizes that voters who are confined are unable to obtain copies of photo IDs.  Because of the health risks of the coronavirus pandemic and the prohibition in the Safer-At-Home Order against people leaving their homes, all Wisconsin voters are now "indefinitely confined" and should be exempted from providing a photo ID with a request for an absentee ballot.

39.     The burdens imposed by the Challenged Provisions are especially severe for voters who live alone.  Specifically, Wisconsin's requirement that absentee ballots will be accepted only if they are accompanied by a sworn certification from a witness attesting to the truthfulness of the voter's personal information on the absentee ballot puts these voters in a completely untenable situation.  With the requirements of the Safer-at-Home Order and the health and legal risks of venturing out to find a witness, many voters who live alone will not have a witness to attest to their absentee ballots and, absent intervention by the Court, simply will not be able to vote.  Adding to their burden, a significant portion of this population is comprised of elderly Wisconsin citizens who are most at risk from the coronavirus and who could not interact with a witness even if they could find one.

40.     Finally, even if a voter is able to overcome the obstacles to registering and voting described above, the April 7 election is less than two weeks away, and the deadline to request an absentee ballot is even sooner—April 2, 2020. This means that the thousands of voters who are now realizing that they must request an absentee ballot to vote safely have just a week to request a ballot. Municipal clerks will have just hours or days to process these requests and mail ballots. Many clerks already have a significant backlog of requests for absentee ballots.  As a result, in some cities, it is taking clerks as much as an entire week from the receipt of a request for an

absentee ballot until a ballot can be sent to a voter.  Adding to these delays, some clerk's offices with particularly heavy demand are running out of absentee ballot envelopes and postage.

41.     Accordingly, it is highly likely that many voters--potentially thousands--will receive absentee ballots too late to have them arrive by April 7.  Without intervention by the Court, those ballots will be discarded and all of those voters will be disenfranchised by the Election Day Receipt Deadline imposed by Wis. Stat. § 8.87(6).  Indeed, there is significant risk that municipal clerks inundated with absentee ballot requests at the April 2 deadline may not even be able to *process* all such requests by Election Day, much less mail the ballots with sufficient time for voters to *return* them by Election Day.

42.     In fact, based on information and belief, Wisconsin's mail system has already started to slow because of the effects of the coronavirus. As a result, it is highly likely that many absentee ballots will arrive after the Election Day Receipt Deadline—due to no fault of the voters.

43.     Each of these provisions, on its own, poses significant risks to voters seeking to exercise their right to vote in the upcoming April 7, 2020 election; collectively, the existence of these provisions means that many Wisconsin citizens will be unable to vote or will have their ballots discarded.

44.     Without action from this Court, these laws will continue to burden Wisconsin voters' right to vote, disenfranchising them in the upcoming April 7, 2020, as well as other elections taking place during the COVID-19 crisis.

## CLAIMS FOR RELIEF

## COUNT I

**First and Fourteenth Amendments
U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202
Undue Burden on the Right to Vote**

45.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

46.     Under the *Anderson-Burdick* balancing test, a court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against "'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

47.     Unless Plaintiffs are granted the relief requested herein thousands of Wisconsin voters' right to vote, including Plaintiffs' members and constituents, will be severely burdened (if not wholly eliminated) in the upcoming April 7, 2020 election.

48.     Because of the Safer-At-Home Order and the unprecedented social distancing measures that Wisconsin citizens have to take to slow the spread of the virus and to ensure their safety as well as the safety of their friends, families, and neighbors, many Wisconsin voters who would have registered to vote in-person between the March 18, 2020 electronic and by-mail registration cut-off and/or on Election Day will no long be able to register to vote, even with the Court's extension of electronic registration to March 30.  Similarly, Wisconsin voters are less able

and, in some cases, wholly unable to copy and scan documents and photo IDs required to complete their electronic and by-mail registration and absentee ballot applications. And, as absentee balloting becomes the only safe way to vote, Wisconsin voters are at a high risk of not receiving their ballots with sufficient time to mail it into the municipal clerk's office so that it is received prior to the Election Day Receipt Deadline. This too will lead to disenfranchisement.

49.     The State cannot provide any colorable justification as to why the March 18, 2020 deadline should not be extended for by-mail registrations and why ballots received after the Election Day Receipt Deadline should not be counted in light of this unprecedented crisis.

50.     Further, the requirement that voters have witnesses attest to the truthfulness of their personal information on absentee ballots will disenfranchise many Wisconsin voters who are unable to locate witnesses for this purpose.  There also is no colorable state justification for this requirement in view of the Coronavirus crisis and the Safer-At-Home Order.

51.     In short, the challenged laws are not supported by a state interest that is sufficient to justify the resulting burdens on the right to vote, and thus, these laws violate the First and Fourteenth Amendments.

## COUNT II

**Due Process**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983**
**Denial of Procedural Due Process**

52.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

53.     The Due Process Clause of the United States Constitution prohibits the states from depriving "any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV, § 1. Which protections are due in a given case requires a careful analysis of the importance of the

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 15**

rights and the other interests at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976); *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1192 (9th Cir. 2015). Courts must first consider "the nature of the interest that will be affected" by the government's action as well as the "degree of potential deprivation that may be created" by existing procedures. *Nozzi*, 806 F. 3d at 1192–93. Second, "courts must consider the 'fairness and reliability' of the existing procedures and the 'probable value, if any, of additional procedural safeguards.'" *Id.* at 1193 (quoting *Mathews*, 424 U.S. at 343). Finally, courts must consider "the public interest, which 'includes the administrative burden and other societal costs that would be associated with' additional or substitute procedures. *Id.* (quoting *Mathews*, 424 U.S. at 347). Overall, "due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, (quotation and citation omitted).

54.     Wisconsin's procedures for registering to vote and absentee voting must comport with due process. *See Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990). "Such due process is not provided when the election procedures [for voting by mail]" do not adequately protect the right to vote or ensure that an "individual is not continually and repeatedly denied so fundamental a right." *Id.*; *see also Saucedo v. Gardner*, 335 F. Supp. 3d 202, 217 (D.N.H. 2018) ("Having induced voters to vote by absentee ballot, the State must provide adequate process to ensure that voters' ballots are fairly considered and, if eligible, counted.").

55.     "When an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183 (11th Cir. 2008) (quoting *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995)).

56. Under the current circumstances, there is little question that Wisconsin's election process is fundamentally unfair. The nature of the interest at stake in this case—the right to vote and to have that vote count—is the most precious liberty interest of all because it is preservative of all other basic civil and political rights.

57. But the challenged laws threaten to deprive Wisconsin voters of this right in the upcoming election. Given the unprecedented situation at hand, Wisconsin must establish adequate procedures to ensure that voters have a reliable, fair, effective and safe method to cast their ballots in the April 7, 2020 election. Because the challenged laws are markedly inadequate in all of these respects, and substitute procedures are readily available to protect voters' rights with minimal burden to the State, the challenged laws violate Wisconsin voters' procedural due process rights.

## COUNT III

### Equal Protection
### U.S. Const. Amend. XIV, 42 U.S.C. § 1983

58. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

59. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a state from "denying to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This constitutional provision requires that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

60. And this applies to voting. "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000).

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 17**

61.     Because of the different actions taken by Wisconsin cities and counties in response to the coronavirus pandemic, in-person registration and voting is available to some Wisconsin citizens but not to others, depending on where a voter resides.  Similarly, application of the document requirements for registering to vote and requesting an absentee ballot varies across cities and counties, resulting in some voters being subject to these requirements while others are not.  Based on information and belief, this variation includes some cities and counties deeming voters "indefinitely confined" and exempt from the requirement of providing voter IDs with a request for an absentee ballot while voters in other cities and counties continue to be required to provide voter IDs.

62.     Additionally, guidance on the witness requirement for absentee ballots varies by locality.  Many voters, particularly those who live at home, lack access to a witness while simultaneously following public health directives to stay at home and practice social distancing. Cities and counties are giving varying advice on how voters should navigate the witness requirement.  Based on information and belief, some localities have provided guidance to voters while others have not, meaning the ability to cast an absentee ballot depends on where the voter resides.

63.      The inconsistent availability of in-person registration and voting, the diverging standards across cities and counties with respect to the documents required to register and vote, and the different guidance on the witness requirement for absentee ballots are depriving voters, including Plaintiffs' constituents, of equal protection of the laws.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A.      Declaring that in the context of the current coronavirus crisis, Wisconsin's current

by-mail registration deadline, Wisc. Stat. § 6.28(1); requirements that copies of proof of residence and voter photo ID accompany electronic and by-mail voter registration and absentee applications, *id.* § 6.34, 6.86, respectively; the requirement that polling places receive absentee ballots by 8:00 p.m. on election day to be counted, *id.* § 6.87; the requirement that an absentee voter have a witness who attests to the accuracy of personal information on an absentee ballot, *id.* § 6.87(2) , are unconstitutional in violation of the First and Fourteenth Amendments;

B.      Ordering Defendants to extend Wisconsin's by-mail registration deadline to the deadline for in-person registration, April 3, 2020;

C.      Enjoining the enforcement of Wis. Stat. § 6.34's proof of residency requirement for voter registrations until the COVID-19 crisis is over;

D.      Enjoining the enforcement of Wis. Stat. §§ 6.86 - 87's photo identification requirements until the COVID-19 crisis is over and also declaring that all Wisconsin voters are deemed "indefinitely confined" under these statutory provisions and thus exempt from having to provide voter IDs with requests for absentee ballots;

E.      Enjoining the enforcement of the witness requirement in Wis. Stat. § 6.87(2) until the COVID-19 crisis is over;

F.      Enjoining Defendants and their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from rejecting ballots that are postmarked on or before Election Day and arrive at the municipal clerk's office within a minimum of ten days after Election Day; Ballots that do not have a postmark or other marking from the USPS shall be presumed to have been mailed by Election Day;

G.      Awarding Plaintiff its costs, expenses, and reasonable attorneys' fees pursuant to, inter alia, 42 U.S.C. § 1988 and other applicable laws; and

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 19**

H.      Granting such other relief as the Court deems just and proper.

Dated this 26th day of March, 2020.

                                Respectfully submitted,

                                /s/ *Bruce V. Spiva*
                                Marc E. Elias
                                John Devaney
                                Bruce V. Spiva
                                Amanda R. Callais
                                Zachary Newkirk*
                                PERKINS COIE LLP
                                700 Thirteenth St., N.W., Suite 800
                                Washington, D.C. 20005-3960
                                Telephone: (202) 654-6200
                                Facsimile: (202) 654-9959
                                melias@perkinscoie.com
                                jdevaney@perkinscoie.com
                                bspiva@perkinscoie.com
                                acallais@perkinscoie.com
                                znewkirk@perkinscoie.com

                                Charles G. Curtis, Jr.
                                Sopen B. Shah
                                PERKINS COIE LLP
                                33 East Main Street, Suite 201
                                Madison, Wisconsin 53703-3095
                                Telephone: (608) 663-7460
                                Facsimile: (608) 663-7499
                                CCurtis@perkinscoie.com
                                SShah@perkinscoie.com

                                *Counsel for the Plaintiffs*
                                *Motions for Admission Forthcoming*

**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF - 20**