IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEMOCRATIC NATIONAL COMMITTEE
and DEMOCRATIC PARTY OF WISCONSIN,

|  |  |  |
|---|---|---|
| | Plaintiffs, | OPINION AND ORDER |
| v. | | |
| | | 20-cv-249-wmc |

MARGE BOSTELMANN, JULIE M. GLANCEY,
ANN S. JACOBS, DEAN KNUDSON, ROBERT
F. SPINDELL, JR. and MARK L. THOMSEN,

Defendants,
and

WISCONSIN LEGISLATURE, REPUBLICAN
NATIONAL COMMITTEE, and REPUBLICAN
PARTY OF WISCONSIN,

Intervening Defendants.

Within a few weeks of Wisconsin's April 2020 election, the Democratic National Committee and the Democratic Party of Wisconsin (jointly, "the DNC/DPW") filed this lawsuit, seeking a preliminary injunction against the enforcement of certain election laws on federal constitutional grounds due to the impacts of the unfolding COVID-19 health crisis. With lightening speed, the case made it to the United States Supreme Court and back. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. ___ (2020) (per curiam). Now that the April election has come and gone, intervening defendant, the Wisconsin Legislature, has moved to dismiss this case (dkt. #197), while plaintiffs have moved to file a second amended complaint (dkt. #198), seeking to update their claims in light of the alleged impacts of COVID-19 on the ability to obtain and count a record number of absentee ballots during that election and similar, other challenges facing the

Wisconsin Election Commission ("WEC") in the impending August and November elections.[1]  For the reasons discussed below, the court will grant plaintiffs' motion and deny intervening-defendant's motion as moot.

## BACKGROUND

Shortly after the emergence of the COVID-19 health crisis in Wisconsin, the DNC/DPW filed this lawsuit, a temporary restraining order, and a preliminary injunction, seeking to enjoin enforcement of various provisions of Wisconsin's elections laws before Wisconsin's April 7, 2020, primary election.  This court granted narrow injunctive relief a few weeks before the April election, and this injunctive relief was further narrowed on appeal to the Seventh Circuit and the United States Supreme Court.

The Wisconsin Legislature has now moved to dismiss the DNC/DPW's complaint, arguing primarily that the claims became moot after the passage of the April election. While the DNC/DPW maintain that their original claims were not mooted, plaintiffs also seek to "fine-tune[]" their claims in an amended complaint "to take account of the rulings over the past two months by this court, the Seventh Circuit, and the Supreme Court." (Pls.' Reply (dkt. #203) 2.)  The DNC/DPW's proposed second amended complaint also

---

[1] This case was previously consolidated with two other related cases.  (*See* dkt. #86 (consolidating cases 20-cv-249, 20-cv-278, and 20-cv-284).)  Still, "actions which have been consolidated do not lose their separate identity." *Ivanov-McPhee v. Washington Nat. Ins. Co.*, 719 F.2d 927, 928 (7th Cir. 1983).  The two motions presently before the court concern only the 20-cv-249 case.  (*See* Wis. Leg. Mot. to Dismiss (dkt. #197); DNC/DPW Mot. for Leave to File Second Am. Compl. (dkt. #198).)  Accordingly, this opinion and order applies only to the 20-cv-249 case and all references to "plaintiffs" refer only to the DNC/DPW.  The court will take up the more recently filed motions in the '284 case and '278 cases by separate order.

seeks relief with respect to the August 2020 primary election and November 2020 general elections.   Specifically, plaintiffs again request that, "in the context of the current coronavirus crisis," the court declare unconstitutional and enjoin in part the following statutory provisions ("the challenged provisions"):  (1) the current by-mail and electronic registration deadlines, Wis. Stat. § 6.28(1); (2) the requirements that copies of proof of residence and voter photo ID accompany electronic and by-mail voter registration and absentee applications, Wis. Stat. §§ 6.34, 6.86, respectively; (3) the requirement that polling places receive absentee ballots by 8:00 p.m. on election day to be counted, Wis. Stat. § 6.87; and (4) the requirement that an absentee voter obtain the signature of a witness attesting to the accuracy of personal information on an absentee ballot, Wis. Stat. § 6.87(2).   (Proposed Second Am. Compl. ("Proposed SAC") (dkt. #198-1) 38-39.) Plaintiffs also seek to "ensure safe and sufficient in-person registration and voting facilities for all voters throughout the State."  (*Id.* ¶ 83.)   These requests are brought under the First and Fourteenth Amendment's guarantee against undue burdens on the right to vote, the Fourteenth Amendment's procedural due process clause, and the Fourteenth Amendment's equal protection clause.  (*Id.* at 31-38.)

Intervening defendants the Republic National Committee and the Republican Party of Wisconsin (jointly, "the RNC/RPW") have since joined in the Wisconsin Legislature's opposition to plaintiffs' motion for leave to amend their complaint (dkt. #201), although the originally-named defendants, the Commissioners of the Wisconsin Election Commission ("WEC"), do not appear to oppose plaintiffs' motion, and neither the Commissioners nor the RNC/RPW have joined in the Legislature's motion to dismiss.

3

OPINION

The Federal Rules of Civil Procedure provide that leave to amend a complaint should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may, however, "deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Right Field Rooftops, LLC v. Chicago Cubs Baseball Club, LLC*, 870 F.3d 682, 693 (7th Cir. 2017) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). "In the face of that uncertainty, applying the liberal standard for amending pleadings, especially in the early stages of a lawsuit, is the best way to ensure that cases will be decided justly and on their merits." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015).

The Legislature opposes plaintiffs' motion to amend on grounds of futility.[2] Specifically, the Legislature contends that: (1) plaintiffs' new claims are not yet ripe; (2) plaintiffs have alleged no claim upon which relief can be granted; and (3) all of plaintiffs' claims should be dismissed under the *Burford* abstention doctrine.[3] Unsurprisingly, the DNC/DPW responds by emphasizing the liberal standard generally applicable to requests for leave to amend and argue that their new claims are not futile.

---

[2] The Legislature also argued that the court should stay the case pending resolution of various interlocutory appeals before the Seventh Circuit. (Wis. Leg. Opp'n (dkt. #200) 37-39.) However, the Seventh Circuit has since dismissed the appeals, rendering this argument moot. *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, No. 20-1538 (7th Cir. May 14, 2020).

[3] In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court held that federal courts had the discretion to abstain from intervening in certain matters that would result in an impermissibly disruptive effect on state policies.

At this point, the court is unable to conclude that the entirety of plaintiffs' proposed amended complaint is futile and, having been presented with no other reason to deny leave to amend, the court will grant plaintiffs' motion. Because plaintiffs' second amended complaint is now the operative pleading, the Legislature's motion to dismiss plaintiffs' first amended complaint is rendered moot and, therefore, will be denied. *See* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.) ("[I]f the first complaint is considered superseded by the amendment, the court is not required to dismiss the suit when a motion points up the weaknesses of the earlier pleading."). Inevitably, however, the court addresses The Legislature's arguments for dismissal in considering its opposition to plaintiffs' motion for leave to amend on futility grounds.

## I. Ripeness

The Legislature first argues that plaintiffs' motion to amend is futile because their new claims are not yet ripe. Ripeness is a justiciability concern regarding the appropriate timing of judicial intervention.[4] *Renne v. Geary*, 501 U.S. 312, 320 (1991). The rationale

---

[4] In the past, the ripeness doctrine has been said to have both constitutional and prudential dimensions. *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 808 (2003). Recently, however, the Supreme Court called into question the "continuing vitality of the prudential ripeness doctrine." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (respondents' assertion that a claim is nonjusticiable on prudential ripeness grounds was in "some tension" with more recent cases reaffirming that a federal court's obligation to hear cases within its jurisdiction is "virtually unflagging"). Even so, the line between prudential and constitutional ripeness remains unclear. *See* Wright & Miller, 13B Fed. Prac. & Proc. Juris. § 3532.1 (3d ed.) ("Although the dual [prudential and constitutional] origins of ripeness doctrine are clear, the line between them is far from clear."). And without further guidance from the Supreme Court or the Seventh Circuit, this court will continue to apply traditional ripeness doctrine principles. *Cf. Skyline Wesleyan Church v. California Dep't of Managed Health Care*, No. 18-55451, 2020 WL 2464926, at *10 n.9 (9th Cir. May 13, 2020) ("Because the Supreme Court has not yet had occasion to resolve the continuing vitality of the prudential ripeness doctrine, we apply it here regardless of any uncertainty about its life expectancy.") (internal citations and quotations omitted).

behind this doctrine is to avoid premature adjudication and prevent courts from "entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Because ripeness affects justiciability, courts have held that affidavits and other evidence may be considered in determining whether or not a claim is ripe. *See, e.g.*, *Taylor Inv., Ltd. v. Upper Darby Tp.*, 983 F.2d 1285, 1290 & n.7 (3d Cir. 1993); *St. Clair v. City of Chico*, 880 F.2d 199, 201-02 (9th Cir. 1989).

Courts have traditionally considered two factors in determining ripeness: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (quoting *Abbott Labs.*, 387 U.S. at 149). A claim is not fit for judicial review if "the parties point only to hypothetical, speculative, or illusory disputes as opposed to actual, concrete conflicts." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). In evaluating a claim of hardship, courts consider whether "irremediably adverse consequences" would flow from requiring a later challenge. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967).

Here, the Legislature argues that plaintiffs' claims are not presently fit for judicial review "because those claims depend on both the health risks that COVID-19 may cause during those elections and the government's response to those risks." (Wis. Leg. Opp'n (dkt. #200) 18.) Notably, although the Legislature suggests that the WEC and the state and federal governments might take steps that affect plaintiffs' claims, it does not argue that *any* of the challenged provisions will *not* be enforced in the upcoming elections. (*See*

*id.* at 18-21.)  The Legislature also argues that plaintiffs will suffer no hardship if the court requires a later challenge because "voters in Wisconsin have ample avenues to vote, including under Wisconsin's generous absentee-voting regime."  (*Id.* at 21.)  Plaintiffs counter that:  (1) numerous reliable sources predict that the risks presented by COVID-19 will continue at least through the November election; and (2) there is no reason to expect that the challenged election laws will not be enforced.  (Pls.' Reply (dkt. #203) 10-12.)  Indeed, they point out that a delay in litigation will impose an increasing hardship:  as the later the court's decision, the more likely relief will be barred by the *Purcell* doctrine.  (*Id.* at 15.)

Turning to the first ripeness prong -- fitness for review -- the court concludes that plaintiffs' claims state an actual and concrete conflict premised on the near-certain enforcement of the challenged provisions in the context of the present and ongoing COVID-19 health care crisis.  *See Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1164 (11th Cir. 2008) ("The Supreme Court has long since held that where the enforcement of a statute is certain, a preenforcement challenge will not be rejected on ripeness grounds.").  Indeed, the WEC, the Legislature, and the Wisconsin Supreme Court have already concluded that the election laws must be enforced as written.  *See* WEC, Memorandum, Update Regarding COVID-19 Election Planning (Mar. 18, 2020) (taking the position that it did not have the authority to alter the election procedures set forth in Wis. Stat. § 6.28(1)(a) (online voter registration deadline) and §§ 6.88(3) and 7.52(1)(a) (absentee ballot return deadlines)); Wis. Leg. Proposed Mot. to Dismiss (dkt. #23) (taking the position that Wisconsin's elections statutes should be enforced in the April 2020

7

election); Wis. Leg. Mot. to Dismiss (dkt. #197) (taking the position that Wisconsin's elections statutes should be enforced in the upcoming elections); *Jeffersom v. Dane Cty.*, No 2020AP557-OA (Wis. Mar. 31, 2020) (directing enforcement of Wis. Stat. § 6.86 (absentee photo ID requirement) consistent with the WEC's guidance on indefinitely confined voters). This alone contrasts the present lawsuit from those where enforcement is in some reasonable doubt. *See Renne*, 501 U.S. at 322 (claim unripe where there was "no evidence of a credible threat that [the challenged law] will be enforced"); *Toilet Goods Ass'n, Inc.*, 387 U.S. at 163 (challenge to regulation authorizing penalties if plaintiffs did not permit the FDA to inspect their facilities was unripe in part because the court had "no idea whether or when" the challenged regulation might be enforced). Of course, in the event that some unforeseen, future event were to extinguish, or even call into reasonable question, plaintiffs' claims for relief because of governmental action related to election procedures, the Legislature is free to revisit and this court would be delighted to take up its ripeness argument again as this litigation progresses. But for now, plaintiffs have demonstrated that their claims rest on a real, substantial controversy, and not merely on a hypothetical question.

Plaintiffs have also demonstrated that they are likely to suffer adverse consequences if the court were to require a later challenge. The August election is less than three months away, and the November election only three months after that. As was amply demonstrated in the fire drill leading up to the April election, the longer this court delays, the less likely constitutional relief to voters is going to be effective *and* the more likely that relief may cause voter confusion and burden election officials charged with its

administration.   Further, any delay may ultimately preclude relief under the *Purcell* doctrine, which cautions against court intervention in imminent elections.  *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006); *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 300-01 n.12 (1979) ("Challengers to election procedures often have been left without a remedy in regard to the most immediate election because the election is too far underway or actually consummated prior to judgment.").  As plaintiffs point out, the Legislature appears to propose a rule in which it would either be "too soon" or "too late" to enforce voting rights.

In similar cases, other courts have found challenges to election laws to be ripe even in the face of various factual uncertainties.  In *Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006), the Fourth Circuit held that a challenge to Virginia's open primary law was ripe, even though it was uncertain whether a candidate would run in the primary and be subjected to the challenged provision.  *Id.* at 319.  The court reasoned that "[w]aiting until at least two candidates file for office likely would provide insufficient time to decide the case without disrupting the pending election," causing the court to ultimately conclude that "[t]he case is fit for judicial review despite this uncertainty."  *Id.* at 319-20.  Similarly, in *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008), the Eleventh Circuit concluded that plaintiffs' challenge to a Florida voter registration law was ripe even though it had not yet been enforced.  *Id.* at 1164.  According to that court, potential voters would face hardship if they had to wait until after their applications had been rejected to challenge the statute, as "there may not be enough time to reach a decision on the merits before the actual election."  *Id.*  The court further observed that state election

9

officials would likewise be burdened if the court were to enjoin enforcement of the challenged statute weeks or days before the election.  *Id.*  Regardless, this court does not relish, nor will it be receptive to, any repeat of last minute requests for relief from any party given that we have the luxury of months, rather than weeks, to address the merits of plaintiffs' claims and hard-earned lessons from which to draw in protecting the rights of Wisconsin voters.

As in *Miller* and *Browning*, therefore, the court finds that plaintiffs have shown their proposed claims are fit for judicial review and that they would suffer hardship if the court were to withhold their consideration.  Accordingly, the court rejects the Legislature's ripeness argument.

## II. Failure to State a Claim

The Legislature next argues that plaintiffs' proposed amendments are futile because the allegations fail to state a claim.  Plaintiffs' proposed amended complaint challenges various provisions of Wisconsin's election laws set forth above, as well as an alleged failure to ensure safe and sufficient opportunities to vote in person, on three federal constitutional grounds:  (1) an undue burden the right to vote in violation of the First and Fourteenth Amendment; (2) violations of the procedural due process clause of the Fourteenth Amendment; and (3) violations of the equal protection clause of the Fourteenth Amendment.  (Proposed SAC (dkt. #198-1) 31-38.)  The Legislature argues that all three grounds for relief fail as a matter of law, rendering plaintiffs' motion for leave to amend their complaint futile.

Certainly, "a district court is justified in denying an amendment if the proposed

amendment could not withstand a motion to dismiss." *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985).  However, in considering such a motion, a court must accept all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff.  *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015).  Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *Id.* (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013)).  With these principles in mind, the court will review the factual allegations for each of plaintiffs' three constitutional claims.

## A. Undue Burden on the Right to Vote

Plaintiffs' first claim that the challenged provisions impose an undue burden on the right to vote in violation of the First and Fourteenth Amendments.  (Proposed SAC (dkt. #198-1) 31.)  This claim is governed by *Anderson-Burdick* framework,[5] requiring courts to consider whether the burdens on the right to vote imposed by the challenged provisions are justified by the state's interests in enforcing the provision.  *See One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 904 (W.D. Wis. 2016) (citing *Anderson*, 460 U.S. 780; *Burdick*, 504 U.S. 428).

Plaintiffs' proposed complaint identifies specific burdens that allegedly will be imposed by each of the challenged provisions, and further avers that no state interest can justify their enforcement in light of the alleged burdens.  (Proposed SAC (dkt. #198-1) 31.)  The Legislature argues generally that plaintiffs' alleged burdens are not "plausible" or

---

[5] *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

are "speculative" and, therefore, are insufficient to support their claims.  (Wis. Leg. Opp'n (dkt. #200) 26-30.)  Yet the burdens on the right to vote that plaintiffs identify are based, at least in part, on burdens that allegedly befell voters in the April 2020 election.  For example, plaintiffs allege that in the April election, thousands of voters did not receive requested absentee ballots with adequate time to return them before the receipt deadline.  (Proposed SAC (dkt. #198-1) ¶ 50.)  They further allege that a similar situation will occur during the August and November elections, and that such a burden is not justified by any state interest.  (*Id.* ¶¶ 51-52.)  They include similar allegations for all of the challenged provisions.  (*See id.* at 21-30.)  Accordingly, the Legislature's argument that such burdens are not "plausible" falls flat in light of this past experience, although plaintiffs' will ultimately face a high bar in *proving* the allegations made in their complaint.

The Legislature also contends that plaintiffs' alleged burdens on the right to vote are insufficient *as a matter of law* to overcome the state's interest in enforcing duly enacted election laws.  (Wis. Leg. Opp'n (dkt. #200) 26-30.)  Plaintiffs counter that balancing tests are "by the very nature, generally inappropriate for Rule 12(b)(6) dismissal for failure to state a claim."  (Pls.' Reply (dkt. #203) 16.)  The court is again inclined to agree.  As a general matter, a motion to dismiss "is not an opportunity for the court to find facts or weigh evidence."  *My Health, Inc. v. Gen. Elec. Co.*, No. 15-CV-80-JDP, 2015 WL 9474293, at *2 (W.D. Wis. Dec. 28, 2015).  In a previous challenge to Wisconsin's election laws, this court explained that whether the laws at issue "actually burdened . . . voters, and if so, to what degree, is a question of fact that cannot be resolved at the pleading stage."  *One Wisconsin Inst., Inc. v. Nichol*, 155 F. Supp. 3d 898, 905 (W.D. Wis. 2015) (citing *Cushing*

*v. City of Chicago*, 3 F.3d 1156, 1163 (7th Cir. 1993)); *see also Baude v. Heath*, 538 F.3d 608, 612 (7th Cir. 2008) ("[a]ny balancing approach . . . requires evidence," and "without understanding the magnitude of both burdens and benefits," it is impossible to tell whether a particular burden is excessive; *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014) (resolution of "a fact-intensive balancing test" is "not ordinarily suitable [at] the Rule 12(b)(6) stage").  Indeed, various circuit courts have reversed the dismissal of election-related challenges before the development of the evidentiary record.  *See, e.g., Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018); *Duke v. Cleland*, 5 F.3d 1399, 1405-06 & n.6 (11th Cir. 1993); *Wood v. Meadows*, 117 F.3d 770, 776 (4th Cir. 1997).  Here, plaintiffs have plausibly alleged that each of the challenged provisions imposes a burden on voters that is not justified by the state's interests.  Because these allegations are sufficient to survive a motion to dismiss, the claim is not futile.

That being said, some of the provisions challenged in this suit have been repeatedly upheld in federal court.  *See Frank v. Walker*, 768 F.3d 744, 751 (7th Cir. 2014) (upholding Wisconsin's voter ID law); *One Wisconsin Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 935 (W.D. Wis. 2016) (upholding law requiring Wisconsin voters to provide documentary proof of residence when registering to vote).  Absent some extraordinary showing as to the impact of the current health crisis on those statutory provisions, this court is unlikely to overturn those decisions.  But, the court need not (and arguably cannot for the reasons set forth above) consider likely short-comings in plaintiffs' ultimate proof at the pleadings stage, understanding that plaintiffs will ultimately bear a heavy burden of persuasion to

obtain relief on any of their claims.  *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 200 (2008).

## B.  Procedural Due Process

Plaintiffs' second proposed claim is that the challenged provisions violate the Fourteenth Amendment's procedural due process clause.  (Proposed SAC (dkt. #198-1) 33.)  In bringing this claim, plaintiffs invoke the test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires the court to balance:  (1) the interest that will be affected by the state action; (2) the risk of erroneous deprivation of this interest through the procedures used by the state and the probable value, if any, of additional procedural safeguards; and (3) the state's interest, including the fiscal and administrative burdens that the additional procedure would entail.  *Id.* at 340-49.

The Legislature argues that this claim is wholly duplicative of plaintiffs' *Anderson-Burdick* argument and should therefore be dismissed.  (Wis. Leg. Opp'n (dkt. #200) 31.)  As this court observed in its previous order, the Supreme Court's *Anderson-Burdick* balancing test is grounded in both the Fourteenth and First Amendments.  (*See* Order (dkt. #170) 27 n.15 (citing *Burdick*, 504 U.S. at 434).)  Moreover, "[i]n *Burdick v. Takushi*, the Court emphasized that [the *Anderson-Burdick*] test applies to *all* First and Fourteenth Amendment challenges to state election laws."  *Acevedo v. Cook Cty. Officers Electoral Bd.*, 925 F.3d 944, 948 (7th Cir. 2019) (emphasis in original).  Further, despite the *Mathews* and *Anderson-Burdick* tests involving a similar balancing analysis, plaintiffs do not explain how, if at all, their separate procedural due process claim is distinguished from their undue burden claim.

Nevertheless, the Legislature also fails to point to any rule requiring the court to dismiss plaintiffs' claim simply because it appears to be duplicative.[6]  *Cf. Glenwood Halsted LLC v. Vill. of Glenwood*, 866 F. Supp. 2d 942, 948 (N.D. Ill. 2012) ("There is no need to decide at the pleadings stage which constitutional provision necessarily governs Plaintiff's claims.").  Accordingly, the court will not hold that plaintiffs' due process claim is futile simply because it is largely, if not entirely, duplicative.  At the same time, unless plaintiffs are able to articulate a specific legal or factual rationale for applying the *Mathews* test over the *Anderson-Burdick* test in evaluating a challenged provision, the court will analyze their claims under the latter standard.

The Legislature argues that plaintiffs' procedural due process claim should be dismissed for the same reasons that their undue burden claim should be dismissed:  they fail to allege private burdens that, as a matter of law, overcome the state's interest in preserving the integrity of its elections.  (Wis. Leg. Opp'n (dkt. #200) 31-32.)  For the same reasons identified above, however, the court concludes that plaintiffs have plausibly stated a claim and any balancing analysis is better undertaken with the benefit of a more developed evidentiary record.

## C. Equal Protection Clause

Plaintiffs' last proposed claim sounds under the equal protection clause and is

---

[6] The Legislature cites generally to *Albright v. Oliver*, 510 U.S. 266 (1994), but that case stands only for the proposition that a plaintiff cannot bring a generalized *substantive* due process claim where a particular Amendment "provides an explicit textual source of constitutional protection."  *Id.* at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

premised on the Supreme Court's holding in *Bush v. Gore*, 531 U.S. 98 (2000) (per curiam), that "[h]aving once granted the right to vote on equal terms," a state may not "by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104-05. Generally, plaintiffs claim here that voters were subject to arbitrary and disparate treatment during the recent April election with respect to "[s]afe and sufficient in-person registration, absentee voting, and election-day voting opportunities." (Proposed SAC (dkt. #198-1) ¶ 94.) More specifically, plaintiffs allege that: (1) the application of documentation requirements varied broadly; (2) voters received conflicting guidance on the witness requirement; (3) the standards for what constituted a valid postmark varied across localities; and (4) the "indefinitely confined" exception is defined and enforced differently by local election officials. (*Id.* ¶¶ 95-96.) Given these allegations, the court cannot conclude that plaintiffs' equal protection claim is futile.

## III. Burford Abstention

Finally, the Legislature argues that plaintiffs' motion to amend their complaint is futile because *Burford* abstention requires that this court dismiss or stay all of plaintiffs' proposed claims. Abstention under the *Burford* doctrine is appropriate where (1) "timely and adequate state-court review is available" and (2) federal intervention would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Public Serv., Inc. v. Council of City of New Orleans,*

491 U.S. 350, 361 (1989) ("*NOPSI*").[7]  In examining *Burford* and its progeny, the Seventh

Circuit has held that this abstention doctrine contains "two essential elements":  (1) "the

state must offer some forum in which claims may be litigated"; and (2) "that forum must

be special -- it must stand in a special relationship of technical oversight or concentrated

review to the evaluation of those claims."  *Prop. & Cas. Ins. Ltd. v. Cent. Nat. Ins. Co. of

Omaha*, 936 F.2d 319, 323 (7th Cir. 1991).  The Supreme Court has further cautioned

that there is only a "narrow range of circumstances in which *Burford* can justify the

dismissal of a federal action."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726 (1996).

In particular, where federal issues eclipse state ones, the Seventh Circuit advised that

principles of federalism do not warrant deference to a state regulatory regime.  *Hammer v.

United States Dep't of Health & Human Servs.*, 905 F.3d 517, 532 (7th Cir. 2018).

The Legislature contends that this court "should abstain from adjudicating

Plaintiffs' claims under *Burford*, due to the extreme disruption that such intervention would

cause to Wisconsin's important interests in comprehensive election administration."  (Wis.

Leg. Opp'n (dkt. #200) 35.)  This is not the first time that the Legislature has advanced

this argument, having previously urged this court to stay or dismiss this case under the

*Burford* abstention doctrine in response to plaintiffs' first TRO request, albeit then in an

*amicus* brief.  (*See* Wis. Leg. Br. (dkt. #23) 2, 17-20.)  The court was not persuaded by the

Legislature's argument then (*see* Order (dkt. #37) 17 n.12), nor is it persuaded now.

---

[7] *Burford* abstention may also apply where a federal court is faced with "difficult state-law questions bearing on policy problems of substantial public import."  *NOPSI*, 491 U.S. at 361.  But the Legislature does not argue that this type of *Burford* abstention is applicable to this case, nor could it, as plaintiffs here bring exclusively federal law claims.

As plaintiffs point out, the Legislature's assertion that plaintiffs' claims may be litigated by Wisconsin state courts ignores that these courts are not specialized tribunals with a special relationship with voting rights issues. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 504 (7th Cir. 2011) ("judicial review by state courts *with specialized expertise* is a prerequisite to *Burford* abstention") (emphasis in original).   Moreover, plaintiffs cite to numerous decisions holding that *Burford* abstention is inappropriate in federal constitutional challenges to state elections laws.  *E.g., Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000); *Duncan v. Poythress*, 657 F.2d 691, 699 (5th Cir. 1981); *Edwards v. Sammons*, 437 F.2d 1240, 1244 (5th Cir. 1971); *League of Women Voters of Fla., Inc. v. Detzner,* 354 F. Supp. 3d 1280, 1283 (N.D. Fla. 2018); *Mich. State A. Philip Randolph Inst. v. Johnson,* 209 F. Supp. 3d 935, 943 (W.D. Mich. 2016); *Bogaert v. Land*, 675 F. Supp. 2d 742, 747 (W.D. Mich. 2009).   Accordingly, the court finds that plaintiffs' amended complaint is not futile due to the *Burford* abstention doctrine.

Still, the court is mindful of the special role assigned the Wisconsin Election Commission in preparing for the August and November elections and will certainly take into consideration its actions in determining what steps, if any, a federal court should or may undertake in protecting the right of Wisconsin voters.   Although given its recent history of strict adherence to the Wisconsin statutory requirements and deadlocking over any creative efforts to vindicate voter rights even if the statutes arguably allow them, this court would be remiss in abstaining from exercising its role in protecting the federal constitutional rights of Wisconsin voters, if necessary.

**IV. Next Steps**

In light of the impending August and November elections, and in an effort to adjudicate the claims presented in this case efficiently, the court will set the following schedule.  If they have not already done so, the parties should commence expedited discovery immediately.  The parties should be restrained in their requests and should also endeavor to turn around written responses within 7 to 10 days, as well as schedule any needed depositions shortly thereafter.

On or before June 25, 2020, WEC is directed to file a statement addressing the following issues: (1) what measures WEC is taking or anticipates taking to prepare for the August and November 2020 elections; (2) whether WEC believes that any additional requested relief would improve the administration of those elections; and (3) whether WEC believes it has the statutory authority to provide any of the relief requested by plaintiffs.  The court will then hold a status conference with the parties on Monday, June 29, 2020, at 10:00 a.m..

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for leave to file a second amended complaint (dkt. #198) is GRANTED.

2) The Wisconsin Legislature's motion to dismiss (dkt. #197) is DENIED as moot and all defendants and intervening defendants may have until June 30, 2020, to answer, move to dismiss, or otherwise respond to plaintiffs' second amended complaint.

3)  The schedule and deadlines as described in the opinion above is adopted.

Entered this 9th day of June, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge