## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF WISCONSIN

DEMOCRATIC NATIONAL COMMITTEE, et al.,

     Plaintiffs,

     v.

MARGE BOSTELMANN, et al.,

     Defendants,

     and

REPUBLICAN NATIONAL COMMITTEE, et al.,

     Intervening Defendants.

Civil Action No.: 3:20-cv-249-wmc

---

SYLVIA GEAR, et al.,

     Plaintiffs,

     v.

MARGE BOSTELMANN, et al.,

     Defendants,

     and

REPUBLICAN NATIONAL COMMITTEE, et al.,

     Intervening Defendants.

Civil Action No.: 3:20-cv-278-wmc

---

CHRYSTAL EDWARDS, et al.,

     Plaintiffs,

     v.

ROBIN VOS, et al.,

     Defendants.

     and

REPUBLICAN NATIONAL COMMITTEE, et al.,

     Intervening Defendants.

Civil Action No. 3:20-cv-340-wmc

---

JILL SWENSON, et al.,

     Plaintiffs,

v.

MARGE BOSTELMANN, et al.,

and

REPUBLICAN NATIONAL COMMITTEE, et al.,

Intervening Defendants.

Civil Action No. 3:20-cv-459-wmc

## MEMORANDUM OF WEC DEFENDANTS IN RESPONSE TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTIONS

## INTRODUCTION

Defendants Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., Mark L. Thomsen, Commissioners of the Wisconsin Elections Commission and Meagan Wolfe, Administrator[1], in their official capacities (collectively, the "WEC"), by their undersigned counsel, respond as follows and collectively to the Plaintiffs'[2] Motion for Preliminary Injunction.

The WEC administers and enforces Wisconsin's election laws, except for laws regarding campaign finance. Wis. Stat. § 5.05 (1)[3]. The WEC is a function of the Wisconsin statutes and has no authority to overrule, waive or otherwise disregard Wisconsin's election laws, including statutes related to absentee ballots and the decentralized structure of Wisconsin election administration.

---

[1] Administrator Wolfe is a defendant in three of the four consolidated cases: *Gear et al. v. Bostelmann et al.*, 3:20-cv-278; *Edwards et al. v. Vos et al.*, 3:20-cv-340; and *Swenson et al. v. Bostelmann et al.*, 3:20-cv-459. For purposes of this brief, and pursuant to the agreed-upon schedule in this case, the individual Commissioners and Administrator Wolfe respond collectively to the motions for preliminary injunction.

[2] Except as otherwise specified herein, "Plaintiffs" means, collectively, the plaintiffs in the four consolidated cases, *DNC et al. v. Bostelmann et al.*, Case No. 3:20-cv-249; *Gear et al. v. Bostelmann et al.*, 3:20-cv-278; *Edwards et al. v. Vos et al.*, 3:20-cv-340; *Swenson et al. v. Bostelmann et al.*, 3:20-cv-459.

[3] All references are to the 2020 Statutes.

The November 2020 Election will be the fourth election conducted in Wisconsin since the beginning of the COVID-19 crisis. [WECPFOF[4] 1-2]. One of those elections – the April 7 Spring Election – was the subject of extensive proceedings before this Court, including a request to postpone the election altogether. [*See generally*, '249 Case Dkt. No. 170; '284 Case, Dkt. No. 1]. The Plaintiffs have requested various relief, some of which was also before the Court in March. ['249 Case Dkt. Nos. 252, 369 and 395; '459 Case Dkt. No. 40]. Following the April 7 Election, and in anticipation of a general election taking place during the ongoing COVID-19 crisis, the WEC and its staff has undertaken steps which are outlined in the WEC's June 25, 2020 Report to the Court and described briefly below. ['249 Case Dkt. No. 227]. The WEC does not take a position on the specific relief requested in the Plaintiffs' respective motions. Rather, this brief sets forth the WEC's position regarding its authority under Wisconsin statutes.

## FACTS

### I. The Wisconsin Elections Commission.

Defendants Marge Bostelmann, Dean Knudson, Ann Jacobs, Mark Thomsen, Robert Spindell and Julie Glancy are the members of the Wisconsin Elections Commission. Wisconsin statute authorizes the creation of the WEC and defines its duties. Wis. Stat. § 15.61; *see generally* Wis. Stat. 5.05 (1). The WEC administers and enforces Wisconsin's elections laws. In administering elections, the WEC works in conjunction with the State's county[5] and municipal clerks[6]. There are 72 county clerks and 1,850 municipal clerks. [WECPFOF 5]. Over 60% of the

---

[4] WEC Defendants' Additional Proposed Findings of Fact

[5] As used herein, "county clerks" is intended to describe those officials described in Wisconsin Statute sections 7.10 and 5.02 (2) as well as boards of election for counties over 750,000 in population as described in Wisconsin Statute section 7.20.

[6] As used herein, "municipal clerks" is intended to include those officials described in Wisconsin Statute sections 7.15 and 5.02 (10) as well as boards of election for municipalities over 500,000 in population as described in Wisconsin Statute section 7.20.

State's municipal clerks are part-time. [WECPFOF 5]. The WEC has an Administrator, Meagan Wolfe, and a staff of twenty-nine. [WECPFOF 2]; Wis. Stat. § 5.05 (3d).

## II. Wisconsin Election Law.

Wisconsin election law is a product of the Wisconsin Constitution and statutes. The Wisconsin Constitution guarantees the right to vote, subject to, "a legitimate field of legislative activity in the nature of regulation." *League of Women Voters v. Walker*, 2014 WI 97, ¶ 19, 357 Wis.2d 360 851 N.W. 2d 302, *quoting McGrael v. Phelps*, 144 Wis. 1, 128 N.W. 1041 (1910). Wisconsin's election laws are found in Chapters 5 through 10 and 12 of the Wisconsin statutes. Those statutes include delineations of the duties of municipal and county clerks, as well as the WEC. *See generally*, Wis. Stat. §§ 7.15; 7.10; 7.08. Wisconsin statutes also set the qualifications for election officials; deadlines applicable to elections; registration requirements; and the rules surrounding absentee ballots. *See e.g.* Wis. Stat. §§ 7.30; 7.15; 6.34; 6.28, 6.86 *et seq*. The statutes also create specific rules regarding the standards for polling places. Wis. Stat. §§ 5.15; 5.25; 5.35. More information regarding the WEC's authority, as well as the independent statutory authority of municipal clerks and boards of elections, is set forth below.

## III. COVID-19 and the April 7 Election.

### A. Background for the April 7 Election.

Wisconsin held its Spring Presidential Preference and Spring Election on April 7, 2020. [WECPFOF 8]. In addition to the presidential primary, there was also a race for Justice of the Wisconsin Supreme Court and many local offices. [WECPFOF 8]. At the time, Wisconsin was the only state to conduct a statewide election while operating under a "stay at home" order related to the COVID-19 pandemic. [WECPFOF 9]. Ballots for the April 7 Election became available on February 20, 2020. [WECPFOF 8]. Governor Evers issued his first executive order related to

COVID-19 on March 12, proclaiming a health emergency and directing the Wisconsin Department of Health Services as the lead agency to respond. *See e.g. Wisconsin Legislature v. Palm*, 2020 WI 42, ¶ 5, 391 Wis.2d 497, 942 N.W.2d 900. On March 22, 2020, Governor Evers and Lieutenant Governor Barnes issued a letter which, among other things, encouraged people to cast absentee ballots in the upcoming election. [WECPFOF 10]. On March 24, the Governor and the Secretary-Designee of Wisconsin's Department of Health Services issued "Emergency Order # 12: Safer at Home Order," restricting certain forms of travel and activities in the state in response to COVID-19 ['249 Case Dkt. No. 170, p. 7 n 4]; *Palm*, 2020 WI 42, ¶ 7.

The day before the election, Governor Evers issued an additional emergency order – Executive Order # 74 - to postpone in-person voting. The Wisconsin Supreme Court enjoined that order later the same day. *Wisconsin Legislature v. Evers*, No. 2020AP608-OA (Apr. 6, 2020).

   *a. Preparations for the April 7 Election*

In anticipation of the April 7 Election, the WEC undertook projects to change its own processes and  provide assistance to municipal clerks throughout the state. [WECPFOF 11]. In addition to its normal duties, the WEC did the following in response to the COVID-19 pandemic:

   1. **Sanitation and PPE**. The WEC staff worked with the State Emergency Operations Center ("SEOC") to find, procure and distribute sanitation supplies and personal protective equipment to polling places throughout Wisconsin. Those supplies included over 8,000-liter bottles of ethyl alcohol solution for use as a hand and surface sanitizer; 10,000 plastic spray bottles; 500,000 isopropyl alcohol wipes; surgical masks, latex gloves; 1.5 million ballpoint pens; approximately 2,000 rolls of painter's tape; and over 10,000 social distancing and public health signs. The Wisconsin National Guard then helped package

and distribute supplies to regional facilities around the state. County governments distributed the supplies from the regional facilities. [WECPFOF 12-14].

2. **Encouraging Absentee Voting**. On March 13, 2020, the WEC issued a press release encouraging anyone who was concerned about COVID-19 exposure to make plans to vote absentee for the April 7, 2020 Election, describing how voters could request an absentee ballot and providing information about indefinitely confined voters, photo ID requirements and the absentee ballot receipt deadline. [WECPFOF 15].

3. **Updates to WisVote**. WEC staff performed updates on WisVote, Wisconsin's statewide voter registration database and election administration system. WEC's staff performed  updates to WisVote to accommodate changes to the deadlines for absentee ballot requests and online registration. As a result of increased absentee ballot requests and uploaded photo ID's, WEC staff made multiple memory increases to WisVote and continuously monitored its capacity. The WEC staff also created a new report within WisVote to assist jurisdictions with consolidated polling places. [WECPFOF 16-17].

4. **Updates to MyVote**. The WEC staff increased capacity and made changes to MyVote, the WEC's public-facing website. The circumstances of the April 7 Election and COVID-19 crisis resulted in an unprecedented use of MyVote features. WEC staff also had to make coding changes to MyVote to adjust deadlines and workflows because of court orders. Due to the pandemic, the WEC was unable to conduct usability tests of these changes. Finally, the WEC

adjusted load testing plans to address the high volume of MyVote traffic and changes in voter behavior. [WECPFOF 18-20].

5. **Envelopes and Postage**. Municipal clerks had purchased absentee ballot supplies, including envelopes and supplies, prior to the start of the COVID-19 crisis in Wisconsin based on pre-2020 absentee ballot behavior. As voters increasingly shifted to voting by absentee ballot by mail, clerks ran out of supplies and were unable to purchase more due to supply chain issues. The WEC, with help from the SEOC, procured and distributed additional envelopes. By March 30, the WEC had distributed 1.2 million absentee ballot envelopes to municipal clerks. [WECPFOF 20-22].

6. **Poll Worker Shortage**. At the beginning of the COVID-19 crisis, municipal clerks began reporting a shortage of poll workers. According to statewide surveys, most poll workers are typically over the age of 60. Many municipal clerks were unable to fill-in on an emergency basis as poll workers because they were also in a vulnerable demographic. Prior to the April 7 Election, municipalities reported a statewide shortage of over 7,000 poll workers. The WEC requested poll worker personnel from the state operations center. It also engaged in a public campaign to encourage those who were able to serve as poll workers, and distributed recruitment material to municipalities for their use. WEC staff added a "become a poll worker" function to MyVote to put potential poll workers in touch with municipal clerks. State employees were encouraged to serve. The WEC also developed online, video-based training that could be used by municipalities to meet their statutory duty to train poll workers. Finally,

on April 2, Governor Evers authorized the Wisconsin National Guard to serve as poll workers. The WEC worked with the National Guard and local election officials to coordinate deployment, as well as developing online poll worker and election public health training for service members of the National Guard. Nearly 2,500 members of the National Guard were put on active duty on April 6 to begin screening and training. [WECPFOF 23-30].

7. **Guidance to Clerks**. The WEC communicates regularly with the 1,850 municipalities and 72 counties who administer elections in Wisconsin. Given the unprecedented difficulties of the April 7 Election, the WEC sent more than 50 communications and guidance documents to clerks between March 12 and April 7. Normally, the WEC sends 10 such communications in that period and avoids communications in the week before an election. WEC staff prepared and distributed specific public health documents and held numerous webinars. On March 29, 2019, the WEC issued additional guidance regarding the "indefinitely confined" designation considering the COVID-19 pandemic. Wis. Stat. § 6.82 (2)(a). [WECPFOF 31-33].

8. **Consolidation of Polling Places**. As a result of unknown in-person turnout and poll worker shortages, some jurisdictions consolidated polling places, moving multiple wards into the same polling place. Wisconsin Statute § 5.25 requires that polling places be established at least 30 days in advance of the election by the local governing body. Wis. Stat. § 5.25 (1). Due to the timing of the public health emergency and emergency orders, as well as public health guidance regarding who could enter certain types of care facilities, the WEC adopted a

motion stating that municipal clerks may relocate or move polling places that were to be located in nursing homes, care facilities and other facilities as determined by the Wisconsin Department of Health Services or other local health officials without obtaining prior approval of the local governing body or municipal elections commission. [WECPFOF 34-35].

9. **Postmarks**. Pursuant to *Republican National Committee v. Democratic National Committee*, a ballot had to be returned by 8:00 pm on April 7 or postmarked no later than April 7 and received by the clerk by April 13 to be counted. *RNC v. DNC*, 140 S. Ct. 1205 (April 6, 2020) (*per curiam*). Following the Court's decision, the WEC worked with local election officials and representatives of the USPS to understand the way various postmarks are used. [WECPFOF 36].

10. **Other Postal Issues**. Following the April 7 Election, WEC staff sent a letter to local, state, regional and national USPS representatives regarding ballots not received and outgoing ballots returned to municipalities, to which there has not been a response. [WECPFOF 37].

11. **Public Guidance**. During the lead-up to the April 7 Election, the WEC issued frequent public guidance, including "Top 10 Things Voters Should Know about the April 7 Spring Election and Presidential Primary - COVID-19" which provided information on polling place consolidation and double-checking your polling place, deadlines to return absentee ballots following the Supreme Court's decision, public health guidelines, curbside voting and a voter's ability to return an absentee ballot to a polling place on Election Day. [WECPFOF 38].

On March 19, 2020, the Democratic National Committee and Democratic Party of Wisconsin filed their complaint for declaratory and injunctive relief. ['249 Case, Dkt. No. 1]. Two other lawsuits regarding the administration of the April 7 Election followed in short order. ['278 Case, Dkt. No. 1; '284 Case, Dkt. No. 1]. The Court and parties are well-aware of the proceedings that followed, including proceedings before the Court of Appeals for the Seventh Circuit and the United States Supreme Court. [*see generally* '249 Case, Dkt. No. 217, pp. 1-2]. Following the decision of the United States Supreme Court on April 6, 2020, in order to be counted for the April 7 Election, a voter's absentee ballot either (1) had to be postmarked by election day and received by April 13, 2020 at 4:00 p.m. or (2) had to be hand-delivered to a polling place or clerk's office by April 7 at 8:00 p.m. *RNC v. DNC*, 140 S.Ct. 1205 (April 6, 2020) (*per curiam*). The WEC issued immediate guidance to clerks and created new guidance to ensure that jurisdictions could securely suspend voting equipment to comply with this Court's injunction regarding early result reporting, and followed up with an alert to all local election officials. [WECPFOF 39].

In addition to the litigation before this Court, plaintiffs sued in the United States District Court for the Eastern District of Wisconsin, requesting among other things that the election be postponed. Both suits were dismissed. *City of Green Bay v. Bostelmann*, No. 20-C-479, 2020 WL 1492975, *3 (E.D. Wis. March 27, 2020); *Taylor v. Milwaukee Elec. Comm.*, No. 20-cv-545, 2020 WL 1695454 (E.D. Wis. April 6, 2020).

c. *Absentee Ballots for the April 7 Election*

Voters cast a total of 964,433 absentee ballots by mail in the April 7 Election. [WECPFOF 40.] Voters cast a total of 1,555,263 ballots in the April 7 Election, meaning over 60% of total ballots were by-mail absentee. [WECPFOF 40.] Due to the combined increase of in-person and

by-mail absentee voting, some municipal clerks and their staff were nearly overwhelmed and had to recruit assistance from other municipal departments or hire temporary staff. [WECPFOF 42.] Of the 1,303,985 absentee ballots sent by municipal clerks, 1,159,800 (or 88.94%) were returned and counted. Of those, 1,101,324 were returned on or before April 7. Seventy-nine thousand fifty-four ballots were received between April 8 and April 13. According to reports from municipal clerks, 2,659 absentee ballots were returned after April 13 and could not be counted. [WECPFOF 43.]

The WEC is unable to determine how many voters were unable to cast a ballot for the April 7 Election due to the COVID-19 Pandemic. Municipal clerks and local election officials rejected 14,042 ballots due to insufficient certification and 5,526 because they were postmarked after election day. [WECPFOF 44.] There were 120,989 ballots which voters requested but did not return, which includes ballot requests cancelled either by a municipal clerk or by the voter, as well as 4,960 ballots that were returned as undeliverable. [WECPFOF 45.] The WEC investigated reported issues both in fulfilling ballot requests and in the United States Postal Service delivering those ballots. [WECPFOF 46.]

Municipal clerks faced the challenge of meeting this unprecedented demand for absentee ballots, in addition to their other duties including administering in-person absentee voting, preparing polling places and recruiting and training new election inspectors. [WECPFOF 41.] Hundreds of municipal clerks work alone and part time. [WECPFOF 41.]

    *d.  In-Person Election Day Voting*

Subject to the consolidation described above, in-person election day voting was available in every jurisdiction on April 7. Voters cast 397,664 ballots through in-person election day voting.

This represented 26% of the total ballots cast. Historically, that percentage is over 80%. [WECPFOF 47.]

B. <u>Plans for November Election</u>

The WEC is underway with preparations for the November 3 Election, and is undertaking additional steps in response to the COVID-19 crisis. Those steps are outlined in more detail in the WEC's June 25 Status Report and discussed below.

## ARGUMENT

The WEC takes no position on the relief sought by the Plaintiffs in these consolidated cases. The WEC will briefly set forth the relevant standards for the Plaintiffs' claims, along with a discussion of the relevant constitutional and statutory duties of the WEC, municipal clerks and boards of election, and the other statutes at issue.

**I. Standards**

A. <u>Preliminary Injunctions</u>

To obtain a preliminary injunction, any plaintiff must show, "(1) that he will suffer irreparable harm absent preliminary injunctive relief during the pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits." ['249 Case, Dkt. No. 37, p. 9, *quoting Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017)]. Only if the moving party shows likelihood of success on the merits and a suffering of irreparable harm if the injunction does not issue, then "the court weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Wis. Right to Life, Inc. v. Barland,* 751 F.3d 904, 830 (7th Cir. 2014) (citation omitted). "The equitable balancing proceeds on a sliding-scale analysis; the greater the

likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor." *Id*. (internal citation omitted).

A preliminary injunction is an extraordinary and drastic remedy and is never awarded as a matter of right. *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). "[A]n injunction requiring an affirmative act by the defendant" must be "cautiously viewed" and granted only "sparingly." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chi. United Indus., Ltd. v. City of Chicago,* 445 F.3d 940, 944 (7th Cir. 2006).

B. <u>Constitutional Claims.</u>

    a. *Anderson-Burdick.*

Each group of plaintiffs claims that Wisconsin imposes unconstitutional burdens on the right to vote. That question is governed by the *Anderson-Burdick* framework. *Common Cause Ind. v. Individual Members of the Ind. Election Comm.*, 800 F.3d 913, 917 (7th Cir. 2015) *citing Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). *Anderson-Burdick* is, "the proper standard under which to evaluate an equal protection challenge to laws that allegedly burden the right to vote of certain groups of voters." *One Wisconsin Inst. v. Thomsen*, 198 F.Supp.3d 896, 929 (W.D. Wis. 2016) (internal citation omitted), *aff'd in part, rev'd in part sub nom. Luft v. Evers*, No 16-3003, 2020 WL 3496860 (7th Cir. June 29, 2020).

States retain the power to regulate their own elections. *Burdick*, 504 U.S. at 433; *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). "A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 231 (1989). The public also has a "strong interest" in exercising the constitutional right to vote. *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006). In recognition that election

laws "invariably impose some burden upon individual voters," *Burdick*, 504 U.S. at 433, the *Anderson-Burdick* framework involves a balancing of these interests, requiring this Court to consider, "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* at 434 (internal quotations omitted).

In addressing the *Anderson-Burdick* analysis, the Seventh Circuit stressed recently that a state's election laws must be considered as a whole. *Luft v. Evers*, 2020 WL 3496860, *8. Quoting *Burdick*, the Seventh Circuit noted that the "right to vote in any manner….(is not) absolute." *Id., quoting Burdick,* 504 U.S. at 433. Election laws impose some burdens upon voters, and "(c)ourts weigh those burdens against the state's interests by looking at the whole electoral system" to determine if voting rights have been "severely restricted." *Luft,* 2020 WL 3496860, *3.

          *b.   Procedural Due Process Claims.*

The *DNC* and *Swenson* plaintiffs have made claims styled as procedural due process violations. Due process analysis requires consideration of three distinct factors in this context: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

The Court has previously held that "*all* First and Fourteenth Amendment challenges to state election laws" are analyzed under the *Anderson-Burdick* framework. ['249 Case Dkt. No.

217, p. 14, *quoting Acevedo v. Cook Cty. Officers Electoral Bd.*, 925 F.3d 944, 948 (7th Cir. 2019)]. The Court's language in *Burdick* indicates that the test was applicable to all Fourteenth Amendment claims and did not provide a carve-out for claims of procedural due process violations. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also Anderson*, 460 U.S. at 789.

C. Statutory Claims.

a. *Voting Rights Act.*

The *Swenson* plaintiffs have asserted a claim under Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307 (b). In general, that section prohibits anyone acting under color of law from engaging, or attempting to engage, in intimidating, threatening, or coercive conduct relative to voting. 52 U.S.C. § 10307 (b).

b. *Americans With Disabilities Act.*

The *Edwards* plaintiffs and a subset of the *Gear* and *Swenson* plaintiffs have sought relief pursuant to the ADA. Title II of the ADA provides that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Discrimination in violation of Title II can be shown by the failure to make "reasonable modifications in policies, practices, or procedures." 28 C.F.R. § 35.130 (b)(7)(i). In order to prove discrimination in violation of Title II, "a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was by reason of his disability." *Lacy v. Cook County,*

*Illinois,* 897 F.3d 847, 853 (7th Cir. 2018) (internal citations and quotations omitted).[7]

## II.     Plaintiffs' Motions for Preliminary Injunctions

The WEC does not take a position on the elements of relief requested in the Plaintiffs' respective motions for preliminary injunctions. In assessing those requests, however, the WEC asks this Court to be mindful of its statutory role within Wisconsin's election system. As this Court is aware, the WEC does not have the authority to modify, waive or overrule Wisconsin's election statutes. Wisconsin's election statutes govern each election. Wis. Stat. § 5.01 (2); ['249 Case, Dkt. No. 170, p. 6]. The WEC is charged with administering and enforcing those statutes. Wis. Stat. § 5.05; [WECPFOF 3]. Should this Court enter relief that is in effect as of the date of the November 2020 election, the WEC will be responsible for issuing appropriate guidance to implement that decision. Wis. Stats. § 5.05 (5t).

### A.  WEC's Role and Authority.

The WEC is made up of six members serving five-year terms. Wis. Stat. § 15.61 (1)(a). Four members are appointed by specific members of the Wisconsin Legislature: the senate majority leader, the senate minority leader, the speaker of the assembly and the assembly minority leader. Wis. Stat. § 15.61 (1)(a). The two additional members are former county or municipal clerks, who are nominated by the Governor from lists prepared by the legislative leadership of the two major political parties. Wis. Stat. § 15.61 (1)(a)5. Any action by the WEC, except an action relating to its own internal procedures, requires a two-thirds vote of the Commission. Wis. Stat. § 5.05 (1e). Subject to limited exceptions, WEC meetings are public and recordings of those meetings are publicly available. Wis. Stat. §§ 19.81 (2); 19.83 (1); 19.851; 5.05 (6a) (a)1.

---

[7] In addition to injunctive relief, the *Edwards* plaintiffs seek damages for alleged violations of the ADA relative to the Spring Election. The WEC defendants oppose that claim, as discussed in their memoranda in support of their Motion to Dismiss the *Edwards* plaintiffs' amended complaint. ['340 Case, Dkt. Nos. 14-15].

Deliberations regarding advisory opinions are not open to the public. [WECPFOF 4.] The WEC's Administrator, even as the chief elections officer in the state, is not statutorily empowered to modify laws concerning the conduct of elections. Wis. Stat. § 5.05 (3d)-(3g). The Administrator performs such duties as assigned by the WEC. Wis. Stat. § 5.05 (3d). The WEC Defendants will be bound by any decision the Court makes which impacts the election laws implicated in this case, and thereafter issue whatever guidance may be appropriate pursuant to Wis. Stat. § 5.05(5t).

The WEC has specific duties and authority pursuant to Wisconsin statutes, both generally and for each election. Among those duties, WEC prescribes the ballot form, and must include on each ballot form certain requirements. Wis. Stat. § 7.08 (1)(a). It also prescribes the necessary forms on which canvassers can report results, as well as forms for registration (including overseas, electronic, by-mail and same-day registration) and requesting an absentee ballot. Wis. Stat. §§ 7.08 (1)(c); 6.33 (1). The WEC publishes an election manual explaining the duties of election officials, the election laws and district maps. Wis. Stat. § 7.08 (3)-(5).

The WEC provides technical and direct support to municipal clerks on all aspects of election management. [WECPFOF 6.] This includes providing access to and maintaining the WisVote system and MyVote website, along with technical assistance for both. [WECPFOF 6.] WisVote allows clerks to track absentee requests across elections, creates records for issued ballots, and records whether the voter participated in the election and by what method. This system also permits the WEC to monitor compliance with Federal and State Uniformed Overseas Citizens Absentee Voting Act requirements. [WECPFOF 7.] The WEC is required to conduct regular information and training meetings for county and municipal clerks, as well as other election officials. Wis. Stat. § 5.05 (7). The WEC determines the training requirements for municipal clerks, as well as the content of the training that municipal clerks provide to inspectors. Wis. Stat.

§ 7.315 (2); (1)(a); Wis. Adm. Code § EL 11-12. The WEC is required to audit voting systems used by the municipal clerks to determine the error rate and take or order remedial action if that rate exceeds the stated rate. Wis. Stat. § 7.08 (6). The WEC is required to coordinate with and assist local election officials and respond to inquiries. Wis. Stat. § 7.08 (11). It may also provide financial assistance to municipalities and counties in accordance with a State Election Administration Plan, which is subject to the approval of Legislature's Joint Committee on Finance. Wis. Stat. §§ 5.05(10); 5.05(11). The WEC issues clerk communications, training materials and forms for local clerks, but ultimately municipal clerks are tasked with implementing any changes in policy or the law in their community.

The WEC is also required to conduct educational programs for voters. Wis. Stat. § 5.05 (12). The WEC maintains telephone and electronic systems by which voters can report voting fraud and voting rights violations, obtain general election information, and access information regarding registration status, polling locations and other election information. Wis. Stat. § 5.05 (13). The WEC provides information regarding registration and absentee ballot procedures to members of the uniformed services and overseas voters. Wis. Stat. § 6.06.

The WEC enforces certain standards related to elections. The WEC's enforcement authority is generally complaint-based and initiated by voters. Wis. Stat. §§ 5.06 (1); 5.05 (2m); *see also* Wis. Adm. Code § EL 20.04. The WEC may also initiate investigations on its own motion. Wis. Stat. § 5.06 (4). Upon a finding that the local election official has abused his or her discretion, the WEC may issue an order to that official to conform to the law. Wis. Stat. § 5.06 (6). The WEC may bring civil actions and require a forfeiture or seek injunctive or other specific relief for violations of Wisconsin's election statutes. Wis. Stat. § 5.05 (1)(c)-(d). The Attorney General or a district attorney may also sue to compel compliance, including compliance with section 2 of the

Voting Rights Act. Wis. Stat. § 5.061; 5.08; 5.081. Under certain circumstances, the WEC may make referrals to a district attorney in a county in which an alleged violation occurred. Wis. Stat. § 5.05 (2m)(c)10-18.

The WEC's mandate does not include an option to displace the authority of municipal clerks or boards of election. The WEC has limited rulemaking authority to ensure the "proper administration" of Wisconsin's election statutes. Wis. Stat. § 5.05 (1)(f). As with other Wisconsin agencies, the WEC must follow a statutory procedure prior to issuing any such order. Wis. Stat. § 227.01 *et seq.*; *See e.g. Wisconsin Legislature v. Palm*, 2020 WI 42, ¶ 15, 391 Wis. 2d 497, 513, 942 N.W.2d 900, 908. The WEC promulgates rules pursuant to grants of authority from the Wisconsin Legislature. *Koschkee v. Taylor*, 2019 WI 76, ¶ 15, 929 N.W.2d 600, 387 Wis. 2d 552. State agencies in Wisconsin "ha[ve] no inherent constitutional authority to make rules, and, furthermore, [their] rule-making powers can be repealed by the legislature." *Martinez v. DILHR*, 165 Wis. 2d 687, 698, 478 N.W.2d 582 (1992); Wis. Stat. § 227.19(1)(b)1. For example, the WEC's predecessor agency, the Wisconsin Government Accountability Board, promulgated standards for the training and certification of election inspectors. Wis. Adm. Code § EL 11.01 *et seq.* The corresponding rulemaking authority is found in section 7.31 of the statutes: "The commission shall, by rule, prescript the contents of the training that municipal clerks must provide to inspectors, other than chief inspectors, and to special voting deputies appointed under s. 6.875." Wis. Stat. § 7.31(1)(a).[8] Chapter 227 does not provide plenary rule-making authority to Wisconsin's state agencies, including the WEC. Wis. Stat. § 227.11(1).

---

[8] *See also* Wis. Stat. 7.315 (2) ("The commission shall, by rule, prescribe requirements for, and the content of, training required of municipal clerks under s. 7.15 (1m). The commission may provide such training directly or arrange for such training to be provided by other organizations. The rules shall provide a method for notifying the relevant municipal governing body if a municipal clerk fails to attend required training."); Wis. Adm. Code § EL 12, Certification and Training of Municipal Clerks; Wis. Stat. 7; Wis. Stat. § 7.08 (1)(d) (the WEC shall "[p]romulgate rules for the administration of the statutory requirements for voting machines and electronic voting systems and

Administrative agencies are creatures of the Legislature, with "only those powers as are expressly conferred or necessarily implied from the statutory provisions under which [they] operate." Those statutes will be strictly construed to preclude the exercise of power not expressly granted. Any reasonable doubt regarding an agency's implied power should be resolved against the agency. Since the Legislature has discretion to grant power to an agency, it follows that the Legislature can also retract that power.

Wis. Op. Att'y Gen. OAG-01-16 (2016),

https://docs.legis.wisconsin.gov/misc/oag/recent/oag_1_16 (internal citations and quotations omitted).

Upon request, the WEC may issue formal or informal advisory opinions, "regarding the propriety under chs. 5 to 10 or 12 of any matter to which the person is or may become a party." Wis. Stat. § 5.05 (6a)(a)1. To have legal effect, the WEC's advisory opinions must be supported by a specific legal authority. Wis. Stat. § 5.05 (6a)(a)2.

For each election, the WEC also produces and publishes the candidate list so that each county clerk can produce a ballot. Wis. Stat. § 7.08 (2). The WEC collects nomination papers for state office and seats on a metropolitan sewage commission, as well as petitions for names to be included in the presidential and congressional primaries. Wis. Stat. §§ 8.10 (6)(a); 8.12 (1)(c); 8.15 (8). The WEC promulgates rules for use by election officials in determining the validity of nominating papers. Wis. Stat. § 8.07; Wis. Adm. Code § EL 2, 6. The WEC then issues standardized notices to the county clerks certifying the list of candidates for any election. Wis. Stat. § 10.06 (1).

---

any other voting apparatus which may be introduced in this state for use at elections…"); Wis. Adm. Code § EL 7, Approval of Electronic Voting Equipment.

B.  Municipal Clerks' Role and Authority.

Like the WEC, municipalities in Wisconsin, including towns, villages and cities, have duties and authorities derived from Wisconsin statutes. *See generally* Wis. Stat. chs. 60-62. Each municipality is required to have a clerk who performs certain duties. Wis. Stat. §§ 60.33 (duties of the town clerk); 61.25 (duties of the village clerk); 62.09 (11) (duties of the city clerk).  Under Wisconsin's decentralized election system, municipal clerks largely run Wisconsin's elections. Wis. Stat. §§ 7.15 (1); 60.33 (4); 61.25 (1); 62.09 (7)(b). "Each municipal clerk has charge and supervision of elections and registration in the municipality." Wis. Stat. 7.15 (1). This structure is consistent with Wisconsin's status as a home rule state. Wis. Const. Art. 11, § 3; Wis. Stat. § 66.0101; *see also Madison Teachers, Inc. v. Walker*, 2014 WI 99, ¶¶ 88-89, 358 Wis.2d 1, 851 N.W.2d 337. Wisconsin cities enjoy, "the largest measure of self-government compatible with the constitution and general law..." Wis. Stat. § 62.04. Municipal clerks administer absentee by mail, absentee in-person and election day in-person voting in their communities. Wis. Stat. § 7.15 (1), (2), (2m). In the City of Milwaukee, these duties are performed by the municipal Board of Election Commissioners. Wis. Stat. § 7.20 (1); Milwaukee Ord. 302-3.

Municipal clerks have the statutory responsibility for, *inter alia*: equipping polling places; purchasing and maintaining equipment; sending absentee ballots; and reassigning inspectors to address staffing shortages. Wis. Stat. § 7.15 (1)(a-k). The governing body of a municipality, or the board of elections, determines the number and location of polling places. Wis. Stat. § 5.25 (2). Municipal clerks staff polling places, train election officials, pay election officials and are charged with discharging election officials when required. Wis. Stat. §§ 7.30 (1); 7.03 (1)(a); 7.15 (1)(f). Wisconsin statutes define the requirements that municipal clerks must meet in establishing polling places. Wis. Stat. §§ 5.15; 5.25; 5.35. This includes rules on the minimum number of voting booths

and ballot boxes, the layout and organization of the polling place and what must be posted. Wis. Stat. § 5.35. Municipalities determine whether to use electronic voting systems, subject to statutory and regulatory requirements, including rules to ensure the security of those systems. Wis. Stat. §§ 5.76; 5.77-5.95; 5.905 (3); Wis. Adm. Code § EL 7. The Municipal clerks are required to "make reasonable efforts to comply with requests for voting accommodations made by individuals with disabilities whenever feasible." Wis. Stat. § 7.15 (14). Polling places must be accessible to individuals with disabilities. Wis. Stat. § 5.25 (4)(a).

The statutes also mandate the number of inspectors for each polling place at each election, which is either five or seven, depending on whether voting machines are used. Wis. Stat. § 7.30 (1)(a). Municipal governing bodies may, by ordinance, permit the municipal clerk to establish different working hours, increase the number of inspectors if there is more than one voting machine being used or provide for sets of inspectors to work at different times. Wis. Stat. § 7.30 (1). Inspectors maintain order in the polling place, distribute ballots to voters, are in charge of the poll lists, examine electronic voting systems and resolve certain challenges to voters, among other duties. Wis. Stat. § 7.37. Inspectors also process election-day registrations and provisional ballots for voters who do not provide proof of identification or residence. Wis. Stat. §§ 6.55; 6.97. Municipalities may reduce the number of election officials, but there must be three at any polling place. Wis. Stat. § 7.32. Municipalities may also authorize the municipal clerk to employ tabulators, who assist the election inspectors after the polls close. Wis. Stat. § 7.30 (3). In the limited circumstances in which the WEC employs an individual who performs duties which are the responsibility of a county or municipality, the WEC passes along that cost to the county or municipality. Wis. Stat. § 7.03 (2).

Municipal clerks are required to mail a registration form upon request to any elector, as well as review registrations for sufficiency and notify proposed voters of any deficiencies. Wis. Stat. §§ 6.30 (4); 6.32. The WEC facilitates electronic registration through WisVote and notifies municipal clerks of each completed application. Wis. Stat. § 6.30. Conversely, municipal clerks, upon receipt of a new registration, change in registration, or change in a registration status, are required to enter that information into the official registration list maintained by the WEC. Wis. Stat. § 6.33 (5)(b); 6.50. The municipal clerk makes copies of the registration list for use in elections and provides copies to the candidates, subject to certain limitations. Wis. Stat. § 6.45. Municipal clerks also resolve challenges regarding registration. Wis. Stat. § 6.48.

Municipal clerks process, send and receive absentee ballots in Wisconsin. This includes ballots for military electors and overseas electors, as well as federal write-in absentee ballots. Wis. Stat. §§ 6.22 (4), (6); 6.24; 6.25. It also includes both in-person absentee voting and by-mail absentee voting. Wis. Stat. § 6.855; 6.86 (a). Municipal clerks are charged with confirming that an application for an absentee ballot is accompanied by proof of identification. Wis. Stat. § 6.86(1)(b); 6.87 (1); 6.87 (4)(b)2-4. Municipal clerks also process absentee ballot requests pursuant to specific procedures for voters who are indefinitely confined because of age, physical illness or disability; are hospitalized; or are a sequestered juror. Wis. Stat. § 6.86 (1)(b), (2), (3). Under Wisconsin statutes as written, municipal clerks also send absentee ballots to military or overseas voters via facsimile or e-mail. Wis. Stat. § 6.87 (3)(d)[9]. The WEC provides uniform instructions for absentee voters. Wis. Stat. § 6.869. The statutes prescribe the language of absentee ballot certifications, both by the voter and the witness. Wis. Stat. § 6.87 (2). Municipal clerks and inspectors are

---

[9] This provision was modified by this Court's decision *One Wisconsin Institute v. Thomsen*. 198 F. Supp. 3d at 904, *order enforced*, 351 F. Supp. 3d 1160 (W.D. Wis. 2019). The Court of Appeals for the Seventh Circuit recently issued its ruling in that case, reversing in part. *Luft v. Evers*, No. 16-3003, 2020 WL 3496860. The Court of Appeals has yet to issue its mandate. Fed. R. App. P. 41.

responsible for processing returned absentee ballots including delivering those ballots to polling places or boards of absentee ballot canvassers on election day to be counted. Wis. Stat. § 6.88 (1)-(2). Either the inspectors or canvassers review the absentee ballot envelope for, among other things, a properly completed certification. Wis. Stat. § 6.88 (3)(a)-(c); 7.52 (3).

C. County Clerks' Role and Authority.

Like the WEC and municipal clerks, county clerks in Wisconsin have election duties defined by statute. Wis. Stat. § 59.23 (2)(i) (county clerks are the chief election officer of the county). County clerks are responsible for providing ballots for every election in the county for national, state and county offices and state and county referenda. Wis. Stat. § 7.10 (1)(a). County clerks are required to distribute ballots to municipal clerks no later than 48 days before partisan primaries and general elections and no later than 22 days before each other election. Wis. Stat. § 7.10 (3)(a). County clerks must distribute an adequate number of ballots to meet the municipal clerks' obligation to supply absentee ballots. Wis. Stat. § 7.10 (3)(b). Ballot forms are subject to specific statutes. Wis. Stat. § 5.51 – 5.56 (general requirements for ballots, and requirements for spring primary, spring election, partisan primary and general election ballots). Any person shall be given an opportunity to register to vote at the office of the county clerk for the county in which the person's residence is located. Wis. Stat. § 6.28 (4). Some county clerks, by mutual consent, also provide voter registration services on behalf of municipalities within their county, including assistance with data entry into the WisVote system. *See* Wis. Stat. § 6.33 (5)(b), Apart from their responsibility to prepare and distribute ballots, county clerks also assist the WEC with voter education, elections information and training election officials. Wis. Stat. § 7.10 (7)-(9).

D. Canvassing.

Under Wisconsin's statutory system, municipalities, counties and the WEC all have separate but related authorities to conduct the canvass following an election. Inspectors immediately begin the canvass after the polls close. Wis. Stat. § 7.51 (1). This process involves comparing the poll lists and addressing any defective, blank, or challenged ballots. Wis. Stat. § 7.51 (2)(a)-(f). The inspectors then either count and record the number of votes or retrieve a record of the votes cast from the voting machines. Wis. Stat. § 7.51 (e), (g)-(h). The chief inspector or another inspector must then report that result to the municipal clerk. Wis. Stat. § 7.51 (4)(b).

The municipal clerk, in turn, must report results to the county clerk no later than two hours after tabulation. Wis. Stat. § 7.51 (4)(c). The county clerk must receive those reports and post returns on election night within two hours of receipt. Wis. Stat. § 7.60 (1). By statute, the municipal canvass cannot begin until the municipal board of canvassers has received the returns from all polling places in the municipality but must begin no later than 9 a.m. on the Monday after the election. Wis. Stat. § 7.53(2)(d). The county board of canvass must begin its canvass no later than 9 a.m. on the Tuesday after each election and must gather any unreported returns from the municipalities. Wis. Stat. § 7.60 (3). The county clerk then reports certain results of the county canvass to the WEC. Wis. Stat. § 7.60(5)(a). On election night, the WEC is required to post links to each county's returns. Wis. Stat. § 5.05 (14)(c).

The WEC's chairperson or the chairperson's designee examines the certified statements of the county boards of canvass for material mistakes. Wis. Stat. § 7.70 (3)(b). The chairperson or their designee must begin the canvass no later than December 1 for the November Election, and must complete it within ten days. Wis. Stat. § 7.70 (3)(a), (c).

## III.  WEC ROLE REGARDING RELIEF REQUESTED

The WEC does not take a position on the merits of the specific elements of relief requested in the plaintiffs' respective motions for preliminary injunctions. In assessing those requests, however, the WEC asks this Court to be mindful of the WEC's specific statutory role within Wisconsin's election system. As this Court is aware, the WEC does not have the authority to modify, waive or overrule Wisconsin's election statutes. To the contrary, the WEC is charged with administering and enforcing those statutes. Wis. Stat. § 5.05(1), (2). In addition, the WEC has limited authority over local officials, as state law provides that municipal clerks run elections and voter registration in their respective municipalities. Wis. Stat. § 7.15 (1), (2), (2m).

Some forms of relief requested by certain plaintiffs are premised on allegations that the WEC failed to perform its duties, when those "duties" are not within the purview of the WEC's statutory functions. For example, the *DNC* and *Swenson* plaintiffs contend that the WEC should mandate that each municipality have an adequate number of polling places. By statute, the authority to designate polling places is vested in either a board of election commissioners or other local government officials. Wis. Stat. § 5.25 (2), (3). The same plaintiffs argue that the WEC must ensure that polling places are safe, such as by providing expanded curbside voting, reduce crowding at polling places, monitoring social distancing, providing appropriate sanitization, and require that voters and poll workers take precautions to avoid the spread of COVID-19. The *Edwards* plaintiffs request an order compelling the WEC defendants to adopt in-person election hygiene protocols issued by the CDC, issue guidance in accordance with those protocols and condition receipt of CARES Act grant funds upon a municipality's written agreement to implement those protocols.

Certainly, the WEC has undertaken measures to assist in safeguarding voting places, such as by facilitating the delivery of sanitation supplies before the April Election and by directing staff to spend federal CARES Act grant money to distribute sanitation supplies to all 72 counties in Wisconsin. [WECPFOF 48.] The WEC also has worked with public health officials to produce over 20 public health guidance documents for clerks, poll workers and the public. However, municipal clerks are delegated with specific responsibilities in regard to polling places, such as providing necessary equipment, and they are accorded the general responsibility to perform any duties "which may be necessary to properly conduct elections or registration." Wis. Stat. § 7.15(1). Whatever injunctive relief, if any, that is granted in this case should be fashioned keeping in mind those who are statutorily charged with matters such as selecting and staffing polling places, mailing and processing absentee ballots, and running elections in general.

Other forms of relief sought are directed at problems the WEC has taken steps to address in the months since the pandemic was unleashed. Among the various forms of injunctive relief directed at the WEC defendants by the *Swenson* plaintiffs is an order to upgrade electronic voter registration systems. WisVote and MyVote are websites operated by the WEC that work in tandem. WisVote is the statewide voter registration data base where local officials enter voter registration information, among other things. [WECPFOF 7.] MyVote is the user interface for voters to be able to interact with that data. [WECPFOF 7.] Both are in the process of being upgraded to make them more efficient and enable municipal clerks to better handle the volume of absentee ballot requests in the upcoming elections. The changes to MyVote and WisVote are further summarized in the June 25 Status Report filed with the Court.

Both the *Gear* and *Swenson* plaintiffs point to significant problems with the delivery and return of absentee ballots in the Spring Election. The *Swenson* plaintiffs seek an order requiring

that the WEC, "take all appropriate actions to ensure that all voters who request and are qualified to receive an absentee ballot in fact receive such absentee ballot…" ['459 Case, Dkt. No. 40, p. 4]. The *Gear* plaintiffs contend that the WEC defendants "hold the ultimate responsibility to ensure delivery" of the mail, ['249 Case, Dkt. No. 421, p. 26], and ask that all voters who request absentee ballots but do not receive them timely be able to access mail in ballots online. ['249 Case, Dkt. No. 369, pp. 8-9]. The latter appeal requires a change in state law that is addressed below.

Aside from the obvious point that delivery of the mail is the responsibility of the United States Postal Service, the WEC did request information about the failed deliveries from the USPS, as has at least one municipality. [WECPFOF 37.] The WEC is spending up to $400,000 of federal CARES Act grant funds to develop Intelligent Mail Barcodes (IMBs). IMBs will enable clerks and voters using WisVote and MyVote, respectively, to track absentee ballots through the mail stream. The process is described in more detail in the Status Report submitted to the Court. ['249 Case, Dkt. No. 227, p. 6; [WECPFOF 48]. Finally, it is municipal clerks who process, send and receive absentee ballots in Wisconsin. Wis. Stat. § 7.15 (1); 6.86 *et seq.* The WEC does not have the statutory authority to assume that responsibility.

Most of the remedies sought by the various plaintiffs are precluded under current state law and, therefore, would require a court order or action by the Legislature. The *DNC* plaintiffs concede that nearly all the relief they are seeking requires Court action "because there is nothing left for the Commission to do." ['249 Case, Dkt. No. 420, p. 24]. The *Swenson* plaintiffs concur that "(a)bsent judicial intervention, (the WEC) Defendants will be powerless to make necessary adjustments that run afoul of these statutory mandates." ['459 Case, Dkt. No. 41, p. 23]. The *Edwards* plaintiffs as well recognize the statutory constraints upon the WEC's ability to provide

many of the remedies sought. ['249 Case, Dkt. No. 397, p. 32]. Among the forms of relief sought by one or more groups of plaintiffs that would require judicial intervention are the following:

- The *DNC, Gear* and *Swenson* plaintiffs assert that the WEC's suggestions for fulfilling the witness requirement for an absentee ballot are either insufficient or unreasonable. The *Edwards* plaintiffs also seek relief from the witness requirement for those who do not reside with a competent witness. The witness certification language and witness requirement are mandated under state law. At present, the WEC may not issue guidance or promulgate a rule that does not require a witness certification and signature as prescribed in Wis. Stat. § 6.87(2), (4)(b).

- The *DNC* and *Edwards* plaintiffs seek to enjoin enforcement of the proof of identification requirements to obtain absentee ballots set forth in Wis. Stats. §§ 6.86(1)(ac) and 6.87(1). The Seventh Circuit has previously approved Wisconsin's Photo ID requirement, subject to certain qualifications. *Frank v. Walker* (*Frank I*), 768 F.3d 744 (2014); *Frank v. Walker* (*Frank II*), 819 F.3d 384 (2016); *Luft*, 2020 WL 3496860, *1. The *DNC* plaintiffs also seek to enjoin enforcement of the proof of residency requirement set forth in Wis. Stat. § 6.34(3) until the COVID-19 crisis is over. *Luft*, 2020 WL 3496860, *7.

- The *Edwards* and *Swenson* plaintiffs seek to enjoin enforcement of Wis. Stat. § 7.30(2), which requires each election official to be a qualified elector of the county in which he or she is serving. The *Swenson* plaintiffs seek an order directing the WEC to take appropriate actions to ensure that there are adequate numbers of poll workers. The WEC is encouraging counties and municipalities to solicit election officials for the upcoming elections, ['249 Case, Dkt. No. 227, p. 11], but the role

of nominating and selecting election officials is delegated to local officials and the political parties under Wis. Stat. § 7.30(4).

- The *Swenson* and *DNC* plaintiffs seek to enjoin enforcement of the requirement in Wis. Stat. § 6.87(6) that absentee ballots not delivered to the polling place by 8 p.m. on election day not be counted. Both groups offer alternatives, one which involves counting all absentee ballots postmarked by election day or received within a week of election day (*Swenson*), and the other requesting that absentee ballots be counted up to ten days after election day, so long as they are postmarked (as defined in '249 Case, Dkt. No. 420, p. 7 n.7) by election day. Clearly, the relief sought by the *DNC* plaintiffs will require a determination how to handle absentee ballots without a postmark. The solution posed by them, a presumption of timely mailing absent a preponderance of evidence to the contrary, may require further judicial guidance.

- The *DNC* plaintiffs seek to extend electronic and by mail voter registration deadlines until October 30, 2020. Currently, state law requires mail in registrations to be received by the clerk or postmarked no later than the third Wednesday preceding the election. Electronic registrations must be received by 11:59 pm on the third Wednesday preceding the election. Wis. Stat. § 6.28(1).

- The *Swenson* and *Edwards* plaintiffs request that the Court enjoin enforcement of Wis. Stat. §§ 6.88, 7.51 and 7.52 to allow absentee ballots to be counted prior to election day. Section 6.88 (3) requires that except where absentee ballots are canvassed pursuant to § 7.52, envelopes containing absentee ballots be opened in public view during polling hours on election day and examined to verify that the elector is qualified and has not voted, that the ballot is properly endorsed and that

it is accompanied by proof of residence. Section 7.51 (1) provides that canvassing of all votes shall begin after the polls close. Section 7.52 (1)(a) provides that by municipal ordinance, canvassing of absentee ballots may be done on election day between the opening of the polls and 10 p.m. by a board of absentee ballot canvassers at a publicly noticed site.

- The *Swenson* and *Edwards* plaintiffs seek to enjoin enforcement of Wis. Stat. § 6.855 (1) insofar as it requires that sites other than the office of the municipal clerk or board of election commissioners used to request and vote absentee ballots be designated "no fewer than 14 days prior to the time that absentee ballots are available for the primary" or, if there is no primary election, "at least 14 days prior to the time that absentee ballots are available for the election." The Court should be aware that, pursuant to statute municipal clerks designated alternative absentee ballot sites in June. [WECPFOF 49]

- The *Edwards* plaintiffs request that the Court enjoin enforcement of Wis. Stat. § 6.86 (1)(b), which they contend limits in-person absentee voting to the period 14 days before the election and ending the Sunday before the election. ['249 Case, Dkt. No. 395, p. 4]. The time limits referenced in that section set forth the period within which in person applications for absentee ballots shall be made. Wis. Stat. § 6.86 (1)(b). *See Luft*, 2020 WL 3496860, *7.

- The *Edwards* plaintiffs seek an order compelling the WEC defendants to direct municipal clerks to send absentee ballots to all registered voters on the voter rolls as of September 30, 2020. Currently, Wis. Stat. § 6.86 sets forth methods by which

absentee ballots may be obtained and does not include any provision for sending absentee ballots to all registered voters.

- The *Gear* plaintiffs request that the Court enjoin enforcement of Wis. Stat. § 6.87 (3)(d), which restricts electronic access to absentee ballots to military and overseas voters. The *Gear* plaintiffs wish to extend electronic access to ballots to those who timely requested, but did not receive, ballots by mail. After *Luft v. Evers*, municipal clerks will be prohibited from sending ballots via facsimile or email to anyone other than military or overseas voters. Wis. Stat. § 6.87 (3)(d); *Luft*, 2020 WL 3496860, *7.

As stated, WEC defendants take no position with respect to the injunctive relief the plaintiffs seek in regard to the statutes cited, but only wish to emphasize that the WEC is not allowed to afford any aspect of such relief, including guidance or rule-making, absent legislative action or a judicial order addressing the statutes at issue.

## CONCLUSION

As set forth herein, the WEC defendants take no position with respect to the injunctive relief the plaintiffs seek in the four consolidated cases. The WEC is a function of the Wisconsin statutes and has no authority to overrule, waive or otherwise disregard Wisconsin's election laws, including statutes related to absentee ballots and the decentralized structure of Wisconsin election administration. Wis. Stat. § 5.05. The WEC will be bound by any decision of the Court and will take any steps or issue any guidance required. Wis. Stat. sec. 5.05 (5t).

Dated this 20th day of July, 2020.

LAWTON & CATES, S.C.

*/s/Daniel S. Lenz*
Dixon R. Gahnz, SBN: 1024367
Daniel P. Bach, SBN: 1005751
Daniel S. Lenz, SBN: 1082058
Terrence M. Polich, SBN: 1031375

345 W. Washington Avenue, Suite 201
P.O. Box 2965
Madison, WI 53701-2965
Phone: (608) 282-6200
Fax: (608) 282-6252
dgahnz@lawtoncates.com
dbach@lawtoncates.com
dlenz@lawtoncates.com
tpolich@lawtoncates.com