IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE and DEMOCRATIC PARTY OF WISCONSIN,<br><br>                                          *Plaintiffs*,<br><br>     v.<br><br>MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners,<br><br>                                          *Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE, REPUBLICAN PARTY OF WISCONSIN, and WISCONSIN STATE LEGISLATURE<br><br>                                  *Intervenor-Defendants*. | Case No: 3:20-cv-249-wmc (consolidated with 3:20-cv-278-wmc, 3:20-cv-284-wmc, 3:20-cv-340-wmc, and 3:20-cv-459-wmc) |

**INTERVENORS' OPPOSITION TO *SWENSON* PLAINTIFFS'
EMERGENCY MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND A RULE 30(b)(6) DEPOSITION**

The Republican National Committee routinely intervenes as a defendant in cases like this one, where plaintiffs allege that existing election laws are unconstitutional. To the RNC's knowledge, it has *never* sat for a deposition in one of these cases. This is not because the courts, the Democratic Party, and other plaintiffs all thought the "regular discovery rules do not apply" to the Republican Party. Mot. 4. It is because in cases like this one, where the Republican intervenors are defending the law and are not relying on witnesses or documents of their own, they have no relevant information to provide.

So too here. At the upcoming preliminary-injunction hearing, the Republican intervenors will not present witnesses or evidence of their own. They will rely on the existing record produced by the other parties. The Republican intervenors have already expressed their view on how the record defeats the *Swenson* plaintiffs' claims in their opposition to the preliminary-injunction motion. If the *Swenson*

plaintiffs believe those arguments are "unspecified and unsupported," Mot. 4, they should make that point in their reply brief in support of a preliminary injunction—where legal arguments belong. But the *Swenson* plaintiffs should not be allowed to use discovery as a tool to pierce attorney-client privilege, to pierce the First Amendment privilege, or to inflict a "discovery tax" on intervenors. Especially in light of this Court's instruction that "[t]he parties should be restrained in their requests" for discovery, Doc. 217, No. 3:20-cv-249, the motion to compel should be denied.

## BACKGROUND

On July 10, the *Swenson* plaintiffs served the Republican intervenors with requests for documents, interrogatories, and two deposition notices. The requests can be broken down into three main categories: communications between the Republican intervenors and election officials, information about the Republican intervenors' standing (presumably to relitigate intervention), and information about plaintiffs' various requests for relief. *See* Mot. Exhs. A-D.

Plaintiffs and intervenors met and conferred several times to narrow these requests. It soon became clear that the *Swenson* plaintiffs were focused on the last category of information—their various requests for relief. Specifically, the *Swenson* plaintiffs said they wanted to know why the Republican intervenors believe each form of relief would increase burdens or costs, undermine the integrity of the election, or increase the risk of fraud. Mot. Exh. G. To assuage any concerns, the Republican intervenors confirmed that they would not produce any witnesses or evidence of their own on these questions, but would simply rely on the record developed by the other parties. Mot. Exh. H. The Republican intervenors' views about whether the existing record undermines the plaintiffs' relief were *legal* arguments, the intervenors explained, and those arguments were already outlined in their opposition to the preliminary-injunction motion. *Id.*

The plaintiffs and intervenors reached a tentative compromise, where the Republican intervenors would respond to interrogatories about each form of relief that the *Swenson* plaintiffs

requested. That deal fell apart, however, because the plaintiffs demanded that the Republican intervenors also agree that, when challenging the plaintiffs' requested relief, they would not "rely on factual evidence at all—whether it is in the 'existing record' or otherwise." Mot. Exh. I. The Republican intervenors were unable to agree to that strange request.

## ARGUMENT

All discovery must be "nonprivileged," "relevant to any party's claim or defense," and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "'[S]peculation'" that a party has "'unspecified additional information'" does not satisfy this standard. *Hardtke v. JLG Indus., Inc.*, No. 15-cv-719-SLC, 2016 WL 3248605, at *2 (W.D. Wis. June 10, 2016). Plaintiffs cannot engage in "wholly exploratory [discovery] in the vague hope that something helpful will turn up." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989).

Narrowing their requests for purposes of "this motion," the *Swenson* plaintiffs now seek two categories of documents and eight topics for deposition—all concerning whether their requested relief "would affect the integrity of the upcoming election or is otherwise feasible." Mot. 5-7, 3. But the plaintiffs do not want evidence that their relief would *negatively* affect integrity or is *not* feasible. Instead, they want "only … materials … that may actually *support* … the relief they seek." Mot. 5 (emphasis added). Notably, the plaintiffs did not make this request of the Democratic Party, which has the same "up close" election "experience" as the Republican Party. Mot. 8. They are trying to use discovery to make a "gotcha" point: Either the Republican intervenors will have no responsive documents, and the plaintiffs can argue that "the Republican Party has zero evidence that our relief is problematic." Or, if the plaintiffs are really lucky, the Republican Party will have some document from some person that actually supports their requested relief.

This strategy is not an appropriate use of discovery—let alone "proportional to the needs of the case" such that "the burden or expense of the proposed discovery outweighs its likely benefit."

3

Fed. R. Civ. P. 26(b)(1). The Republican intervenors are not relying on their own witnesses or evidence to undermine the *Swenson* plaintiffs' requested relief. So if the *Swenson* plaintiffs want to argue that intervenors' concerns are "[u]nspecified and unsupported," Mot. 4, they are free to do so. *See Estate of Rosado-Rosario v. Falken Tire Corp.*, 2016 WL 6407473, at *4 (D.P.R. Oct. 28, 2016) (quashing a deposition because "the substantial burden of producing this individual for deposition is not offset by the minimal increase in information").

Further, the vague hope that the Republican intervenors will have some document that supports the requested relief is the sort of "speculation" that cannot justify these "broad discovery requests." *Hardtke v. JLG Indus., Inc.*, 2016 WL 3248605, at *2; *see Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (party cannot embark on a "'fishing expedition'" based on nothing more than "the mere 'hope'" that "it will receive contradictory testimony"). These requests are incredibly broad. They ask for anything that "relate[s] to" the feasibility of the *Swenson* plaintiffs' relief, which seems to ask the Republican intervenors to draw on the experiences of hundreds of employees, over all 50 States, over any number of different elections, with no set timeframe. The burdens are worsened by the fact that many of the requests ask the intervenors to prove they *lack* certain evidence—that nothing in their possession suggests the plaintiffs' relief would "impede the asserted state interests," cause "fraud," harm "voter confidence," or create certain "risk[s]." It is unclear how the intervenors would even go about proving a negative under these vague criteria.

The primary flaw with the plaintiffs' request, moreover, is that is misunderstands the governing law. Citing nothing, the plaintiffs insist that the appropriateness of their requested relief—i.e., the state interest behind not imposing each form of relief—"depends on facts" elicited in discovery. Mot. 8. Under the *Anderson-Burdick* framework that governs this case, however, the State's interest is a "legislative fact," accepted as true so long as it's reasonable. *Frank v. Walker*, 768 F.3d 744, 750 (7th

4

Cir. 2014) (*Frank I*). States are not required to submit "any record evidence in support of [their] stated interests." *Common Cause/Ga.*, 554 F.3d at 1353; *accord ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1323 (10th Cir. 2008); *Miller v. Thurston*, 2020 WL 4218245, at *8 (8th Cir. July 23, 2020). In fact, when responding to an *Anderson-Burdick* challenge, States can rely on "post hoc rationalizations," can "come up with its justifications at any time," and have no "limit[s]" on the type of "record [they] can build in order to justify a burden placed on the right to vote." *Mays v. LaRose*, 951 F.3d 775, 789 (6th Cir. 2020). States can rely on examples from other jurisdictions, court decisions, general history, or sheer logic. *Common Cause/Ga.*, 554 F.3d at 1353; *Frank I*, 768 F.3d at 750. In other words, even if the Republican intervenors had no concrete evidence undermining the *Swenson* plaintiffs' relief, that fact would prove nothing. *See U.S. ex rel. Coppock v. Northrop Grumman Corp.*, 2003 WL 22171707, at *4 (N.D. Tex. Mar. 6, 2003) (holding that "additional discovery" was not needed because the party "advances legal challenges … that do not require factual determinations").

Any Wisconsin-specific evidence about the feasibility of the *Swenson* plaintiffs' relief, moreover, would lie with the WEC—the entity actually charged with enforcing Wisconsin law. The plaintiffs have taken extensive discovery from WEC, and both sides will draw on that evidence when making their legal arguments. But the fact that this evidence is already in the record makes taking the Republican intervenors' depositions will be virtually impossible. The *Swenson* plaintiffs cannot ask the deponents about why they think the requested relief is appropriate or inappropriate under the existing record. Those are *legal* arguments, not discoverable facts. *See EEOC v. TruGreen Ltd. P'ship*, 185 F.R.D. 552, 556 (W.D. Wis. 1998). But it will be incredibly difficult, if not impossible, to keep a deposition limited to questions and answers that do not implicate evidence already in the record. At the very least, the plaintiffs should be forced to try interrogatories first, as they initially agreed to do. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002). In fact, their "failure to take advantage of … interrogatories[] casts serious doubt over [their] claim that [intervenors] possess[] information that [i]s

more than marginally relevant." *Id.*

Finally, much of what the *Swenson* plaintiffs seek is privileged under the First Amendment. *See Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1, 4-6 (D. Mass. 1986) (quashing the depositions of three witnesses because almost all of their testimony would be privileged or irrelevant). The First Amendment protects the "freedom to engage in association for the advancement of beliefs and ideas." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460 (1958). And there is a "vital relationship between freedom to associate and privacy in one's associations." *Id.* at 462. Courts have thus recognized a First Amendment privilege that protects, among other things, organizations' internal communications and documents concerning strategy. *See, e.g.*, *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2009); *Sexual Minorities of Uganda v. Lively*, 2015 WL 4750931, at \*2, \*4 (D. Mass. Aug. 10, 2015); *Sierra Club v. Union Elec. Co.*, 2015 WL 9583394, at \*5 (E.D. Mo. Dec. 31, 2015). Yet that is most, if not all, of what the *Swenson* plaintiffs seek. Because exposing these internal documents to discovery would stifle speech and association within the Republican Party, the *Swenson* plaintiffs must "show both a compelling need for the material sought and that there is no significantly less restrictive alternative for obtaining the information." *United States v. Comley*, 890 F.2d 539, 544 (1st Cir. 1989). For the reasons given above, they cannot meet this heightened standard.

## CONCLUSION

For all these reasons, the Court should deny the motion.

Dated: July 27, 2020

Respectfully submitted,

*/s/ Patrick Strawbridge*
Patrick Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

Jeffrey M. Harris
Cameron T. Norris
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209

## CERTIFICATE OF SERVICE

I filed this document with the Court via ECF, which will electronically notify everyone requiring notice.

Dated: July 27, 2020

*/s/ Patrick Strawbridge*