IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMOCRATIC NATIONAL COMMITTEE, et al.,

       Plaintiffs,

    v.

MARGE BOSTELMANN, et al.,

       Defendants,

   and

WISCONSIN LEGISLATURE, REPUBLICAN
NATIONAL COMMITTEE, AND REPUBLICAN
PARTY OF WISCONSIN,

       Intervening-Defendants.

20-cv-249-wmc

---

SYLVIA GEAR, et al.,

       Plaintiffs,

    v.

MARGE BOSTELMANN, et al.,

       Defendants,

   and

WISCONSIN LEGISLATURE, REPUBLICAN
NATIONAL COMMITTEE, AND REPUBLICAN
PARTY OF WISCONSIN,

       Intervening-Defendants.

20-cv-278-wmc

CHRYSTAL EDWARDS, et al.,

        Plaintiffs,

        v.                                              20-cv-340-wmc

ROBIN VOS, et al.,

        Defendants,

     and

REPUBLICAN NATIONAL COMMITTEE, AND
REPUBLICAN PARTY OF WISCONSIN,

        Intervening-Defendants.

---

JILL SWENSON, et al.,

        Plaintiffs,

        v.                                              20-cv-459-wmc

MARGE BOSTELMANN, et al.,

        Defendants,

     and

WISCONSIN LEGISLATURE, REPUBLICAN
NATIONAL COMMITTEE, AND REPUBLICAN
PARTY OF WISCONSIN,

        Intervening-Defendants.

## STATEMENT OF ADDITIONAL PROPOSED FACTS
## IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**The COVID-19 Pandemic and its Trajectory in Wisconsin**

1. COVID-19 is transmitted through contaminated respiratory droplets or "droplet nuclei" (aerosolized particles). Expert Report of Patrick Remington, M.D., Case No. 20-cv-459-wmc (hereinafter "*Swenson*"), ECF No. 44 ("Remington Report"), at 8.

2. This is "well-established" and "based on extensive research about respiratory viruses, coronaviruses, and the [] novel COVID-19 virus." Dep. of Patrick Remington, July 22, 2020, ECF No. 469 ("Remington Dep."), 116:5-11.

3. Because of these characteristics, COVID-19 spreads in the exact type of environments in which in-person voting occurs—indoor environments where voters are necessarily brought into close contact with one another and the same surfaces and objects at the polling place. Remington Report at 9.

*April Election*

4. Evidence reflects that after the April election, rates of COVID-19 increased in counties in Wisconsin with higher rates of in-person voting, confirming what is known about the epidemiology of COVID-19 and the biology of transmission. Remington Report at 11 & n. 35.

5. Expert witness Meagan Murray, MD, an epidemiologist at Harvard School of Public Health, has reported "71 confirmed cases of Covid-19 among people who may have been infected during the election." Decl. of Dr. Meagan Murray, July 8, 2020, ECF No. 370 ("Murray Decl.") ¶ 60.

*November Election*

6.  Plaintiffs' expert Dr. Patrick Remington found there is almost certain to be a significant risk of contracting and transmitting COVID-19 during the November 3, 2020 election. *See* Remington Dep. 34:21-35:3.

7.  Since Plaintiffs' opening brief was filed, the daily infection rate in Wisconsin has climbed to 1,170 cases a day. Remington Dep. 35:11-18.

8.  Wisconsin has seen an "acceleration of community transmission" of COVID-19 since June, increasing the risk of transmission at in-person voting locations. Remington Dep. 35:11-13.

9.  COVID-19 is likely to be a problem in November, and in-person voting in November— absent appropriate safety precautions—is thus likely to be unsafe again in November. Remington Report at 8-11; Remington Dep. 34:21-35:18.

10. Expert witnesses have testified that COVID-19 is continuing to spread throughout Wisconsin and will continue to be a major public health concern during the remaining months of 2020. Remington Report at 6-10; Murray Decl. ¶¶ 10, 66.

11. Those conclusions are consistent with all available public health and epidemiological evidence. Remington Dep. 81:3-15.

12. The impact of COVID-19 on Wisconsin's election procedures have made it anything but easy to vote in November. *See, e.g.*, Remington Dep. 34:21-35:18.

13. Every public health expert in this case agrees that COVID-19 will have a significant effect on the administration of the November election. Remington Dep. 34:21-35:3; Murray Decl. ¶¶ 47, 66-81.

14. Both of the Commissioners who sat for depositions, Chair Ann Jacobs and Commissioner Robert Spindell, expect COVID-19 to affect the November election, as do the election

administrators for Milwaukee and Green Bay. Dep. of Ann Jacobs, July 17, 2020, ECF No. 475 ("Jacobs Dep."), 151:3-8; Dep. of Robert Spindell, July 7, 2020, ECF No. 413 ("Spindell Dep."), 22:6–23:1; Milwaukee Election Comm'n 30(b)(6) Dep., July 23, 2020, ECF No. 470 ("MEC Dep."), 67:20–69:21, 95:22–96:1, 99:3–7, 100:23–101:8; Green Bay City Clerk 30(b)(6) Dep., July 28, 2020, ECF No. 480 ("Green Bay Dep."), 86:21-87:15, 123:4-124:14, 124:18-125:1, 126:12-127:21, 158:4-159:3.

15. The Wisconsin Elections Commission ("WEC") has also acknowledged this likelihood by taking some measures to prepare to run the November election amid the continuing pandemic. *See* Status Report by Defs., June 25, 2020, ECF No. 227 ("WEC Status Report").

16. The pandemic is likely to be wreaking public-health havoc in November, just as in April. Statement of Proposed Facts in Supp. of Pls.' Mot. for a Prelim. Inj. ¶¶ 6, 10, 224, *Swenson* ECF No. 42 ("*Swenson* SOPF"); Remington Report at 8-11.

17. Given the nature of the November presidential election, there is likely to be an even higher volume of absentee ballot requests in November than in April. *Swenson* SOPF ¶¶ 228-235; Expert Report of Kevin J. Kennedy, *Swenson* ECF No. 45 ("Kennedy Report") ¶ 147.

18. In comparison to the nearly 1.2 million absentee ballots cast in April, the WEC has already sent absentee ballot request forms to approximately 2.7 million voters for the November election and WEC officials believe the number of absentee ballots cast easily could exceed 2 million. Jacobs Dep. 22:5-23:11, 151:9-152:12; Goodman Decl., Ex. 18, *Swenson* ECF No. 43-18 (Wis. Elections Comm'n, *April 7, 2020 Absentee Voting* Report (May 15, 2020)) ("April 7 Absentee Voting Report") at 12.

19. Even if some voters send in their requests earlier, the unprecedented demand is likely to strain local resources. Kennedy Report ¶¶ 104-106, 110, 125, 137; Remington Report at 11-12; Green Bay Dep. 124:1-14, 162:8-17.

20. On June 11, 2020, there were 333 new confirmed COVID-19 cases in Wisconsin, and there were 957 on July 26, 2020. Second Declaration of Rachel E. Goodman ("Second Goodman Decl."), Ex. 1 (Wis. Dep't of Health Servs., *Wisconsin Summary Data: New Deaths Reported Among Confirmed COVID-19 Cases by Date Reported*, Wis. Dep't of Health Servs., https://www.dhs.wisconsin.gov/covid-19/data.htm (last updated July 26, 2020)) at 2-3.

### **The April Election**

#### *Voter Intimidation and Disenfranchisement*

21. Plaintiffs' expert Anthony Fowler, Ph.D., found "that approximately 38,000 people statewide (more than 1 percent of registered voters) did not vote who otherwise would have done so in the absence of COVID-19." Expert Report of Anthony Fowler, *Swenson* ECF No. 46 ("Fowler Report") at 9.

22. Voters who went to polling places on April 7 to vote in person reported long, crowded lines for hours, and polling places with lack of social distancing and use of PPE or masks. Second Goodman Decl., Ex. 2 (compilation of six emails from voters regarding the April 7, 2020 election) (produced by WEC).

23. The Chair of the WEC has conceded that Wisconsin voters risked their lives to vote in the April primary. *See* Jacobs Dep. 107:7-9.

24. She also testified with respect to the April election, "I have. . .seen the lines . . . that is an intimidating situation, there is no question about it." Jacobs Dep. 100:12-20.

25. Dr. Fowler's report demonstrates that tens of thousands of Wisconsinites were deterred and ultimately disenfranchised in the April election. *See Swenson* SOPF ¶ 138; Fowler Report at 8-10.

26. The WEC's own communications reveal that it was unable to source masks and gloves due to inadequate supplies. Second Goodman Decl., Ex. 3 (Email from Robert Kehoe to Kimberly Bushey, Mar. 26, 2020) (produced by WEC) at 2.

27. Supplies were in such short demand poll workers had to rely on vodka as a sanitizer. Second Goodman Decl., Ex. 4 (Email exchange among Robert Kehoe, Meagan Wolfe, et al., Mar. 19, 2020) (produced by WEC) at 1-2.

28. At least one poll worker reported being fearful for their life. Second Goodman Decl., Ex. 5 (Email from poll worker to WEC Elections HelpDesk, May 26, 2020) (produced by WEC) at 1.

29. Two WEC commissioners noted that Wisconsin could not guarantee the safety of its voters in the April election. Second Goodman Decl., Ex. 6 (Emailed letter from Ann Jacobs & Mark Thomsen to Governor Tony Evers, Speaker Robin Vos & Leader Scott Fitzgerald, Mar. 19, 2020) (produced by WEC) at 1.

30. Voters reported lack of social distancing and safety protocols. Second Goodman Decl., Ex. 7 (Webform submission from voter to WEC, Apr. 13, 2020) (produced by WEC) at 1; Ex. 8 (Webform submission from voter to WEC, Apr. 23, 2020) (produced by WEC) at 1.

31. Voters experienced unsafe voting environments, including crowded venues and unsanitary voting practices, in April. *See* Decl. of Marquisha Wortham, July 8, 2020, ECF No. 367 (conditions at voter's polling place were unsafe as a result of overcrowding and long lines; she left after 30 minutes without voting); Decl. of Christy Moore, July 8, 2020, ECF No. 330

(voter's polling place had crowded line; she waited in her car for an hour and a half to vote and then left); Decl. of Latoya Washington, July 8, 2020, ECF No. 363 (voter's polling place had crowded line; she waited for two hours to vote and then was told the polls were closing and she could not vote).

*Vote by Mail – Postmarks, Receipt and Witness Certification Deadline*

32. Chair Jacobs testified that the receipt deadline "takes the ability of a voter to return their ballot and have it be counted out of the hands of the voter." Jacobs Dep. 34:18-20.

33. According to Chair Jacobs, that ballots have "to arrive by 8:00 p.m. of election day . . . is a profound disconnect with the timing of being permitted to request absentee ballots." Jacobs Dep. 32:19-33:1.

34. In April, COVID-19 led to a huge number of requests for absentee ballots, which in turn strained electoral and United States Postal Service ("USPS") resources and capacity. Dep. of Kevin Kennedy, July 24, 2020, ECF No. 471 ("Kennedy Dep."), 64:19-65:4; 113:16-114:17; Green Bay Dep. 124:1-14, 162:8-17.

35. Commissioner Spindell admitted that the 1.2 million mail-in votes in Wisconsin in April "completely overwhelmed our election system."  Spindell Dep. 47:20-49:9.

36. Thousands of people did not receive their absentee ballot at all. Goodman Decl., Ex. 18, *Swenson* ECF No. 43-18 (April 7 Absentee Voting Report) at 15-17, 20.

37. There is copious evidence in the record of individuals who simply did not get an absentee ballot. Goodman Decl., Ex. 18, *Swenson* ECF No. 43-18 (April 7 Absentee Voting Report) at 15-17, 20 ; Decl. of Melody McCurtis in Supp. of Pls.' Mot. for Prelim. Inj., *Swenson* ECF No. 48 at ¶ 7; Decl. of Maria Nelson in Supp. of Pls.' Mot. for Prelim. Inj., *Swenson* ECF No. 49 at ¶¶ 7-9.

38. An investigative newspaper study reported that of the 23,000 absentee ballots rejected in the April election, most were rejected due to difficulties voters had in filling out the paperwork on the ballot, as witness certification information or other minor information was missing. This was likely due to first-time mail voters having difficulties combined with clerks being inundated with ballots and requests. Second Goodman Decl., Ex. 26 (Tom Scheck et al., *How Wisconsin's 23,000 rejected absentee ballots in spring could spell trouble for the November election*, Green Bay Press Gazette (July 29, 2020), https://www.greenbaypressgazette.com/story/news/2020/07/29/wisconsin-election-rejected-absentee-ballots-could-spell-trouble-november/5529702002/) at 1-4.

39. The report noted that many voters were not notified their ballot was rejected and did not have an opportunity to provide the missing information. *Id.* at 3, 5.

40. In April, *tens of thousands* of ballots were rejected for insufficient certification or for other reasons, and it is essentially uncontested that the number and proportion of absentee ballots in the November election will be far higher. Jacobs Dep. 21:8–10, 22:18–23:11; Spindell Dep. 129:10–16; MEC Dep. 117:3-118:11.

***Disparate Treatment***

41. The "the failure of the Commission to give specific guidance" on the interpretation of postmarked ballots in the April election resulted in "1,850 different standards to assess postmarks," leading to non-uniform treatment of voters. Jacobs Dep. 117:16-118:2; *see also* Second Goodman Decl., Ex. 10 (Email from Kim Trueblood to Robert Kehoe, Apr. 5, 2020) (produced by WEC) at 2 (WEC staff member noting problems with varied interpretations of the witnessing requirement by saying, "I will follow up with the clerk in the morning, but we're incorrectly training a bunch of people…").

42. The guidance the WEC provided to clerks for how to treat ballots that arrived without a clear postmark led to the arbitrary and disparate treatment of voters whose ballots were received after April 7. *Compare* Second Goodman Decl., Ex. 11 (Email from WEC's Allison Coakley to Jessica Reilly, Village of Elkhart Lake, Apr. 7, 2020) (produced by WEC) at 1 (noting that any ballot "that comes in without a postmark after [April 7] will not be counted") *with* Second Goodman Decl., Ex. 12 (Email from WEC's Jeffrey Harrison to Angela Joeckel, City of Oshkosh, Apr. 8, 2020 (produced by WEC) at 1 ("They don't need to have a physical postmark, but if you determine that the ballot arrived in a timely manner you should accept the ballot.").

43. Defendants' wide-ranging failures in their approach to administering elections during the COVID-19 pandemic disproportionately and arbitrarily harmed minority communities, older voters, and voters with disabilities. Spindell Dep. 153:7-11.

44. Voters were not treated equally in April. Spindell Dep. 153:7-11 (describing the disparate impact of the April Election by noting that "the Black community was not treated as they should have been").

45.  Dr. Fowler's expert report detailed the outsized and arbitrary impact of Defendants' failures on particular groups of voters, including those in zip codes with higher percentages of Black and Hispanic voters and those over 65. *See* Fowler Report at 8-16; *Swenson* Br. at 17-19.

**The November Election**

46. The WEC has noted that turnout in presidential elections has lately surpassed 3 million votes, and that Wisconsin could see more than 1.8 million requests for absentee ballots by mail, a volume which would create "terrific challenges." Goodman Decl., Ex. 18, *Swenson* ECF No. 43-18 (April 7 Absentee Voting Report) at 13.

47. The WEC has projected that more than twice as many total ballots will be cast in November as were cast in April. *Id.*

48. Wisconsin clerks have reported poll worker shortages for November, which are likely to be exacerbated by increased voter participation during the presidential general election. *See, e.g.*, Second Goodman Decl., Ex. 13 (Daphne Chen, et al., *These Are the Clerks Who Carried Wisconsin Through Its April Pandemic Election. Here Are Their Fears About November*, Frontline (July 24, 2020), https://www.pbs.org/wgbh/frontline/article/coronavirus-election-wisconsin-clerks-november-ballots/) at 2-4; *Swenson* SOPF ¶ 237.

49. The Milwaukee Election Commission is concerned about poll worker shortages in November and has noted that assistance from the WEC would allow the city to maintain as many polling locations as it intends to offer. MEC Dep. 111:2-112:18.

50. Green Bay has also noted that lack of poll workers is the biggest concern for November. Green Bay Dep. 123:6-19

### In-Person Voter Intimidation and Disenfranchisement

51. Absent steps by Defendants to ensure that in-person voting is safe, Wisconsin's in-person voting regime is not an independently adequate option. Remington Dep. 34:21-35:3; Jacobs Dep. 100:12-103:11.

52. Chair Jacobs has conceded that Wisconsin's electoral scheme (1) intimidated voters in the last election by forcing them to pick between democracy and disease and (2) may not produce a free and fair election in November. Jacobs Dep. 99:8-17, 100:12-20, 103:4-11, 110:16-17.

53. Chair Jacobs admitted that a polling place without a sufficient number of poll workers, that is not properly sanitized, and that is populated by people who are not practicing social

distancing or wearing masks is more intimidating to voters than where safe practices are followed. *See* Jacobs Dep. 100:12-102:17, 112:17-113:2.

54. Chair Jacobs admitted that voter fear that absentee ballots will not be properly counted given past errors will lead some voters to feel as if they need to vote in-person instead of absentee. Jacobs Dep. 108:7-109:8.

55. The WEC seeks to increase the number of poll workers, which would allow municipalities to safely operate more polling places. Dep. of Meagan Wolfe as 30(b)(6) Rep. of Wisconsin Elections Commission, July 16, 2020, ECF No. 438 ("WEC II Dep.") 86:4-25.

### *History of the Voting Rights Act*

56. The conference report on the Voting Rights Act indicates that Congress specifically intended to excise Section 131(b)'s specific intent requirement in Section 11(b). *See* Second Goodman Decl., Ex. 14 (H.R. Rep. No. 89-439, at 30 (1965)).

57. Contemporaneous documents indicate that Section 11(b) does not include an intent requirement. *See* Second Goodman Decl., Ex. 15 (*Hicks v. Knight*, No. 15727, 10 Race Rel. L. Rep. 1504 (E.D. La. 1965)); Ex. 16 (Hearing on the U.S. Commissioner System Before the Subcomm. on Improvements in Judicial Machinery of the S. Comm. on the Judiciary, 189th Cong. 1300-1301 (1965), *available at* https://bit.ly/2UZGsj6 (last accessed July 29, 2020)).

### *Vote by Mail Disenfranchisement*

58. Chair Jacobs testified that hundreds of thousands of duly qualified voters will likely be disenfranchised in November absent judicial injunction of the ballot-receipt deadline. Jacobs Dep. 34:7-15; *see also* Fowler Report at 8-20.

59. The Trump margin of victory in Wisconsin in 2016 was 22,748 votes. *See* Richard Cohn & Charlie Cook, *The Almanac of American Politics 2020*, at 1917 (2019).

60. The Gore margin of victory in Wisconsin in 2000 was 5,708 votes; the Kerry margin of victory in Wisconsin in 2004 was 11,384 votes. *See* Richard Cohn & Charlie Cook, *The Almanac of American Politics 2020*, at 1917 (2019).

61. A recent report by the Inspector General of the U.S. Postal Service found that voters requesting absentee ballots consistent with the operative statutory deadline face a "high risk" that their ballots will go uncounted. *See* WEC II Dep. 115:12-116:12; Second Goodman Decl., Ex. 17 (USPS Off. of the Inspector Gen., *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf (last accessed July 29, 2020)) ("USPS OIG Report"), at 6-7.

62. As Meagan Wolfe, the WEC's Rule 30(b)(6) representative, described, the WEC is already predicting that it will take 14 days for an absentee ballot to make its way through the mail from a clerk's office to a voter and back again for the November election—meaning that voters who request absentee ballots in the final two weeks before the election will not have sufficient time to mail their ballots back for arrival by election day. Dep. of Meagan Wolfe as 30(b)(6) Rep. of Wisconsin Elections Commission, July 3, 2020, ECF No. 247 ("WEC I Dep."), 51:1-52:21.

63. Chair Jacobs testified that "the volume of absentee balloting that we're looking at is definitely going to put a strain on the system," and that absent a continued injunction regarding the ballot-receipt deadline, "several *hundred thousand*" would-be absentee voters are at risk of not having their ballots counted in November, Jacobs Dep. 31:13-15, 34:7-15.

11

64. Plaintiffs' expert Kevin J. Kennedy testified that in April, "there was a large number of absentee ballots that came in well after the election, most of which were in the mail -- that were already in the mail by Election Day and arrived up to a week after the election. I think we know from experience that the post office doesn't keep very good track of ballots much less other important pieces of mail, and that if we're going to insure that people are able to fully participate, particularly when there's a much greater reliance on mail in absentee ballots, that there has to be some accommodation for the failures of the post office and just the delivery issues." Kennedy Dep. 110:9-111:2.

65.  Kennedy noted that "there were problems with [sending absentee ballots in] April; that there [will] undoubtedly be problems with November because the volume will increase." Kennedy Dep. 66:13-16.

66. Chair Jacobs testified that the Court's order extending the receipt deadline for the April primary enfranchised approximately 80,000 Wisconsinites. Jacobs Dep. 121:4-14.

67. Chair Jacobs noted the "amazing and important" results of the April injunction. Jacobs Dep. 121:4-14.

68. Chair Jacobs testified that changing the receipt requirement is "essential to allowing people to exercise their right to vote and particularly to vote absentee, which is the safest way to vote in the upcoming election." Jacobs Dep. 146:12-17.

69. The Town Administrator from Merrimac, who also serves as chair of the Republican Party of Sauk County, expressed fears to a WEC Commissioner that the massive influx of absentee ballots "will burden the system to the point we'll look like Florida 2000 counting ballots a month later." *See* Second Goodman Decl., Ex. 18 (Email from Tim McCumber to Robert Spindell, May 20, 2020) (produced by WEC) at 2.

### *Voters with Disabilities*

70. Plaintiff Disability Rights Wisconsin ("DRW") is Wisconsin's designated protection and advocacy agency for individuals with disabilities and is charged by statute to "pursue legal … remedies" for Wisconsinites with disabilities. *See* Supp. Decl. of Kit Kerschensteiner in Supp. of Pls.' Mot. for Prelim. Inj. ¶¶ 6-8, July 31, 2020 ("Supp. DRW Decl.") ¶¶ 5-7.

71. DRW's constituents have been and will be denied equal access to Wisconsin's vote-by-mail program. *See* Decl. of Kit Kerschensteiner in Supp. of Pls.' Mot. for Prelim. Inj. ¶ 17, *Swenson* ECF No. 51 ("DRW PI Decl."); Supp. DRW Decl. ¶¶ 16-18.

72. DRW has been forced to divert resources to aid voters with print disabilities. DRW PI Decl. ¶¶ 9-26; Supp. DRW Decl. ¶¶ 19-24.

### **State's Purported Interests**

73. In April, even with the extension to receive and count ballots by April 13, the state was able to achieve its interest in promptly reporting the vote counts: it certified its election results by the statutory deadline. WEC I Dep. 47:14-48:16.

74. Ms. Wolfe did not recall any clerks missing their reporting deadlines. WEC I Dep. 48:8-16.

75. Multiple members of the WEC testified that they had not heard of any incidents of attempted voter fraud in the April election. *See* Jacobs Dep. 37:9-20; Spindell Dep. 25:9- 26:15.

76.  The WEC and the RNC acknowledge that they have no evidence of voter fraud related to absentee ballots, and the Legislature is unable to provide any evidence of absentee voter fraud for voters invoking the "indefinitely confined" exemption. Second Goodman Decl., Ex. 30 (Objections and Responses of Defendants Dean Knudson, Julie M. Glancey, Robert F. Spindell, Jr., Mark L. Thomsen, Ann S. Jacobs, Marge Bostelmann and Meagan Wolfe to the Swenson Plaintiffs' First Set of Requests for Admissions (July 27, 2020) ("WEC RFA

Resp.")) at No. 32; Second Goodman Decl., Ex. 31 (Republican Nat'l Comm.'s and Republican Party of Wisconsin's Objections and Responses to Swenson Plaintiffs' Requests for Admission (July 20, 2020) ("RNC RFA Resp.")) at No. 2.

**Defendants' Current Inadequate Plans**

77. Chair Jacobs testified that, "When we don't know what's gone wrong, we can't fix it. So one of my concerns is we don't know what went wrong with – either it was 1600 or 750 ballots [not received by voters in the Oshkosh area]." Jacobs Dep. 62:1-18.

78. The evidence shows a significant association between voting in-person in April and COVID-19 rates. Murray Dep. 55:22-56:3.

79. Dr. Remington testified, "There's no doubt in my mind that we will have significant community transmission for the next four months, certainly through November…the more community spread, the greater the burden". Remington Dep. 38:14-17, 39:21-40:7.

80. Dr. Remington testified that he cited the Institute for Health Metrics and Evaluation (IHME) model, which has not been updated since June, because it was current at the time, but it is now out of date and wrong. Remington Dep. 47:12-20, 49:12.

81. The projections in that model are inconsistent with the real-world numbers in Wisconsin today, where the infection rate is far higher than predicted. *Compare* Second Goodman Decl., Ex. 19 (Inst. for Health Metrics, *Wisconsin: Daily Infections and Testing*, https://covid19.healthdata.org/united-states-of-america/wisconsin (last updated July 22, 2020)) (predicting 308 daily infections in Wisconsin as of July 23, 2020) *with* Second Goodman Decl., Ex. 20 (Wis. Dep't of Health Servs., *COVID-19: Wisconsin Cases*, https://www.dhs.wisconsin.gov/covid-19/cases.htm (last updated July 28, 2020)) (Wisconsin health department tracker shows more than 1,000 cases).

82. The model predicted two and a half deaths for July 21, when Wisconsin recorded 13. *See* Second Goodman Decl., Ex. 1 (Wis. Dep't of Health Servs., *Wisconsin Summary Data - New Deaths Reported Among Confirmed COVID-19 Cases by Date Reported*, https://www.dhs.wisconsin.gov/covid-19/data.htm (last accessed July 26, 2020)).

83. Dr. Remington testified that the projections in the model for November are likely "off by an order of magnitude of four to five"; "clearly, [the IHME] model vastly underestimated the number of deaths," and "clearly, this model has to be rerun." Remington Dep. 47:17-48:17.

84. The WEC has not consulted with medical experts or anyone else to assess the vulnerability of immunocompromised voters in the November election. *See* WEC I Dep. 32:2-6

85. The WEC has not worked on any plans to offer altered witness requirement guidance for voters who are high-risk for COVID-19, or even for those who suffer from COVID-19 or COVID-related illnesses. Spindell Dep. 86:15-87:9; WEC II Dep. 36:12-18.

86. The WEC has not, to date, taken any position on the question of whether the risk of COVID-19 transmission should factor into its planning for the November election. WEC I Dep. 23:8-24:15.

87. The WEC does not appear to have updated or created any new health guidelines since the April election. *See* WEC Status Report at 4.

88. When asked if the WEC had issued any health guidance for the November election, Ms. Wolfe, speaking on behalf of the WEC, said that it would be a "fool's errand" to do so and that the WEC "need[s] to wait until we get closer to November to know what the current CDC and health guidance is." WEC II Dep. 52:13-17.

15

89. The WEC has not taken any steps to ensure that polling places implement adequate safety measures, including regarding layout, distancing, PPE, and sanitization practices, or special voting opportunities for at-risk populations. *See* Wolfe II Dep. 50:4-51:24.

90. Currently, the WEC's efforts consist of "urg[ing] counties and municipalities to solicit election inspectors," compiling training protocols, providing materials to local election officials to help them recruit workers, and promoting the need for poll workers through a widget on MyVote, as well as earned and social media. WEC Status Report at 11-12; WEC I Dep. 77:1-8 (surveying municipalities to identify poll worker shortages).

91. The WEC has not announced that it plans to create "a pool of reserve poll workers who can be trained ahead of time to serve in the event of an unplanned, critical lack of poll workers on election day," as it discussed doing for April once it noted that "a shortage of available election inspectors due to COVID-19 is one of the most limiting factors related to the number of polling locations to be used." Goodman Decl., Ex. 33, *Swenson* ECF No. 43-33 (Wis. Elections Comm'n, Special Teleconference-Only Meeting, Polling Place Supply and Personnel Shortages (Mar. 31, 2020) (hereinafter "March 31, 2020 WEC Meeting Notice")) at 10, 12-13.

92.  The City of Sun Prairie will be consolidating from eight polling places down to one polling place for the Tuesday, Aug. 11 Fall Partisan Primary because of Election Official shortages resulting from COVID-19." Second Goodman Decl., Ex. 21 (*City Still Seeking Poll Workers for August 11 Primary Voting Location at Sun Prairie High School*, Sun Prairie Star (July, 22 2020), https://www.hngnews.com/sun_prairie_star/news/covid-19/article_f544ed25-ee5c-5b9a-b9f9-7333ee2f7ea7.html) at 1.

93. When Green Bay recently requested National Guard assistance at the polls for the August election, the WEC informed the city's clerk it could not receive the level of support requested, and that the WEC "[does not] know if they'll be trained." Green Bay Dep. 70:17-71:13.

94. The WEC has told municipalities "not to plan on" the National Guard. Green Bay Dep. 136:16-137:22.

95. Green Bay is not aware of WEC doing anything actively to reach out to voters and encourage them to be poll workers. Green Bay Dep. 141:20-142:7.

96. The WEC plans to survey municipalities to identify poll worker shortages. WEC I Dep. 77:1-8.

97. While the WEC issued guidance to local officials about drop boxes for the April election, *see* Second Goodman Decl., Ex. 22 (Wis. Elections Comm'n, *FAQs: Absentee Ballot Return Options: USPS Coordination and Drop Boxes* (Mar. 31, 2020), https://elections.wi.gov/sites/elections.wi.gov/files/2020-03/Ballot%20Return%20Options%203.31.2020.pdf (last accessed July 31, 2020)), and has made CARES Act subgrant money available for the purchase of "additional absentee ballot drop boxes," it has not issued any guidance or directive regarding drop boxes and/or drive-through voting in anticipation of the November election. *See* WEC Status Report at 5; Green Bay Dep. 158:4-158:22; WEC II Dep. 51:21-51:24.

98. The WEC has established an intelligent barcode system, but it does not know how many municipalities will actually make use of it. WEC Status Report at 6; WEC I Dep. 58:8-18.

99. The WEC identifies intelligent barcodes as one of the critical steps it has taken to prevent the kind of absentee ballot delivery problems that afflicted the April election. *See* WEC I Dep. 93:9-11; 98:22-99:17.

100.    The Commission has not begun educating voters about intelligent barcodes or how to use them to track ballots. Kennedy Dep. 93:9-94:4.

101.    The WEC has discussed the "pending absentee" feature in WisVote for over two months, but has yet to actually implement the feature. Goodman Decl., Ex. 18, *Swenson* ECF No. 43-18 (April 7 Absentee Voting Report) at 34; WEC Status Report at 9-10.

102.    The WEC has not affirmatively stated that these systems are being upgraded to handle increased traffic associated with a general election and prevent outages, which have dogged the MyVote website since at least February 2020. Goodman Decl., Ex. 21, *Swenson* ECF No. 43-21 (Wis. Elections Comm'n, *Update for Clerks on MyVote Address Problems* (Feb. 18, 2020)); Kennedy Report ¶¶ 44-46.

103.    When asked about upgrades to server capacity on MyVote, Ms. Wolfe testified that WEC staff are doing "load testing" and looking at "server structure," but did not clarify whether explicit steps were being taken to actually ensure that both MyVote and WisVote are being upgraded to handle surges in traffic. WEC II Dep. 101:17-102:11.

104.    Ms. Wolfe's testimony was not clear as to whether the WEC had established a voter education budget, set a start date, identified the campaign's communications channels, or designed a coordination plan to engage outside nonprofits and political campaigns. *See* WEC II Dep. 57:3-65:25.

105.    Plaintiffs' expert Kennedy determined that the WEC's efforts to date in providing effective notice to the voting public are insufficient. Kennedy Dep. 86:5–91:14; 113:1–115:7.

106.     Kennedy reviewed the WEC Status Report and concluded that the WEC has not provided

enough information to evaluate the sufficiency of their actions, including whether whatever

they are doing "scales up" to meet November demand, which will be twice as high as in

April. Kennedy Dep. 64:13-65:4.

107.     Chair Jacobs testified that the Commission's "deadlock" with respect to postmark

guidance is unlikely to change "absent instruction from a court or the Legislature." Jacobs

Dep. 120:2-19.

108.     Kennedy testified that, without the WEC taking on a leadership role to consult with

health experts and develop procedures for safe in-person registration and voting,

municipalities will not be able to obtain necessary information. Kennedy Dep. 71:4-12.

**Scope of the WEC's Authority**

109.     The WEC's authority includes ensuring compliance with federal and state election law,

including the Voting Rights Act, ADA, and U.S. Constitution. WEC II Dep. 17:21-19:4.

***The WEC's Use of its Broad Powers***

110.     The WEC has directed clerks not to send special voting deputies into care facilities for

the August or November elections, as it did in April. Second Goodman Decl., Ex. 23 (Wis.

Elections Comm'n, *Special Voting Deputies for the August 11, 2020 and November 3, 2020*

*Elections* (June 24, 2020),

https://elections.wi.gov/sites/elections.wi.gov/files/2020-

06/WEC%20Directs%20No%20SVD%20Voting%20for%20Remaining%202020%20Electio

ns%2006-24-2020.pdf (last accessed July 29, 2020)) at 1.

111.    The WEC plans to send absentee ballot request forms to registered voters, and the mailing will include the WEC's address as one to which the enclosed absentee ballot request forms can be returned. WEC Status Report Ex. 3, at 3-4.

112.    During the April election, the WEC procured and directly provided municipalities with PPE, pens, and sanitizing equipment. *See* Goodman Decl., Ex. 33, *Swenson* ECF No. 43-33 (March 31, 2020 WEC Meeting Notice) at 13-14; Goodman Decl., Ex. 9, *Swenson* ECF No. 43-9 (Memorandum from Megan Wolfe to Wisconsin Elections Commission Members, *Update Regarding COVID-19 Election Planning* (Mar. 18, 2020)).

113.    Florida's election system is also frequently described as "decentralized." Second Goodman Decl., Ex. 24 (Allison Ross, *Florida Elections Officials Urge DeSantis for Help Amid the Pandemic*, Tampa Bay Times (May 15, 2020), https://www.tampabay.com/news/health/2020/05/14/florida-provides-little-direction-as-election-season-arrives-amid-the-pandemic/) at 2.

**Feasibility of Requested Relief**

114.    Ms. Wolfe noted that during the April election, the WEC was able to implement the Court's ordered changes in a matter of days and, while not necessarily always the most comfortable way to operate, the WEC "can work very, very quickly." WEC I Dep. 17:20-21:5.

115.    Administrators from Green Bay and Milwaukee indicated that some of the relief sought here against WEC would in fact help them prepare for November. MEC Dep. 90:8-91:18 (health and safety measures), 111:9-113:18 (recruiting poll workers), 113:3-10 (out-of-county poll workers), 117:22-119:9, (counting ballots before election day), and 119:10-121:18 (upgrades to MyVote and WisVote); Green Bay Dep. 60:14-19 (supplies); 104:4-

104:12, 104:22-105:4, 110:5-18 (upgrades to WisVote & MyVote); 131:22-132:9 (recruiting

poll workers); 143:21-144:22 (out-of-county poll workers); 148:11-22 (clearer guidance on

public health best practices); 154:1-8 (PPE and sanitizing supplies); 158:4-159:3 (clearer

guidance on drop box security); 162:8-163:6 (extended time to accept mail-in ballots).

116.    Green Bay's representative deponent described the WEC's role in Green Bay's

preparation for elections as "I follow what they tell us to do," and described binding

instruction from the WEC regarding election procedures. Green Bay Dep. 87:16-87:18; 90:9-

91:3.

### *Adequate Number of Poll Workers and Safe In-Person Voting*

117.    During the April election, the WEC used its authority to recruit poll workers using a

variety of approaches, such as: coordinating with the Wisconsin Department of

Administration to conduct "outreach to colleges and universities, labor unions, state

employees, and other groups" to identify poll workers, Goodman Decl., Ex. 33, *Swenson*

ECF No. 43-33 (March 31, 2020 WEC Meeting Notice) at 12-13; "request[ing] poll worker

personnel from the [State Emergency Operations Center] SEOC", WEC Defs.' Add'l Prop.

Findings of Fact ¶ 26, July 20, 2020, ECF No. 445 ("WEC Prop. Facts"); adding a "become a

poll worker" function to MyVote, *id.* ¶ 27, and working "with state and county partners to

identify a pool of reserve poll workers who can be trained ahead of time to serve in the event

of an unplanned, critical lack of poll workers on election day," Goodman Decl., Ex. 33,

*Swenson* ECF No. 43-33 (March 31, 2020 WEC Meeting Notice) at 12-13.

118.    The WEC acknowledges that it has tools available to recruit poll workers, and that it is

feasible for it to assist local officials with recruitment efforts. *See, e.g.,* Second Goodman

Decl., Ex. 30 (WEC RFA Resp.) at Nos. 14-15; WEC Prop. Facts ¶¶ 26-27; WEC II Dep. 84:24-86:15.

119.    WEC staff has the power to issue guidance and can assist municipalities in following this guidance. Wis. Stat. § 7.08(11); Green Bay Dep. 110:21-111:11 (testifying that WEC should have done more to guide municipalities on how to set up polling locations during the pandemic and noting "we take direction from them on everything else."); *id*. at 117:1-118:17.

***Accessible Way for Voters who are Blind or otherwise Disabled to Vote Privately and Independently at Home***

120.    There is currently a process available to military and overseas voters to print out and return ballots sent by email or fax. Wis. Stat. § 6.87(3)(d); Second Goodman Decl., Ex. 25 (Wis. Elections Comm'n, *Clerk Instructions for Email and Fax Ballots* (Rev. 2018-06), https://elections.wi.gov/sites/default/files/memo/20/email_and_fax_instructions_for_absentee_ballots_20_18518.pdf (last accessed July 29, 2020)) at 1-2.

***Ensure all Voters who Request and are Qualified to Receive an Absentee Ballot Receive One, and Provide Opportunity to Cure Missing Information or Errors***

121.    The WEC has authority to implement the new "pending absentee" feature in WisVote, which allows clerks to approve or deny requests and communicate the result and its status to voters without manual data entry. *See* Goodman Decl., Ex. 18, *Swenson* ECF No. 43-18 (April 7 Absentee Voting Report) at 34.

122.    In addition to its role operating and maintaining WisVote and MyVote, the WEC can monitor and assist local clerks as they respond to a large volume of absentee ballot requests. WEC II Dep. 96:20-22; WEC Status Report at 3-4.

***Electronic Voter Registration Systems Capacity and other Upgrades***

123.    The WEC has confirmed its authority and willingness to address website maintenance issues by undertaking recent efforts to improve the MyVote website, primarily to improve user interface and data entry issues and to integrate into the website USPS mail tracking data, and the WisVote database, primarily to add tracing procedures and auditing tools. WEC Status Report at 8-10.

124.    Under this Court's order of March 23, 2020 and supervision of WEC's implementation of the ordered relief, WEC modified the MyVote website to allow voters additional time to register through MyVote. *See DNC v. Bostelmann*, --- F. Supp. 3d ---, No. 20-cv-249-wmc, 2020 WL 1320819 (W.D. Wis. March 20, 2020), ECF No. 37.

125.    The WEC has straightforward authority to implement MyVote and WisVote capacity and other upgrades.  Second Goodman Decl., Ex. 30 (WEC RFA Resp.) at No. 9-10 (WEC admits that it is both feasible and that it has the authority to upgrade the memory, bandwidth, and server capacity of its electronic voter registration systems, including, but not limited to, WisVote and MyVote); *see also* Green Bay Dep. 105:11-107:20 (describing city's dependence on WEC to ensure that registration system works properly) and Second Goodman Decl., Ex. 9 (Email from Kris Teske to Robert Kehoe, May 7, 2020) (produced by Green Bay City Clerk) at 1-2.

***Public Education Campaign***

126.    The WEC has admitted that it is feasible, and that it has the authority, to implement a public education campaign that provides information on: how to request, vote, and return absentee ballots; the locations and times for in-person absentee and election day voting; and

the provisions being made for safe in-person voting. Second Goodman Decl., Ex. 30 (WEC RFA Resp.) at Nos. 19-20.

**Need for this Court to Enjoin the Following Statutes:**

*Requirement that Each Election Official be from the County - Wis. Stat. § 7.30(2)*

127.    The WEC identified poll worker shortages prior to the April election. Goodman Decl., Ex. 33, *Swenson* ECF No. 43-33 (Wis. Elections Comm'n, Special Teleconference-Only Meeting, *Polling Place Supply and Personnel Shortages* (Mar. 31, 2020), https://elections.wi.gov/sites/elections.wi.gov/files/2020-03/Complete%20Packet%203_31.pdf), at 10-13,15.

128.    Wis. Stat. § 7.30(2) prevents the WEC from creating a statewide pool of poll workers who could be deployed in response to shortages around the state.

129.    Lifting the county-residency restriction would abate poll worker shortages in the November election. Kennedy Report ¶¶ 67-69; *Swenson* SOPF ¶ 237; MEC Dep. 113:3-10.

*Witness Certification Requirement - Wis. Stat. § 6.87(2)*

130.    The WEC's guidance on safe compliance with the witness signature certification requirement during COVID-19 involves an 11-step process and a recommendation that voters include what is essentially a 48-hour waiting period between marking their ballots and casting them to allow for distant witnessing. Goodman Decl., Ex. 61, *Swenson* ECF No. 43-61, (Wis. Elections Comm'n, Absentee Witness Signature Requirement Guidance (Mar. 29, 2020)), at 2.

131.    The WEC acknowledges that conveying this guidance to voters during the pandemic is an "ongoing challenge," WEC II Dep. 108:6, but cannot on its own suspend the requirement. WEC II Dep. 82:25-83:13.

***Absentee Ballots Receipt Deadline - Wis. Stat § 6.87(6)***

132.   The last day to legally request an absentee ballot in Wisconsin is five days before the election, Wis. Stat. § 6.86(1)(b), a deadline which the USPS has identified as creating a "high risk" of ballots not being delivered. Second Goodman Decl., Ex. 17 (USPS OIG Report) at 6-7; WEC II Dep. 115:12-116:12.

133.   Just under 80,000 ballots were counted as a result of this Court's order extending the April absentee ballot deadline, as modified by the Supreme Court to add the requirement that ballots be postmarked by election day. WEC I Dep. 48:17-49:21.

134.   The WEC acknowledges that the extension of the registration deadline in April did not affect the ability of municipalities, counties or the WEC to meet their certification deadlines. WEC I Dep. 47:14-48:16.

135.   Chair Jacobs expects as many as "several hundred thousand voters" could be disenfranchised in the absence of an injunction for the November election, and she encouraged the Court to enter such an order, noting the "amazing and important" results of this relief granted by the Court in April. Jacobs Dep. 34:7-8; 121:4-14.

***Requirement that Absentee Ballots not be Counted before Election Day - Wis. Stat. §§ 6.88, 7.51-.52***

136.   Ms. Wolfe testified that the additional time to canvass absentee ballots that municipalities received during the April election due to the extended ballot receipt deadline was a "necessary" benefit. WEC I Dep. 63:21-64:1.

137.   Nationwide, numerous states permit absentee ballots to be counted early, and Plaintiffs are aware of no reported instances where results leaked. *See* Second Goodman Decl., Ex. 27 (Nat'l Conf. of State Legislatures, *Voting Outside the Polling Place Report* (July 10, 2020),

https://www.ncsl.org/research/elections-and-campaigns/absentee-and-early-voting.aspx#process (last accessed July 29, 2020)) at 33-34; Ex. 28 (Nat'l Conf. of State Legislatures, *Voting Outside the Polling Place Report*, *Tbl. 16:When Absentee/Mail Ballot Processing and Counting Can Begin* (July 9, 2020), https://www.ncsl.org/research/elections-and-campaigns/vopp-table-16-when-absentee-mail-ballot-processing-and-counting-can-begin.aspx (last accessed July 29, 2020)).

138.    During the April election municipal and county clerks statewide did not report results until six days after Election Day, April 13, 2020, even though some ballots were processed through optical scan machines or counted beginning on Election Day. *See* Second Goodman Decl., Ex. 29 (Wis. Elections Comm'n, *Updated Guidance on Election Night Procedures* (Apr. 6, 2020), https://elections.wi.gov/sites/elections.wi.gov/files/2020-04/Election%20Night%20Procedures%20Clerk%20Memo%204.7.2020.pdf) (last accessed July 21, 2020)) at 2.

Dated: July 31, 2020
Respectfully submitted,

/s/ Rachel E. Goodman
Rachel E. Goodman
The Protect Democracy Project
115 Broadway, 5th Fl.
New York, NY 10006
(202) 997-0599
rachel.goodman@protectdemocracy.org

Sara Chimene-Weiss
The Protect Democracy Project
530 E McDowell Rd., Suite 107-222
Phoenix, AZ 85004
(202) 934-4237
sara.chimene-weiss@protectdemocracy.org

Laurence M. Schwartztol
The Protect Democracy Project
15 Main St., Suite 312
Watertown, MA 02472
(202) 856-9191
larry.schwartztol@protectdemocracy.org

Farbod Kaycee Faraji*
Rachel F. Homer
Cameron Kistler
THE PROTECT DEMOCRACY PROJECT
2020 Pennsylvania Ave. NW, Suite # 163
Washington, D.C. 20006
(202) 579-4582
farbod.faraji@protectdemocracy.org
rachel.homer@protectdemocracy.org
cameron.kistler@protectdemocracy.org
*Admitted to practice in California, not D.C.;
practice consistent with D.C. App. R.
49(c)(3).

Douglas M. Poland
State Bar No. 1055189
Rathje Woodward LLC
10 E Doty Street, Suite 507
Madison, WI 53703
(608) 960-7430
dpoland@rathjewoodward.com

Anton Metlitsky
Leah Godesky
Yaira Dubin
O'Melveny & Meyers LLP
7 Times Square
New York, NY 10036
(212) 326-2000
ametlitsky@omm.com
lgodesky@omm.com
ydubin@omm.com

Molly M. Lens
O'Melveny & Meyers LLP
1999 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
(310) 553-6700
mlens@omm.com

Jason Zarrow
O'Melveny & Meyers LLP
400 S. Hope Street, 18th Floor
Los Angeles, CA 90071
(213) 430-6000
jzarrow@omm.com

Jonathan Manes
Roderick & Solange MacArthur Justice
Center
160 E Grand Ave, Sixth Floor
Chicago, IL 60611
(312) 503-0012
jonathan.manes@law.northwestern.edu

Jeffrey A. Mandell
State Bar No. 1100406
Stafford Rosenbaum LLP
222 West Washington Avenue
P.O. Box 1784
Madison, WI 53701-1784
(608) 256-0226
jmandell@staffordlaw.com

*Counsel for Plaintiffs*